UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RUDOLF F. FRYZEL and RUTH E. FRYZEL | : | |
|    Plaintiffs, | : | |
| v. | : | CA 10-352 M |
| MORTGAGE ELECTRONIC REGISTRATION | : | |
| SYSTEMS, INC., alias MERS;US BANK | : | |
| NATIONAL ASSOCIATION, AS TRUSTEE FOR | ; | |
|  MASTR ADJUSTABLE RATE MORTGAGES | : | |
| TRUST, 2006-OA1,MORTGAGE PASS- | : | |
| THROUGH CERTIFICATES,SERIES 2006-OA1 | : | |
| alias, and  AMERICAN HOME MORTGAGE | : | |
| SERVICING,INC., alias, | : | |
| Defendants. | : | |
| | **:** | |

| | | |
|---|---|---|
| ELOISA COSAJAY | : | |
| Plaintiff | : | |
| v. | : CA 10-442 M | |
| MORTGAGE ELECTRONIC | : | |
| REGISTRATION SYSTEMS, INC., | : | |
| CM REO TRUST, and | : | |
| SAXON MORTGAGE SERVICES, INC., | : | |
| Defendants | : | |
| | : | |
| | **:** | |

### Amicus Brief
### In Support of Plaintiffs' Right to Sue to Stop Foreclosures By Advertising And In Opposition of Recommendation To Dismiss for Lack of Statutory and Jurisdictional Standing.

Now comes Keven A. McKenna, co-counsel for Plaintiff  Roger Mandarelli, in the matter

of 1-11-cv-00363, and submits his Friend of the Court brief on behalf of the Plaintiff, in the

above entitled matters.

## 1.   THE U.S DISTRICT COURT HAS ARTICLE III JURISDICTION.

Plaintiffs have Article III standing. [1]

---

[1] *Lujan v. Defenders of Wildlife*, 504 U.S. 555,560,561 112 S.Ct.2130 (1992).Over the years, our cases have established that the irreducible constitutional **minimum of standing contains three elements**. First, the plaintiff must have suffered an "injury in fact" — an invasion of a legally-protected interest which is (a) concrete and

Federal courts long have had diversity jurisdiction over suits to clear title.[2] See *Holland v. Challen* 110 U.S. 153 S.Ct. 495 (1884). The federal court has  jurisdiction to protect state conveyance rights.[3] ,[4] and the unpublished case of matter of *Livonia Props. Holdings. v. 12840-12976 Farmington,* 399 Fed.Appx. 97,102, (6th Cir. 2010) has not changed those holdings.

---

particularized,*see id.*, at 756; *Warth v. Seldin*, 422 U.S. 490, 508 (1975); *Sierra Clubv. Morton*, 405 U.S. 727, 740-741, n. 16 (1972);[fn1] and (b) "actual or imminent, not `conjectural' or `hypothetical,'" *Whitmore, supra*, at 155 (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). Second, there must be a causal connection between the injury and the conduct complained of — the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Simon v. Eastern K. Welfare Rights Organization*, 426 U.S. 26,41-42 (1976). Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id.*, at 38, 43. The party invoking federal jurisdiction bears the burden of establishing these elements. *See FW/PBS, Inc. v. Dallas*, 493 U.S. 215,231 (1990); *Warth, supra*, at 508. Since they are not mere pleading requirements, but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation. *See Lujan v. National Wildlife Federation*,497 U.S. 871, 883-889 (1990); *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 114-115, and n. 31 (1979); *Simon, supra*, at 45, n. 25; *Warth, supra*, at 527, and n. 6 (Brennan, J., dissenting). At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss, we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *National Wildlife Federation, supra*, at 889. In response to a summary judgment motion, however, the plaintiff can no longer rest on such "mere allegations," but must "set forth" by affidavit or other evidence "specific facts," Fed. Rule Civ. Proc. 56(e), which for purposes of the summary judgment motion will be taken to be true. And at the final stage, those facts (if controverted) must be "supported adequately by the evidence adduced at trial." *Gladstone, supra*, at 115, n. 31.

[2] *Willing v. Chicago Auditorium 48 S.Ct. 507  277 U.S. 274 (1928). This suit, which was begun in a state court of Illinois by the C*hicago Auditorium Association, is said to be in the nature of a bill to remove a cloud upon title. *** It does not follow that by allowing in the federal courts a suit for relief under the statute of Nebraska, controversies properly cognizable in a court of law will be drawn into a court of equity. There can be no controversy at law respecting the title to or right of possession of real property when neither of the parties is in possession. An action at law, whether in the ancient form of ejectment or in the form now commonly used, will lie only against a party in possession. Should suit be brought in the federal court, under the Nebraska statute, against a party in possession, there would be force in the objection that a legal controversy was withdrawn from a court of law; but that is not this case, nor is it of such cases we are speaking. Undoubtedly, as a foundation for the relief sought, the plaintiff must show that he has a legal title to the premises, and generally that title will be exhibited by conveyances or instruments of record, the construction and effect of which will properly rest with the court. Such, also, will generally be the case with the adverse estates or interests claimed by others. This was the character of the proofs establishing the title of the complainant in *Clark*v. *Smith*, already cited. But should proofs of a different character be produced, the controversy would still be one upon which a court of law could not act. It is not an objection to the jurisdiction of equity that legal questions are presented for consideration which might also arise in a court of law. If the controversy be one in which a court of equity only can afford the relief prayed for, its jurisdiction is unaffected by the character of the questions involved.***Waiting to be sued is not an adequate remedy for a cloud on title. *Voss* v. *Murray*, 50 Ohio St. 19; *Holland* v. *Challen*, 110 U.S. 15; *Bank* v. *Stone*, 88 F. 383; *Fredenberg* v. *Whitney*, 240 F. 819; *Schwab* v. *St. Louis*, 310 Mo. 116; *Slegel* v. *Harbine*, 148 Pa. 236.

[3] *Mills v. Roger*s 457 U.S. 291, 299-300, (1982) holds that state created substantive and procedural rights and protections and liberty interests are protected by the federal constitution, 1st Amendment, petition; Article 4, section 2, privileges and immunities; 5th Amendment, due process; Article 3, section 2, clause 1; and 14th Amendment, section 1, clause 2, clauses of the US Constitution.

[4] *Corman v. Cree,* 100 F.2d 486 (10th Cir. 1938). It is well settled that, under such statutes, a plaintiff out of possession may maintain in the federal courts a suit to quiet title against a defendant out of possession. Holland v.

The unpublished holding in *Livonia Props. Holdings. v. 12840-12976 Farmington,* 399 Fed. Appx. 97,102, (6th Cir. 2010) have been misread since underlying Michigan statute does allow note obligors standing to challenge void assignments of the statutory power of foreclosure by advertising in the chain of title.

There is an Article III case and controversy [5] when Defendants, albeit residing in another state, but not authorized by R.I. state law, are attempting to misuse a foreclosure through the advertising statue, R.I.G.L.§34-11-22, to deny the Plaintiff's their Due Process Rights to a judicial hearing, at which the Plaintiffs might object to the taking of their statutory property right to the redemption of equity in their homes, pursuant to R.I.G.L§ 34-23-2 and R.I.G.L§34-26-1. Defendants Mortgage Electronic Registration Systems, Inc. (MERS), under Rhode Island conveyance law are not able to be statutory *mortgagees* without holding the mortgage note or statutory *assignees* without a power of attorney or without an assignment from a *mortgagee* owning the mortgage note.

The Plaintiffs will suffer irreparable harm and *actual injury* by the loss of their property rights unless their house is saved by the issuance of permanent restraining order which is a traditional Article III function of the federal judiciary. [6]

The Plaintiffs have a *redressable* basis to stay the harm caused by Defendant foreclosing because the assignments in the chain of title leading to the foreclosing Defendant do not conform to the strictly constructed provisions of chapter 11 of title 34,which protects homeowners from foreclosures by advertising from unauthorized Defendants who may either

---

Challen, 110 U.S. 15,3 S.Ct. 495, 28 L.Ed. 52; Dick v. Foraker, 155 U.S. 404, 415,15 S.Ct. 124, 39 L.Ed. 201; Lawson v. United States Mining Co.,207 U.S. 1, 9, 28 S.Ct. 15, 52 L.Ed. 65; Maury v. Jones, 9 Cir.,25 F.2d 412.
[5] *U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am*. 508 U.S. 446, 113 S. Ct 2173 (1993).(The exercise of judicial power under Article III of the Constitution depends on the existence of a case and controversy … .)
[6] *Allen v. Wright*, 468 U.S. 737, 766. 104 S.Ct 3315 (1984). "The necessity that the plaintiff who seeks to invoke judicial power stand to profit in some personal interest remains an Art. III requirement." *Simon* v. *Eastern KentuckyWelfare Rights Org.*, 426 U.S., at 39.

lack a recorded chain of title from the mortgagee or ownership of the mortgage note, as defined by chapter 11 of title 34 of the Rhode Island general laws.

As noted, title suits through the diversity clause are not new to Federal courts; and federal courts have long followed state law title standards when determining those disputes. [7]. *Livonia Props.Holdings. v. 12840-12976 Farmington,*supra*,* is not to be read as reversal of those root holdings.

The initial mortgage deeds allegedly received by the defendant Mortgage Electronic Registration Systems, Inc. (MERS) were void and did not conform to the provisions of R.I.G.L. §34-11-1, R.I.G.L.§34-11-12,  R.I.G.L. § 34-11-20,  R.I. G.L. §34-11-21,  and R.I.G.L.§34-11-22. Consequently, the subsequent assignments made by the Defendant Mortgage Electronic Registration Systems, Inc. (MERS) were void; and assigned no statutory powers to the foreclosing Defendants since those assignments did not conform to R.I.G.L.§34-11-1, R.I.G.L. §34-11-12, and R.I.G.L.§34-11-24.

Thus, in these proceedings there is both subject matter jurisdiction under state law and Article III jurisdictional standing[8]. Plaintiffs have "redressable" claims as set forth in *SBT Holdings v. Town of Westminster,* 547 F.3d 28 (1st Cir. 2008). Here is there an actual injury which will be suffered by the wrongful foreclosure of Plaintiff's home due to a break in the chain of title. Compare Blanchard 1986, Ltd. v. Park Plantation, LLC, 553 F.3d 405 (5th Cir. 2008). Fryzel, fn.10.

---

[7] *Willing v. Chicago Auditorium*, 277 U.S. 274,276,48 S.Ct. 507 (1928). The law of the State must determine the respondent's title, or whether the title is clouded. *Guffey* v. *Smith*, 237 U.S. 101; *Holland* v. *Challen*, 110 U.S. 15; *Clark* v. *Smith*, 13 Peters, 195; *Pusey & Jones Co*. v. *Hanssen*, 261 U.S. 491.

[8] *People v. Federal Housing Finance Agency*,7 U.S.D.C. p.7 (N.D.Cal. 8-26-2011).To establish constitutional standing, a plaintiff must satisfy three requirements — (1) injury in fact; (2) causation; and (3) redressability. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1998). The party invoking federal jurisdiction bears the burden of establishing that it has Article III standing. Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 103-104 (1998). **On a motion to dismiss, a plaintiff need only show that the facts alleged, if proved, would confer standing.** *Central Delta Water Agency v. United States*, 306 F.3d 938, 947 (9th Cir. 2002).( Emphasis Added)

Plaintiffs thus have sufficient constitutional standing to survive a Fed. R. Civ. P. 12(b)(6)) challenge and sufficient statutory standing to survive a Fed. R. Civ. P. 12(b)(1) challenge. [9]

## 2.  THE HOLDINGS IN *LIVONIA PROPS. HOLDINGS, LLC V. 12840-12976 FARMINGTON RD. HOLDINGS, LLC*, 399 F. APP'X 97 (6TH CIR. 2010) ALLOWS MORTGAGORS' TO HAVE  STANDING TO CHALLENGE "NONASSIGNABILITY OF THE INSTRUMENT, ASSIGNEE'S LACK OF TITLE, AND A PRIOR REVOCATION OF THE ASSIGNMENT."

The Magistrate's recommendation misapplied the holdings in *Livonia Props. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 399 F. App'x 97 (6th Cir. 2010) to Rhode Island statutes. Challenges to title are excepted from holdings *on standing in Livonia Properties Holdings, L.LC.*, supra[10]

The title statutes  in Michigan analyzed in *Livonia Props.Holdings. v. 12840-12976 Farmington*, 399 Fed.Appx. 97,102, (6th Cir. 2010) are somewhat similar to those in Rhode Island. The Magistrate did not notice that both states allow *mortgagors* to have standing to challenge non conforming statutory foreclosures. In *Livonia*, supra, the validity of the chain of title was however, was established. Here the statutory chain of title is being disputed.

---

[9]*SBT Holdings v. Town oF Westminster,* 547 F.3d 28 (1st Cir. 2008);  "Second, the individual plaintiffs have standing. A plaintiff must have Article III standing. *Town of Winthrop v. FAA* 535 F.3d 1, 6 (1st Cir. 2008). To proceed, he or she must "adequately establish: (1) an injury in fact . . .; (2) causation . . .; and (3) redressability." *Sprint Commc'nsCo. v. APCC Servs., Inc.*, ___ U.S. ___, 128 S.Ct. 2531, 2535,171 L.Ed.2d 424 (2008). The individual plaintiffs have done so here."

[10] Livonia Props.Holdings. v. 12840-12976 Farmington, 399 Fed.Appx. 97,102, (6th Cir. 2010).(**The district court opinion emphasizes that Farmington at least substantially complied with the statutory requirements for record chain of title and that substantial compliance is all that is required under the statute.**) *Livonia Prop. Holdings, LLC v. 128A0-12976Farmington Rd. Holdings*, 717 F.Supp.2d 724, 742-46(E.D.Mich. 2010). ***Regardless of this point, even if there were a flaw in the assignment, Livonia does not have standing to raise that flaw to challenge Farmington's chain of title. As recognized by the district court, there is ample authority to support the proposition that "a litigant who is not a party to an assignment lacks standing to challenge that assignment."717 F.Supp.2d at 736-37. **An obligor "may assert as a defense any matter which renders the assignment absolutely invalid or ineffective, or void." 6A C.J.S.** *Assignments* **§ 132 (2010). These defenses include nonassignability of the instrument, assignee's lack of title, and a prior revocation of the assignment, none of which are available in the current matter.** *Id.* **Obligors have standing to raise these claims because they cannot otherwise protect themselves from having to pay the same debt twice.** *Id.* **In this case, Livonia is not at risk of paying the debt twice, because Farmington has established that it holds the original note.** (Emphasis Added).

The Plaintiffs in these matters challenge the foreclosure by advertising under Rhode Island law when neither the mortgage deed utilized in the transaction nor the assignments utilized by the Defendants conformed to the requirements of R.I.G.L.§34-11-1, R.I.G.L.§34-11-12, R.I.G.L.§34-11-20, R.I.G.L.§34-11-21, R.I.G.L.§34-11-22 and R.I.G.L §34-11-24.

Note that in Michigan, pursuant to M.C.L.A.§600.3204(1) and to M.C.L.A.§600.3204(3), a party may foreclose a mortgage by advertisement if all of the following circumstances exist:

(a) A default in a condition of the mortgage has occurred, by which the power to sell became operative.

(b) An action or proceeding has not been instituted, at law, to recover the debt secured by the mortgage or any part of the mortgage; or, if an action or proceeding has been instituted, the action or proceeding has been discontinued; or an execution on a judgment rendered in an action or proceeding has been returned unsatisfied, in whole or in part.

(c) The mortgage containing the power of sale has been properly recorded.

(d) The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage. ( In Rhode Island the party foreclosing must also own the indebtedness. However, in R.I. servicers are not authorized to foreclose by advertising.)

Pursuant to M.C.L.A. § 600.3204(3)"[i]f the party foreclosing a mortgage by advertisement is not the original mortgagee, **a record chain of title shall exist prior to the date of sale . . . evidencing the assignment of the mortgage to the party foreclosing the mortgage.**" (The requirement for a chain of title is a similar requirement in Rhode Island.) (Emphasis Added)

## 3.   THERE IS COGNIZABLE AND PLAUSIBLE CAUSATION BY THE FORECLOSING DEFENDANTS TO CREATE ARTICLE III JURISDICTION.

If the facts averred by Plaintiffs are true, the Plaintiffs would have *redressable* claims.

*Central Delta Water Agency v. United States*, supra. The Defendant foreclosing in each of these matters is the cause of the harm to the Plaintiffs. In these matters before this Honorable Court there is also no proven chain of title which demonstrates under R.I. law that the foreclosing Defendant possesses the statutory power of sale by advertisement or enforceable mortgage note under provisions of the Uniform Commercial Code. Id. In those circumstances , the *Livonia*[11] court acknowledged that an *obligor* may challenge an assignment., which include

"*nonassignability of the instrument, **assignee's lack of title***, and a prior revocation of the assignment,". *Id.*(Emphasis Added)

Rhode Island law has not authorized  the Mortgage Electronic Registration Systems, Inc. (MERS) as a " a nominee" to discharge a promissory note or a statutory power in non conforming mortgage deed of another party or to conduct a foreclosure sale.

Some courts have suggested a simpler guiding canard. If a *mortgagor* cannot pay the foreclosing party and then obtain a recorded discharge, then the foreclosing party cannot foreclose. *General Underwriters, Inc. v. Kline*, 233 Minn. 345, 351, 46 N.W.2d 794 (Minn. 1951).

> "The rationale of the rule that a debtor cannot question the title of his creditor's assignee is that a debtor's only legitimate concern is that he be able to pay with liberating effect. If he can pay to the assignee and discharge his obligation, it is no concern of his that the assignment may be only colorable. However, the rule should be extended no further than this rationale will support it. **This court has indicated in dicta that where the assignor or other parties deny the assignee's title the debtor may have reason to put the assignee to proof of the validity of his title**. *Id.* at 351, 46 N.W.2d at 798. (Emphasis Added).a
> When an assignment does not meeting the requirements of R.I.G.L.§34-11-24, R.I.G.L

§34-11-12, and R.I.G.L §34-11-1, the assignment is then not conveying the statutory power of

---

[11] *Livonia Props. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 399 F. App'x 97 (6th Cir. 2010).

sale by advertisement set forth in R.I.G.L §34-11-22, and under *Livonia*, supra, such *mortgagors* have as standing to challenge the foreclosure brought about through faulty assignments. Thus, There is plausible causation under state law by the foreclosing Defendants, potential *harm* of the loss of a property right,[12] and *redressabilit*y under state law, thus there is the existence of Article III jurisdiction.

## 4. PLAINTIFFS' POSSIBLE LOST OF A CONVEYED PROPERTY INTEREST IS THREAT OF A COGNIZABLE INJURY.

It should be undisputed that the loss of a property right in a home is a "distinct and palpable" injury[13] which the foreclosing entity seeks to impose. Compare the discussion in *In Re D'Ellena*, 640 A.2d 530, 533, (R.I. 1994) where a loss in a title by a state by condemnation was a *cognizable injury*. The loss of the statutory power of redemption is a *cognizable injury* because it is a taking of property without due process in violations of the 5th Amendment of the U.S. Constitution, as applied to the States by the 14th Amendment and of Article I, §2 of the Rhode Island State Constitution. The threaten loss of the Plaintiff mortgagor's equity of redemption by the unauthorized Defendant foreclosing a by advertising, R.I.G.L.§34-11-22, in lieu of judicial foreclosure, R.I.G.L.§34-27-1, causes the loss of property right through the unauthorized use of a state statute, which is otherwise strictly construed as a statute made in derogation of common law, by the foreclosing defendant acting under the color of law, to wit, R.I. G.L. § 34-11-22, in violation of 42 U.S.C.§1983.

## 5. RHODE ISLAND STATUTE PROVIDES PATHWAYS TO *REDRESS* THE WRONG OF THE DEFENDANTS.

---

[12] R.I.G.L§ 34-23-2;R.I.G.L§34-26-1

[13] *Allen v. Wright*, 468 U.S. 737, 751 104 S.Ct 3315 (1984). The injury alleged must be, for example, "` distinct and palpable,'" *Gladstone,Realtors* v. *Village of Bellwood*, 441 U.S. 91, 100 (1979) (quoting *Warth* v. *Seldin, supra*, at 501), and not "abstract" or "conjectural" or "hypothetical," *Los Angeles* v. *Lyons*,461 U.S. 95, 101-102 (1983); *O'Shea* v. *Littleton*, 414 U.S. 488,494 (1974). The injury must be "fairly" traceable to the challenged action, and relief from the injury must be "likely" to follow from a favorable decision. See *Simon* v. *Eastern Kentucky Welfare Rights Org.*, 426 U.S., at 38, 41.

Rhode Island statutes provide *redressability*. Rhode Island law allows any person standing to challenge the title of anyone claiming to have the right to foreclose by advertising pursuant to the provisions of the title clearing through six (6) routes.

A dismissal for failure to state a claim under F.Civ. R.P. 12(b)(6) fails to recognize the six (6)state statutory pathways which create standing for the Plaintiffs to challenge Defendants as title encumbrancers seeking to foreclosure the Plaintiffs' statutory power to redeem their equitable value under the provisions of R.I.G.L.§34-23-1.[14]

Statutory standing for those statutory challenges is derived from the powers contained in R.I. statutes, not through contents of private contracts.

The recommendations of the Court Magistrate overlooks those Rhode Island statutes, which regulating real estate conveyances and foreclosures; and their impact on the Due Process Clause.

The Magistrate's recommendation are clearly erroneous when they declare that Rhode Island's conveyance and foreclosure statutes are of only marginal relevance. Those statutes are of major relevance. Those statutes define state property rights and determine what rights are subject to protection of the Due Process Clauses in the State Constitution[15] and the U.S. Constitution. Due process protects the loss of the right to redemption of a mortgagor, not withstanding what private parties attempt to do through their use of Chapter 11 of Title 34.

---

[14]R.I.G.L§ 34-23-2. Redemption right of mortgagor or vendor with defeasance. All real estates, conveyed or pledged by mortgage or deed of bargain and sale with defeasance, shall be redeemable by the mortgagor or vendor, his or her heirs, executors, administrators, successors, or assigns, on paying the money borrowed thereon, with interest, or by performing the condition on which the real estate was conveyed or mortgaged, deducting the rents and profits which the mortgagee, or any under him or her, may have received over and above the taxes and assessments paid out, and suitable repairs and insurance made by him, her, or them, and all other necessary expenses in the care and management of the premises.

[15] R.I. State Constitution. Article I, Section 2. All free governments are instituted for the protection, safety, and happiness of the people. All laws, therefore, should be made for the good of the whole; and the burdens of the state ought to be fairly distributed among its citizens. **No person shall be deprived of life, liberty or property without due process of law,** not shall any person be denied equal protection of the laws. No otherwise qualified person shall, solely by reason of race, gender or handicap be subject to discrimination by the state, its agents or any person or entity doing business with the state. Nothing in this section shall be construed to grant or secure any right relating to abortion or the funding thereof.

If a State allows a certain class of entities to take property without a hearing through a statutory advertising, and an entity, such as MERS, not within that statutory class attempts to undertake statutory advertising, then the Due Process Clauses of the Rhode Island State Constitution and United States Constitution prohibiting the taking of property without a hearing is violated unless such wrongful use of the statutory power of foreclosure is stayed.

Contrary to the Magistrates' finding, that is the description of a *case and controversy* with harm occurring to the Plaintiff.. The putative victim of such harm, thus, has judicial and prudential standing to bring constitutions and statutory claims through the provisions of 42 U.SC. 1983;of R.I.G.L.§9-30-2; of R.I.G.L.§34-16-4;of R.I.G.L.§34-26-1; of R.I.G.L.§34-13.1-5 , and of R.I.G.L.§34-7-5.

The Magistrate's findings wrongfully assumed that mortgagors' grants of the statutory power of sale, the statutory condition, and statutory mortgage covenants to MERS was authorized by R.I. statutes.

Any person claiming a state defined property interest under state law may challenge another person or entity which claim a property interest in the same property ownership interest in by filing a complaint in the Superior Court through six (6) separate statutory routes to contest whether or not the documents recorded in the municipal land records are in conformance with Title 34 of the R.I. General laws.

i.   Plaintiffs, through 42 U.S.C. §1983, claim the loss of state property rights, to wit, their statutory right to redeem their mortgage deed which otherwise  is being taken by an unauthorized foreclosure advertiser, who is a usurper of that state power without a judicial hearing in violation of the Due Process Clauses of the United States and of the State of Rhode Island, as protected by the provisions of 42 U.SC. 1983.

ii.    Through the provisions of R.I.G.L.§34-16-4[16],Plaintiffs are claiming ownership of the fee simple and seek to clearing the Plaintiffs' title of unlawful encumbrances by the Defendants.

iii.    Through the provisions of R.I.G.L.§34-13.1-5[17];Plaintiffs are claiming that only and not the Defendants have a marketable title due to forty (40) years of ownership of the fee interest.

iv.    Through R.I.G.L.§34-26-1[18],Plaintiffs claim ownership as a mortgagor and seek to redeem their mortgage note and mortgage deed from the actual *mortgagee*, or lawful *assignee* of the mortgage deed and note.

v.    Through R.I.G.L.§34-7-5[19], the Plaintiffs may claim title by having occupied the real estate openly and adversely for ten (10) years.

---

[16]R.I.G.L.§34-16-4. Action brought by person claiming through conveyance, devise,or inheritance. Any person or persons claiming title to real estate, or any interest or estate, legal or equitable, in real estate, including any warrantor in any deed or other instrument in the chain of title to the real estate, which title, interest, or estate is based upon, or has come through, a deed, grant, conveyance, devise, or inheritance, purporting to vest in the person or persons or his, her, or their predecessors in title the whole title to such real estate, or any fractional part thereof or any interest or estate therein, may bring a civil action against all persons claiming, or who may claim, and against all persons appearing to have of record any adverse interest therein, to determine the validity of his, her, or their title or estate therein, to remove any cloud thereon, and to affirm and quiet his, her, or their title to the real estate. The action may be brought under the provisions of this section whether the plaintiff may be in or out of possession and whether or not the action might be brought under the provisions of § 34-16-1 or under the provisions of any other statute.

[17] R.I.G.L.§34-13.1-5. Notice of claim filed within forty (40) year period**.** (a) Any person claiming an interest of any kind in land may preserve and keep effective that interest by recording, during the forty (40) year period immediately following the effective date of the root title of the person whose record title would otherwise be marketable, a notice in writing, duly verified by oath, setting forth the nature of the claim. No disability or lack of knowledge of any kind on the part of anyone suspends the running of the forty (40) year period. Such notice may be recorded by the claimant or by any other person acting on behalf of any claimant who is: (1) Under a disability (2) unable to assert a claim on his or her own behalf or (3) one of a class, but whose identity cannot be established or is uncertain at the time of filing such notice of claim record. (b) If the same record owner of any possessory interest in land has been in possession of that land continuously for a period of forty (40) years or more, during which period no title transaction with respect to the interest appears of record in his or her chain of title and no notice has been recorded by him or her on his or her behalf as provided in subsection (a) of this section, and the possession continues to the time when marketability is being determined, that period of possession shall be deemed equivalent to the recording of the notice immediately preceding the termination of the forty (40) year period described in subsection (a) of this section.

[18]R.I.G.L§34-26-1. Complaint to redeem**.** Any person entitled in equity to redeem any mortgaged property, whether real or personal, may prefer a complaint to redeem the property, which complaint may be heard, tried and determined according to the usages in chancery and the principles of equity.

[19]R.I.G.L.§34-7-1. Conclusive title by peaceful possession under claim of title**.** Where any person or persons, or others from whom he, she, or they derive their title, either by themselves, tenants or lessees, shall have been for the space of ten (10) years in the uninterrupted, quiet, peaceful and actual seisin and possession of any lands, tenements or hereditaments for and during that time, claiming the same as his, her or their proper, sole and rightful estate in fee simple, the actual seisin and possession shall be allowed to give and make a good and rightful title to the person or

vi.     Through R.I.G.L.§9-30-2[20], any "person interested under a deed *** <u>may have determined</u>

<u>any question of construction or validity arising under the instrument, statute</u>, by the R.I.

Superior Court.

Upon filing of the complaint, the Plaintiffs then files in a notice of the pending suit in the

land records of the city of town in which the property is located, pursuant to R.I.G.L.§9-4-9[21] or

R.I.G.L.§34-7-6[22] in the municipal land records; and their dispute then clouds title until a judicial

decree resolves the validity of the encumbrance.

Not deciding whether or not those assignments are clouds on title does not make those title

questions disappear. What happens if the Federal Court has no Article III jurisdiction? Are these

---

persons, their heirs and assigns forever; and any plaintiff suing for the recovery of any such lands may rely upon the possession as conclusive title thereto, and this chapter being pleaded in bar to any action that shall be brought for the lands, tenements or hereditaments, and the actual seisin and possession being duly proved, shall be allowed to be good, valid and effectual in law for barring the action.

[20] R.I.G.L §9-30-2. Power to construe. **Any person interested under a deed**, will, written contract, or other writings constituting a contract, **or whose rights**, status, or other legal relations **are affected by a statute**, municipal ordinance, contract, or franchise, **<u>may have determined any question of construction or validity arising under the instrument, statute</u>**, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.(Emphasis Added).

[21] R.I.G.L.§ 9-4-9. Lis pendens. (a) No proceeding in court, hereafter taken, whether by filing bill, petition, declaration, or other complaint, or by rule of court or otherwise, and no final order, decree, or judgment, concerning the title to any real estate, in this state, or to any interest or easement therein, shall affect the title (except as to parties thereto and their heirs and devisees, and those having actual notice thereof) as to any rights acquired before notice of the filing, or entry of the notice shall be recorded in the records of land evidence in the town or city where the real estate is situated; the notice to be copied in a book duly indexed and kept for that purpose. The notice shall briefly state the names of all the parties, the court wherein filed, the date of filing, and the substance of the bill, petition, declaration or other complaint, rule, order, decree, or judgment, and a description of the real estate thereby affected, so as far as may be necessary to warn any person subsequently dealing with the title to the land. (b) Any person causing such notice to be recorded shall, within seven (7) days of the recording, cause a copy of said notice to be mailed, regular mail, postage prepaid to all parties named in the bill, petition, declaration or other complaint, rule, order, decree, or judgment at their last known address. Failure to comply with this provision shall not invalidate the lis pendens.

[22] R.I.G.L.**§34-7-6. Notice of intent to dispute interrupting adverse possession.** Whenever the legal owner of any lands anticipates that any other person or persons may obtain the title to those lands, or any way, easement or privilege therein, by possession under the provisions of this chapter, he or she may give notice in writing to the person claiming or using the lands, way, easement, or privilege, of his or her intention to dispute any right arising from that claim or use; and the notice, served and recorded as hereinafter provided, shall be deemed an interruption of the use and prevent the acquiring of any right thereto by the continuance of the use for any length of time thereafter. The notice, signed by the owner of the lands, his guardian or agent, may be served by any disinterested person, making return under oath, on the party so claiming or using the property, his or her agent or guardian, if within this state, otherwise, on the tenant or occupant, if there be any; and the notice, with the return thereon, shall be recorded within three (3) months thereafter in the records of land evidence in the town in which the land is situated, and a copy of the record, certified by the recording officer to be a true copy of the record of the notice, and the return thereon, shall be evidence of the notice and of the service of the same.

matters remanded to the State Court where there is jurisdiction? Like hidden cancer cells, those

clouds on title are simply awaiting their day to wreak havoc on a future land owner. Dismissal

does not change the several title questions, , which remain for the Plaintiffs  and future litigants

to  litigate in State Court pursuant to R.I.G.L.§9-30-2, declaring who has fee simple,

R.I.G.L.§34-26-4, clearing clouds on titles, R.I.G.L.§34-7-5, finding ownership by adverse

possession,  and to R.I.G.L.§34-26-1 and to R.I.G.L.§ 34-4-27, trustees failing to record

memorandums of trust authority.[23]

## 6.  PRIVATE CONTRACTS CAN NOT AMEND STATUTORY REQUIREMENTS.

MERS is attempting by private contract to amend the Rhode Island conveyance statutes.

The creation of conveyances[24], such as deeds[25],[26] mortgages[27], assignments[28], and of the

---

[23]  R.I.G.L.**§ 34-4-27. Title to real estate — Trusts. —**  (a) Property to be held in trust shall be conveyed to the trustees of the subject trust. An affidavit or memorandum of trust may be recorded in connection with the creation, amendment, restatement, or revocation of a trust. **Any transfer or mortgage of trust property by the trustees shall require the recording of the trust instrument as amended or restated, or, in the alternative, the recording of the affidavit or memorandum of trust.** An affidavit or memorandum of trust shall be executed either by each settlor of the trust, or by each current trustee and shall include the following information:***

[24]  **R.I.G.L.§34-11-1.** Conveyances required to be in writing and recorded. **Every conveyance of lands,** tenements or hereditaments absolutely, **by way of mortgage,** or on condition, use or trust, for any term longer than one year, and **all declarations of trusts concerning the conveyance, shall be void** unless made in writing **duly signed,** acknowledged as hereinafter provided, **delivered,** and recorded in the records of land evidence in the town or city where the lands, tenements or hereditaments are situated; provided, however, that the conveyance, if delivered, as between the parties and their heirs, and as against those taking by gift or devise, or those having notice thereof, shall be valid and binding though not acknowledged or recorded.*** (Emphasis Added)

[25]  R.I.G.L.§ 34-11-15. Effect of warranty deed. A deed substantially following the form entitled "Warranty Deed" shall, when duly executed, have the force and effect of a deed in fee simple to the grantee and his or her heirs and assigns, to his or her and their own use, with covenants on the part of the grantor, for himself or herself and for his or her heirs, executors, and administrators, with the grantee and his or her heirs and assigns, (1) That at the time of the delivery of such deed he or she is lawfully seised in fee simple of the granted premises, (2) That the granted premises are then free from all incumbrances, (3) That he or she has then good right, full power, and lawful authority to sell and convey the same to the grantee and his or her heirs and assigns, (4) That the grantee and his or her heirs and assigns shall at all times after the delivery of such deed peaceably and quietly have and enjoy the granted premises, and (5) **That the grantor will, and his or her heirs, executors, and administrators shall, warrant and defend the granted premises to the grantee and his or her heirs and assigns forever against the lawful claims and demands of all persons.(Emphasis Added).**

[26]  R.I.G.L§ 34-11-17. Effect of quitclaim deed. A deed substantially following the form entitled "Quitclaim Deed" shall, when duly executed, have the force and effect of a deed in fee simple to the grantee and his or her heirs and assigns, to his, her, and their own use, with covenants on the part of the grantor, for himself or herself and for his or her heirs, executors, and administrators, with the grantee and his or her heirs and assigns, that he or she will, and his or her heirs, executors, and administrators shall, warrant and defend the granted premises to the grantee and his or her heirs and assigns forever against the lawful claims and demands of all persons claiming by, through, or under the grantor.

processes of foreclosure by advertisement[29] or by judicial foreclosure[30] have been long

established by the R.I. General Assembly  pursuant to Article VI of the R.I. State Constitution,

with the Governor pursuant to Article IX of R.I. State Constitution.

> **Welcome to MERS!**
> MERS is an innovative process that simplifies the way mortgage
> ownership and servicing rights are originated, sold and tracked. Created
> by the real estate finance industry, **MERS eliminates the need to
> prepare and record assignments when trading residential and
> commercial mortgage loans. (Emphasis Added).**
> Web Source: http://www.mersinc.org/

---

[27]**R.I.G.L.§ 34-11-19. Contents and effect of short-form mortgage deed.** A deed substantially following the form entitled "Mortgage Deed" shall, when duly executed, have the force and effect of a mortgage deed to **the mortgagee and his or her heirs and assigns,** to his or her and their own use, with **mortgage covenants and upon the statutory condition and with the statutory power of sale,** as defined in §§ 34-11-20 — 34-11-22 inclusive, to secure the payment of the money and the performance of any obligation or obligations therein specified or referred to; provided, however, that any other lawful covenant, agreement, condition or power may be inserted or incorporated by reference in such mortgage deed and any of the terms and provisions of the mortgage covenants, statutory condition and statutory power of sale may be changed, amended, deleted or supplemented by any lawful agreement, covenant, condition or power specified or incorporated by reference in such mortgage deed.(Emphasis Added)

[28]**R.I.G.L§ 34-11-24. Effect of assignment of mortgage.** An assignment of mortgage substantially following the form entitled "Assignment of Mortgage" shall, when duly executed, have the force and effect of granting, bargaining, transferring and making over to the assignee, his or her heirs, executors, administrators, and assigns, the mortgage deed with the note and debt thereby secured, and all the right, title and interest of the mortgagee by virtue thereof in and to the estate described therein, to have and to hold the mortgage deed with the privileges and appurtenances thereof to the assignee, his or her heirs, executors, administrators and assigns in as ample manner as the assignor then holds the same, thereby substituting and appointing the assignee and his or her heirs, executors, administrators and assigns as the attorney or attorneys irrevocable of the mortgagor under and with all the powers in the mortgage deed granted and contained.(Emphasis Added)

[29] R.I.G.L.§ 34-11-22. Statutory power of sale in mortgage. —   The following power shall be known as the "statutory power of sale" and may be incorporated in any mortgage by reference:   (Power) But if default shall be made in the performance or observance of any of the foregoing or other conditions, or if breach shall be made of the covenant for insurance contained in this deed, then it shall be lawful for the mortgagee or his, her or its executors, administrators, successors or assigns to sell, together or in parcels, all and singular the premises hereby granted or intended to be granted, or any part or parts thereof, and the benefit and equity of redemption of the mortgagor and his, her or its heirs, executors, administrators, successors and assigns therein, at public auction upon the premises, or at such other place, if any, as may be designated for that purpose in this deed, or in the published notice of sale first by mailing written notice of the time and place of sale by certified mail, return receipt requested, to the mortgagor, at his or her or its last known address, at least twenty (20) days for mortgagors other than individual consumer mortgagors, and at least thirty (30) days for individual consumer mortgagors, prior to first publishing the notice, including the day of the mailing in the computation; second, by publishing the same at least once each week for three (3) successive weeks in a public newspaper published daily in the city in which the mortgaged premises are situated; ***

[30] *R.I.G.L.§ 34-27-1.* Complaint to foreclose. —   Any person entitled to foreclose the equity of redemption in any mortgaged estate, whether real or personal, may prefer a complaint to foreclose it, which complaint may be heard,tried, and determined according to the usages in chancery and the principles of equity.

MERS cannot declare by private contract that it is eliminating the need for (i) the delivery[31] of R.I. statutory assignments [32],[33],[34]of the R.I. statutory power of sale from the actual mortgagee who is the holder of the mortgage note, or by a holder of a statutory power of attorney, R.I. G.L. §34-11-34[35]. Only the General Assembly may amend its conveyance statutes. Rhode Island has not authorized "nominees" or "servicers" to perform those statutory functions.

MERS cannot by contract create itself as a universal place holder for its members who want to avoid filing recorded mortgage, assignments, or powers of attorney.

Had the foreclosing Defendant sought the use of Rhode Island judges pursuant to R.I.G.L.§34-27-1, rather than the clerks at the Providence Journal to foreclose, pursuant to R.I.G.L. §34-11-22, the Plaintiff would not be suffering the possible loss of their home without

---

[31] R.I.G.L.**§ 34-11-4. Delivery of conveyance sufficient to pass title.** Any form of conveyance in writing, duly signed and delivered by the grantor, or the attorney of the grantor duly authorized, shall be operative to convey to the grantee all the possession, estate, title and interest, claim, demand or right of entry or action, of the grantor, absolutely in and to the land conveyed, unless otherwise expressly limited in estate, condition, use or trust, and if otherwise expressly limited, shall convey such property for the time or estate or on the condition, use or trust as declared, without any other act or ceremony; and if also duly acknowledged and recorded, shall be operative as against third parties.

[32] **R.I.G.L.§34-11-24. Effect of assignment of mortgage**. **An assignment of mortgage substantially following the form entitled "Assignment of Mortgage**" shall, **when duly executed**, have the force and effect of granting, bargaining, transferring and making over to **the assignee, his or her heirs, executors, administrators, and assigns, the mortgage deed with the note** and debt thereby secured, and all the right, title and interest of the mortgagee by virtue thereof in and to the estate described therein, to have and to hold the mortgage deed with the privileges and appurtenances thereof to the assignee, his or her heirs, executors, administrators and assigns in as ample manner as the assignor then holds the same, thereby substituting and appointing the **assignee and his or her heirs, executors, administrators and assigns** as the attorney or attorneys irrevocable of the mortgagor under and with all the powers in the mortgage deed granted and contained.(Emphasis Added).

[33] R.I.G.L.**§ 34-11-11. Use of statutory forms.** The forms set forth in § 34-11-12 may be used, and shall be sufficient for their respective purposes. They shall be known as "**statutory forms**" and may be referred to as such. They may be altered as circumstances require, and the authorization of such forms by this chapter shall not preclude the use of other forms.

[34]**R.I.G.L.§34-11-12. Statutory forms set out.** The statutory forms referred to in § 34-11-11 are as follows:***
 (6) **ASSIGNMENT OF MORTGAGE.** ___ holder of a mortgage by _____ to _____ dated recorded in the records of deeds in _____ in _____ book no. at page _____, **for consideration paid**, **assign** the mortgage a**nd the note and claim secured** thereby to _____ Witness _____ hand this _____ day of _____ (Here add acknowledgment.) (Emphasis Added).

[35] R.I.G.L.**§34-22-6. Acts under power of attorney.** The donee of a power of attorney may, under and within the authority of the power, if he or she thinks fit, execute or do any assurance, instrument, or thing in and with his or her own name and signature, and, where sealing is required, with his or her own seal; and every assurance, instrument and thing so executed and done shall be as effectual in law, to all intents, as if it had been executed or done by the donee of the power in the name and with the signature, or signature and seal, of the donor thereof.

Due Process. Rhode Island consumer protection statutes may not be amended by private

contracts which MERS, to substitute itself for statutory mortgagees, R.I. G.L.34-11-22,

assignees, R.I. G.L.34-11-24 and powers of attorneys. R.I. G.L.§ 34-11-24.[36].

## 7.  THE FORM CONTRACTUAL DELEGATIONS OF THE R.I. STATUTORY MORTGAGE POWERS WITHIN THE MERS MORTGAGE FORM DEED ARE NOT AUTHORIZED BY CHAPTER 11 OF TITLE 34.

The MERS  assignments of the statutory power of sale by advertising are void. Only an

entity which owns the mortgage note may exercise the power of sale contained in a original

mortgage deed under Rhode Island law, pursuant to R.I.G.L.§ 34-11-22[37]; and only if such an

entity may make assignments in conformity with R.I.G.L.34-11-12 (6)[38] and R.I.G.L.34-11-24.[39]

---

[36] R.I. G.L. § 34-11-34. Conveyances executed by attorney - Recording of power. Any conveyance executed by attorney shall be as valid as if executed by the grantor himself, providing that a power of attorney be given by such grantor for this purpose; which power and the deed executed by the attorney there under shall be signed, acknowledged, delivered and recorded with like formalities prescribed by law concerning deeds from grantors in person.

[37] R.I.G.L.§ 34-11-22. Statutory power of sale in mortgage. —  The following power shall be known as the "**statutory power of sale" and may be incorporated in any mortgage by reference**:   (Power)  But if default shall be made in the performance or observance of any of the f**oregoin**g or other **conditions, or** if breach shall be made of the covenant for insurance contained in this deed, then **it shall be lawful for the mortgagee or his, her or its** executors, administrators, successors or **assigns to sell, together** or in parcels, all and singular the premises hereby granted or intended to be granted, or any part or parts thereof**, and the benefit and equity of redemption of the mortgagor** and his, her or its heirs, executors, administrators, successors and assigns therein, at public auction upon the premises, or at such other place, if any, as may be designated for that purpose in this deed, or in the published notice of sale first by mailing  written notice of the time and place of sale by certified mail, return receipt requested, to the mortgagor, at his or her or its last known address, at least twenty (20) days for mortgagors other than individual consumer mortgagors, and at least thirty (30) days for individual consumer mortgagors, prior to first publishing the notice, including the day of the mailing in the computation; second, by publishing the same at least once each week for three (3) successive weeks in a public newspaper published daily in the city in which the mortgaged premises are situated; ***.

[38] **R.I.G.L.34-11-12 (6) ASSIGNMENT OF MORTGAGE.**
holder of a mortgage by to dated recorded in the records of deeds in  book no. at page **, for consideration paid,** assign the mortgage and the note and claim secured thereby to Witness hand this day of (Here add acknowledgment.) (Emphasis Added).

[39] **R.I.G.L.34-11-24. Effect of assignment of mortgage.  An assignment of mortgage substantially following the form entitled "Assignment of Mortgage" shall, when duly executed, have the force and effect of granting, bargaining, transferrin**g and making over to **the assignee**, his or her heirs, executors, administrators, and assigns, the **mortgage deed with the note and debt thereby secured**, and all the right, title and interest of the mortgagee by virtue thereof in and to the estate described therein, to have and to hold the mortgage deed with the privileges and appurtenances thereof to the assignee, his or her heirs, executors, administrators and assigns in as ample manner as the assignor then holds the same, thereby **substituting and appointing the assignee** and his or her heirs, executors, administrators and assigns **as the attorney or attorneys irrevocable of the mortgagor** under and with all the powers in the mortgage deed granted and contained. **History.** P.L. 1927, ch. 1056, § 15; G.L. 1938, ch. 436, § 14; G.L. 1956, §34-11-24.

Since a MERS members  making the assignments lack a recorded power of attorney or a valid assignment from the mortgagor, MERS had nothing to assign.

When a MERS member purports to assigns on record a mortgage deed of the mortgagor without having paid the mortgagee for the purchase of the mortgage note, assignee, and without having the ability  to assign a mortgage  note which is does not own, then the  statutory power of sale is not assigned.

Without the assignment of the original mortgage note containing the "conditions" of default the basis for a default are otherwise unknown; and thus, there is no basis for exercising the statutory power of sale by advertising contained in the provisions of R.I.G.L.§ 34-11-22. Since the MERS assignee does not own the mortgage note, it lacks the knowledge to make the affidavit of sale required for a foreclosure deed that the mortgage note was not paid and that default triggered the initiation of newspaper advertising.

Each MERS mortgage deed contains the following two (2) paragraphs:

> "This security Instrument **secures to the Lender** (**1) the repayment of the loan, and all renewals, extensions and modifications of the Note;** and the performance of Borrowers covenants and agreements under this Security Agreement and the Note. **For this purpose, Borrower does hereby mortgage, grant, and convey to MERS (solely as nominee for the Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with MORTGAGE COVENANTS UPON THE STATUTORY CONDITION and with STATUTORY POWER OF SALE, the following described property located in the Town of \*\*\*, (See Legal Description Attached Hereto and Made a Part Hereof, at Parcel ID \*\*\* which currently has the address of \*\*\*** TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtences and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property". Borrower understands and agrees that **MERS holds only legal title to the interests granted by the Borrower in this Security Instrument**, ?but if necessary to comply with law or custom,

**MERS (as nominee for Lender's successors and assigns) has the right
to exercise any or all of those interests, including but not limited to,
releasing and cancelling this Security Interests."(Emphasis Added)**

\*\*\* **Lender** at its option may require  immediate payment in full of all sums
secured by this Security Instrument without further demand and may invoke
the **STATUTORY POWER OF SALE** \*\*\*.

MERS  is not a **"mortgagee or his, her or its executors, administrators, successors or
assigns.** A *mortgagor* is not authorize by the provisions of RIGL§ 34-11-22,[40] §34-11-21 or of to
§34-11-20 to grant those statutory powers to an entity which is not a **"mortgagee or his, her or
its executors, administrators, successors or assigns**". Only a *mortgagee* or *an assigns* of the
mortgagee or a power of attorney of the mortgagee or assigns may grant those powers to a third
party. MERS is not authorized to exercise a power of sale pursuant to R.I.G.L.§34-11-22 because
it is not a statutory  "***mortgagee or his, her or its executors, administrators, successors or
assigns."*** MERS is not eligible under the provisions of R.I.G.L.§34-11-21[41], to receive a

---

[40] **R.I.G.L.§ 34-11-22. Statutory power of sale in mortgage.** The following power shall be known as the "statutory
power of sale" and may be incorporated **in any mortgage by reference**:
(Power)
But if default shall be made in the performance or observance of any of the foregoing or other conditions, or if
breach shall be made of the covenant for insurance contained in this deed, then **it shall be lawful for the mortgagee
or his, her or its executors, administrators, successors or assigns to sell**, together or in parcels, all and singular
the premises hereby granted or intended to be granted, or any part or parts thereof, **and the benefit and equity of
redemption** of the mortgagor and his, her or its heirs, executors, administrators, successors and assigns therein, **at
public auction** upon the premises, or at such other place, if any, as may be designated for that purpose in this deed,
or **in the published notice of sale** \*\*\* at least once each week in that newspaper; and in his, her or its or their own
name or names, or as the attorney or attorneys of the mortgagor, for that purpose by these presents duly authorized
and appointed with full power of substitution and revocation to make, execute and deliver to the purchaser or
purchasers at that sale a good and sufficient deed or deeds of the mortgaged premises in fee simple, and to receive
the proceeds of such sale or sales, and from such proceeds to retain all sums hereby secured whether then due or to
fall due thereafter, or the part thereof then remaining unpaid, and also the interest then due on the proceeds, together
with all expenses incident to the sale or sales, or for making deeds hereunder, and for fees of counsel and attorneys,
and all costs or expenses incurred in the exercise of such powers, and all taxes, assessments, and premiums for
insurance, if any, either theretofore paid by the mortgagee or his or her executors, administrators or assigns, or then
remaining unpaid, upon the mortgaged premises, rendering and paying the surplus of the proceeds of sale, if any
there be, over and above the amounts so to be retained as aforesaid, together with a true and particular account of the
sale or sales, expenses and charges, to the mortgagor, or his, her or its heirs, executors, administrators, successors or
assigns; which sale or sales made as aforesaid shall forever be a perpetual bar against the mortgagor and his, her or
its heirs, executors, administrators, successors and assigns, and all persons claiming the premises, so sold, by,
through or under him or her, them or any of them. (Emphasis Added).
[41] **R.I.G.L.§34-11-21. Statutory mortgage condition.** The following condition shall be known as the "statutory
condition", and may be incorporated in any mortgage by reference: (Condition) Provided, nevertheless, and this

statutory condition <u>because</u> (1)it is not the " *mortgagee or his or her heirs, executors,*

*administrators, or assigns*"; and (2) because  MERS <u>does not receive</u> from the Mortgagor "t*he*

*principal and interest of that certain promissory note bearing even date with t*his deed and

*secured by this deed*." The provisions of  R.I.G.L.§34-11-20[42] do not authorize the use of the

words *mortgage covenants* in a contract in which no pro*mises are made to the third party*

*receiving those statutory covenants*. The mortgagor is not selling its property to MERS. The

mortgagor has received no money from MERS. The mortgagor is not promising MERS that it

will defend the property sold against prior title disputes. The mortgagor is not promising to

deliver a deed to MERS if it sells the property.

## 8.   RI LAW DO<u>E</u>S AUTHORIZE EITHER MERS, OR NOMINEES, OR MORTGAGE SERVICERS TO BE A MORTGAGEE.

---

conveyance is made upon the express condition, that **if the mortgagor or his or her heirs, executors, administrators or assigns shall pay to the mortgagee or his or her heirs, executors, administrators, or assigns the principal and interest of that certain promissory note bearing even date with this deed and secured by this deed, and shall perform every other obligation secured by this deed, at the time provided in the promissory note or in this deed,** and shall also pay all taxes and assessments of every kind levied or assessed upon or in respect of the mortgaged premises, **then this deed, as also the promissory note, shall become and be absolutely void to all intents and purposes whatsoever.**

[42]**R.I.G.L.§34-11-20. Meaning of mortgage covenants.** In any conveyance of real estate the words "with mortgage covenants" shall have the full force, meaning, and effect of the following words, and shall be applied and construed accordingly: "The mortgagor, for himself or herself and for his or her heirs, executors, and administrators, **covenants with the mortgagee and his or her heirs and assigns,** that he or she is lawfully seised in fee simple of the mortgaged premises; that the same are free from all incumbrances; that he or she has good right, full power, and lawful authority to sell **and convey the same to the mortgagee and his or her heirs and assigns**; that the **mortgagee and his or her heirs and assigns** shall at all times hereafter peaceably and quietly have and enjoy the mortgaged premises and that the mortgagor will, and his or her heirs, executors, and administrators shall, warrant and defend the premises to the **mortgagee and his or her heirs and assigns** forever against the lawful claims and demands of all persons, and that the mortgagor and his or her heirs and assigns, i**n case a sale shall be made under the power of sale, will, upon request, execute, acknowledge, and deliver to the purchaser or purchasers such deed or deeds confirmatory of the sale** as may be required; and that insurance against loss by fire shall be kept and maintained on the buildings, if any, on the mortgaged premises in such office or offices as the mortgagee or his or her heirs, executors, administrators, or assigns shall approve, in a sum not less than the amount secured by the mortgage deed, or as otherwise provided herein, and that the policy or policies of such insurance shall be delivered to and held by the mortgagee and assigned and transferred, or made payable in case of loss, to the mortgagee or his or her heirs, executors, administrators or assigns, as collateral security hereto, and in default thereof, that the **mortgagee or his or her heirs, executors, administrators or assigns may effect such insurance** in the name of the mortgagor or his or her heirs or assigns, payable in case of loss to **the mortgagee or his or her heirs, executors, administrators or assigns,** and that the premium or premiums paid therefor shall be a further charge upon the mortgaged premises."(Emphasis Added).

Rhode Island allows no statutory powers to be exercised by MERS. MERS is neither a statutory "**mortgagee**, nor a statutory *"nominee" nor a statutory "mortgage servicer." MERS is not authorized* by R.I.G.L.§ 18-10-1 to be a "**nominee**". MERS is not a trust com*pany or a national banking a*ssociation. It has an interest in real estate and not in personal property. A statutory nominee is someone who can hold stock in a corporation for another, which is a form of personal property not real estate.. MERS is a Delaware corporation, which maintains a registry of mortgage deeds for its members. MERS is not authorized by R.I.G.L.**§ 18-10-1** to be a "nominee" because it is not a trust company or a national banking association. Since 2010 MERS has not authorized its agents to use MERS as the foreclosing mortgagee.[43]

9. *MORTGAGE SERVICERS* **SUCH AS THE DEFENDANTS, AMERICAN HOME MORTGAGE SERVICING INC. ARE ONLY AUTHORIZED BY THE GENERAL ASSEMBLY TO PERFORM FIVE (5) SPECIFIC FUNCTIONS, AND THOSE FUNCTIONS DO NOT INCLUDE FORECLOSURES AND ASSIGNMENTS.**

The General Assembly has delegated its regulatory powers with precision. If it wanted *mortgage servicers* or *nominees* to be able to exercise the statutory power of foreclosure, it would have passed a law providing that power to those entities.

---

[43] **Servicing Guide, Part VIII, 105: Conduct of Foreclosure Proceedings.**Effective with foreclosures referred on or after May 1, 2010, **MERS must not be named as a plaintiff in any foreclosure action**, whether judicial or non-judicial, on a mortgage loan owned or securitized by Fannie Mae.MERS is the mortgagee of record when either a mortgage names MERS as the original mortgagee and is recorded in the applicable land records, or a completed and recorded assignment names MERS as the mortgage assignee. **Therefore, when MERS is the mortgagee of record, the servicer must prepare a mortgage assignment from MERS to the servicer, and then bring the foreclosure in its own name, unless Fannie Mae specifically requires that the foreclosure be brought in the name of Fannie Mae.**Â  In that event, the assignment must be from MERS to Fannie Mae, in care of the servicer at the servicer's address for receipt of notices. In all cases, the assignment from MERS to the servicer or Fannie Mae must be recorded before the foreclosure begins.Fannie Mae will not reimburse the servicer for any expense incurred in preparing or recording an assignment of the mortgage loan from MERS to the servicer or to Fannie Mae.If an assignment has been recorded from MERS to either the servicer or Fannie Mae and the borrower reinstates the mortgage loan prior to completion of the foreclosure proceedings, the servicer need not re-assign the mortgage to MERS and re-register the mortgage with MERS. Re-assigning and re-registering the mortgage with MERS is not required by Fannie Mae and any such action will be at the discretion and expense of the servicer.The servicer should consult its foreclosure attorney to determine if any other legal requirements apply when conducting foreclosures of mortgage loans in which MERS is the prior mortgagee of record.

The General Assembly mentions *servicers of mortgage deed*s in five consumer protection statutes. R.I.G.L.§ 19-9-9;R.I.G.L§ 34-26-8, R.I.G.L. §5-70-1; R.I.G.L.§ 34-28-17.1;Not one enactment allows mortgage servicers to assign mortgages or conduct foreclosures.

A *mortgage servicer* may pay property taxes in installments. R.I.G.L.§ 44-5-7[1].In 1995 the General Assembly included mortgage servicers in statutes giving borrowers the right to obtain pay off amounts for their mortgages within three (3) days. See  R.I.G.L.§ 19-9-9. Mortgages issued – Payoffs. [44]  R.I.G.L§ 34-26-8.Release of mortgage – Affidavit.[45]

---

[44] **R.I.G.L.§ 19-9-9. Mortgages issued - Payoffs**
(a) Every lending institution or other entity that owns or *services* a loan, secured by a mortgage on property located in this state, **shall:**
**(1) Provide to the obligor within three (3) business days after receipt of a written or telefaxed request, the exact payoff due the lender on the loan;**\*\*\*.
**(2)** Permit the payoff to be made to it or, in the case of a mortgage owned or **serviced b**y its subsidiary or affiliate or servicing agent, permit the payoff to be made at the subsidiary's or affiliate's principal place of business located in this state;
\*\*\*
**(b) "Payoff statement"** means any statement produced by a lending institution or *servicer of a mortgage* setting forth the amount of the unpaid balance on said mortgage loan, including principal, interest and other charges assessed pursuant to the loan documentation of such mortgage and a statement of the interest on a per diem basis with respect to the unpaid principal balance of the mortgage loan.
(c) Notwithstanding the provisions of any law or regulation to the contrary, if a settlement agent complies with all of the terms of a payoff statement from the lending institution or *servicer* then the settlement agent shall not be responsible for any shortfall in the amount due to the mortgagee to pay off the mortgage loan in full. The settlement agent shall not be liable for any interest on funds tendered to said lending institution or servicer beyond the date that said funds were received by said lending institution or servicer even if said funds were insufficient to pay off the full balance of the mortgage loan. .
[45] **R.I.G.L§ 34-26-8.  Release of mortgage - Affidavit**
(a) For purposes of this section:
**(1) "Mortgage" means a mortgage upon any interest in real property located in the State of Rhode Island.**
(2) "Person" means an individual, corporation, business trust, estate, trust, partnership, association, joint venture, government, governmental subdivision or agency, or other legal or commercial entity;
**(3) "Mortgagor"** means the grantor of a mortgage**;**
**(4) "Mortgagee" means the grantee of a mortgage; provided, if the mortgage has been assigned of record. "Mortgagee"** means the last person to whom the mortgage has been assigned of record; provided further, if the mortgage has been serviced **by a mortgage servicer**, **"Mortgagee" means the mortgage servicer;**
(5) **"Mortgage servicer"** means the last person to whom the mortgagor has been instructed by the mortgagee to send payment of the mortgage. The person who has transmitted a payoff statement shall be deemed to be the mortgage servicer with respect to the mortgage described in that payoff statement;
\*\*\*.

In 2006 the General Assembly excluded *mortgage servicers* from regulations limiting the role of mortgage consultants, See R.I.G.L.§5-70-1**.** [46] A *mortgage servicer* is not a necessary party to a mechanic's lien complaint pursuant to the provisions of R.I.G.L.§34-28-17.1.[47].

## 10. MERS LACKS A POWER OF ATTORNEY FROM THE STATUTORY MORTGAGEE, THUS IT HAS NO STATUTORY POWER TO MAKE ASSIGNMENTS FOR THE ACTUAL MORTGAGEE.

MERS has not recorded in any R.I. municipality any power of attorney authorizing any of its members to transfer and convey any mortgage deed to any third party pursuant to the provisions R.I. G.L. § 34-11-34[48] and R.I. G.L. §34-22-6[49]., therefore assignment by a MERS member to the Defendant party alleging conducting the foreclosure advertising is void; and any subsequent foreclosure deed is void. R.I.G.L. § 34-11-1.

---

[46] R.I.G.L 5-79-1.  Definitions
 As used in this chapter:
 \*\*\*
 **(3) A foreclosure consultant does not include any of the following: \*\*\***
 **(viii) A person licensed as a residential mortgage originator or servicer pursuant to chapter 19-14, when acting under the authority of that license or a foreclosure purchaser as defined in §5-79-10;**
 \*\*\*

[47] R.I.G.L.**§ 34-28-17.1.  Dismissal of complaint for other cause**
(a) If any person in interest, including, but not limited to, an owner or contractor, claims: (1) that any person who has provided labor, materials or equipment or has agreed to provide funding, financing or payment for labor or materials or equipment refuses to continue to provide such funding, financing or payment for labor materials solely because of the filing or recording of a notice of intention; or (2) it appears from the notice of intention that the claimant has no valid lien by reason of the character of or the contract for the labor, materials or equipment and for which a lien is claimed; or (3) that a notice or other instrument has not been filed or recorded in accordance with the applicable provisions of § 34-28-1 et seq.; or (4) that for any other reason a claimed lien is invalid by reason or failure to comply with the provisions of § 34-28-1 et seq., then in such event, such person may apply forthwith to the superior court for the county where the land lies for an order to show cause why the lien in question is invalid, or otherwise void, or the basis of the lien is without probability of a judgment rendered in favor of the lienor. **A mortgage holder or servicer is not a necessary party under this section and shall not be named as a party in any such application or order of notice. \*\*\*(Emphasis added)**

[48] R.I. G.L. **§ 34-11-34. Conveyances executed by attorney - Recording of power.** Any conveyance executed by attorney shall be as valid as if executed by the grantor himself, providing that a power of attorney be given by such grantor for this purpose; which power and the deed executed by the attorney there under shall be signed, acknowledged, delivered and recorded with like formalities prescribed by law concerning deeds from grantors in person.

[49] R.I.G.L.**§34-22-6. Acts under power of attorney.** The donee of a power of attorney may, under and within the authority of the power, if he or she thinks fit, execute or do any assurance, instrument, or thing in and with his or her own name and signature, and, where sealing is required, with his or her own seal; and every assurance, instrument and thing so executed and done shall be as effectual in law, to all intents, as if it had been executed or done by the donee of the power in the name and with the signature, or signature and seal, of the donor thereof.

**11. MERS HAS NOT RECEIVED A RECORDED POWER OF ATTORNEY NOR DOES IT PROVIDE A RECORDED POWER OF ATTORNEY FOR ITS CONVEYANCES PURSUANTTO R.I.G.L.§ 34-11-34.**

MERS does not record in any R.I. municipality any power of attorney authorizing any of its members to transfer and convey any mortgage deed which it may hold to any third party pursuant to the provisions R.I. G.L. § 34-11-34[50], therefore its assignment to the party alleging conducting the foreclosure advertising and foreclosures was void and the subsequent foreclosure deed was void.

**12. THE FORECLOSING DEFENDANT LACKS CONSTITUTIONAL STANDING SINCE IT DOES NOT OWN AN ENFORCIBLE UCC MORTGAGE NOTE.**

Amicus argues, as did counsel in <u>Landmark National Bank v. Kessler</u>, 216 P.2d 158, (2009) [51] argue under Kansas law and as did counsel in <u>Mortgage Electronic System Inc. v.</u>

---

[50] R.I. G.L. **§ 34-11-34. Conveyances executed by attorney - Recording of power.** Any conveyance executed by attorney shall be as valid as if executed by the grantor himself, providing that a power of attorney be given by such grantor for this purpose; which power and the deed executed by the attorney there under shall be signed, acknowledged, delivered and recorded with like formalities prescribed by law concerning deeds from grantors in person.

[51] <u>LANDMARK NATIONAL BANK v.Boyd A. KESLER</u> 216 P.3d 158 (2009)**.** "MERS is a private corporation that administers the MERS System, a national electronic registry that tracks the transfer of ownership interests and servicing rights in mortgage loans. Through the MERS System, MERS becomes the mortgagee of record for participating members through assignment of the members' interests to MERS. MERS is listed as the grantee in the official records maintained at county register of deeds offices. **The lenders retain the promissory notes, as well as the servicing rights to the mortgages. The lenders can then sell these interests to investors without having to record the transaction in the public record.** MERS is compensated for its services through fees charged to participating MERS members."Mortgage Elec. Reg. Sys., Inc. v. Nebraska Depart. of Banking, 270 Neb. 529, 530, 704 N.W.2d 784 (2005).***
**The relationship that MERS has to Sovereign is more akin to that of a straw man than to a party possessing all the rights given a buyer.** A mortgagee and a lender have intertwined rights that defy a clear separation of interests, especially when such a purported separation relies on ambiguous contractual language. The law generally understands that a mortgagee is not distinct from a lender: a mortgagee is "[o]ne to whom property is mortgaged: the mortgage creditor, or lender." Black's Law Dictionary 1034 (8th ed.2004). By statute, assignment of the mortgage carries with it the assignment of the debt. K.S.A. 58-2323. Although MERS asserts that, under some situations, the mortgage document purports to give it the same rights as the lender, the document consistently refers only to rights of the lender, including rights to receive notice of litigation, to collect payments, and to enforce the debt obligation. **The document consistently limits MERS to acting "solely" as the nominee of the lender. \*\*\***
The practical effect of splitting the deed of trust from the promissory note is to make it impossible for the holder of the note to foreclose, unless the holder of the deed of trust is the agent of the holder of the note. [Citation omitted.] **Without the agency relationship, the person holding only the note lacks the power to foreclose in the event of default. The person holding only the deed of trust will never experience default because only the holder of the note is entitled to payment of the underlying obligation. [Citation omitted.] The mortgage loan becomes**

<u>Southwest Homes of Arkansas Inc</u> under Arkansas law[52], that it is the MERS which lacks

standing to seek relief and that there are multitude of statutory reasons under RI law why MERS

mortgages and assignments are void and convey nothing under Rhode Island law.

Since the foreclosing defendant does not have a signed promissory note in default, it

lacks constitutional standing to complain about the lack of constitutional jurisdiction by the

Plaintiffs. Compare *In re Wilhelm,* 407 B.R. 392,401,402,403 (Bkrtcy.D.Idaho 2009 ) explaining

the necessity for the ownership of an endorsed note to trigger a statutory foreclosure.

Without owning the secured  mortgage note, a MERS mortgage deed  and MERS

mortgagee assignees holds nothing.[53]

---

**ineffectual when the note holder did not also hold the deed of trust.**" Bellistri v. Ocwen Loan Servicing, LLC, 284 S.W.3d 619, 623 (Mo. App.2009).***
 The Missouri court found that, because MERS was not the original holder of the promissory note and because the record contained no evidence that the original holder of the note authorized MERS to transfer the note, the language of the assignment purporting to transfer the promissory note was ineffective. "MERS never held the promissory note, thus its assignment of the deed of trust to Ocwen separate from the note had no force." 284 S.W.3d at 624; see alsoIn re Wilhelm, 40,7 B.R. 392 (Bankr.D.Idaho 2009) (standard mortgage note language does not expressly or implicitly authorize MERS to transfer the note);In re Vargas, 39,6 B.R. 511 (Bankr.C.D.Cal.2008) ("[I]f FHM has transferred the note, MERS is no longer an authorized agent of the holder unless it has a separate agency contract with the new undisclosed principal. MERS presents no evidence as to who owns the note, or of any authorization to act on behalf of the present owner.");Saxon Mortgage Services, Inc. v. Hillery, 2008 WL 5170180 (N.D.Cal.2008) (unpublished opinion) ("[F]or there to be a valid assignment, there must be more than just assignment of the deed alone; the note must also be assigned. . . . MERS purportedly assigned both the deed of trust and the promissory note. . . . However, there is no evidence of record that establishes that MERS either held the promissory note or was given the authority . . . to assign the note.")
We find that the district court did not abuse its discretion in denying the motions to vacate and for joinder and in holding that MERS was not denied due process. We accordingly affirm the district court and the Court of Appeals. **(Emphasis Added)**
[52] MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC.vs , SOUTHWEST HOMES OF ARKANSAS, INC., 2009 Ark. 152, 301 S.W.3d 1. (2009).MERS holds no authority to act as an agent and holds no property interest in the mortgaged land. It is not a necessary party. In this dispute over foreclosure on the subject real property under the mortgage and the deed of trust, complete relief may be granted whether or not MERS is a party. MERS has no interest to protect. It simply was not a necessary party. See Ark. R. Civ. P. 19(a). MERS's role in this transaction casts no light on the contractual issues on appeal in this case. See, e.g.,Wilmans v. Sears, Roebuck & Co., 355 Ark. 668, 144 S.W.3d 245 (2004).
Finally, we note that Arkansas is a recording state. Notice of transactions in real property is provided by recording. See Ark.Code Ann. § 14-15-404 (Supp. 2007). Southwest is entitled to rely upon what is filed of record. In the present case, MERS was at best the agent of the lender. The only recorded document provides notice that Pulaski Mortgage is the lender and, therefore, MERS's principal. MERS asserts Pulaski Mortgage is not its principal. Yet no other lender recorded its interest as an assignee of Pulaski Mortgage. Permitting an agent, such as MERS purports to be to step in and act without a recorded lender directing its action would wreak havoc on notice in this state.

Without an endorsed[54] note in hand to itself, the holder[55] or bearer[56] of mortgage

promissory note cannot negotiate[57] or enforce[58] and foreclose a recorded mortgage deed or

---

[53]   *NADJARIAN v. ROSE*, PC/05-5213, 6,7,8 (R.I.Super. 11-17-2009). "A mortgage is defined as `security for the performance of an act by some person.'" <u>Pawtucket Inst. for Sav. v. Gagnon</u>, <u>475 A.2d 1028</u>, <u>1030</u> (R.I.1984); (R.I. 1984); <u>see also</u> Black's Law Dictionary 1101 (9th ed. 2009) (defining a mortgage as "[a] conveyance of title to property that is given as security for the payment of a debt or the performance of a duty that will become void upon payment or performance according to the stipulated terms"). A mortgage note is "[a] note evidencing a loan for which real property has been offered as security," and a promissory note is "[a]n unconditional written promise, signed by the maker, to pay absolutely and in any event a certain sum of money either to, or to the order of, the bearer or a designated third person." <u>Black's Law Dictionary</u> 1162 (9th ed. 2009). Rhode Island "has previously recognized that a legal mortgage is an executed conveyance requiring the same consideration as any other executed transfer of property. However, there must be an underlying obligation which the Page 6 mortgage secures." <u>Pawtucket Inst. for Sav.</u>,475 A.2d 1030,<u>475 A.2d at 1030</u> (citing <u>Turner v. Domestic Investment & Loan Corp.</u>, <u>119 R.I. 29</u>, <u>34</u>, <u>375 A.2d 956</u>, <u>959</u> (1977)). Under Chapter 3 of title 6A, entitled the Uniform Commercial Code ("UCC"), a "person entitled to enforce an instrument" consists of "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section <u>6A-3-309</u> or <u>6A-3-418</u>(d)." Section <u>6A-3-301</u>. **"In an action on a promissory note, if the signature is not** denied**, the plaintiff makes out a prima facie case by producing the note**." <u>Union Mortg. Co. v. Rocheleau</u>, <u>51 R.I. 345</u>, <u>154 A. 658</u>, <u>660</u> (1931);<u>see also</u>However, "[i]f the validity of a signature is denied in the pleadings, the burden of establishing validit<u>also</u> Section <u>6A-3-308</u>(a).<u>[fn2]</u> yHowever, "[i]f the validity of a signature is **denied** in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed to be authentic and authorized. . ..". ." Section <u>6A-3-308</u>(a) of the UCC.  In situations, "[w]here a party who claims to be the holder of a note or other negotiable instrument does not produce said note, that party does not have the benefit of the presumption that the signatures on the note are valid." 12 Am. Jur. 2d <u>Bills and Notes</u> § 615 (2008). Furthermore, "[w]here the negotiable instrument sued upon is in the possession of the plaintiff, the original of the document, normally, must be produced since it is the best evidence of the obligation." <u>Id.</u>  Nonetheless,  nonproduction of the original instrument is  excused, and secondary evidence of the execution  and contents thereof is admissible, where the  instrument has been lost or destroyed and the  plaintiff has satisfied the statutory  requirements for recovery on such an instrument.  Thus an individual who establishes ownership of a  lost note, presents evidence as to the terms  thereof, and accounts for Page 7 the instrument's absence is entitled to recover,  despite the fact that the note itself cannot be  produced.  <u>Id.</u> (footnotes omitted). Accordingly,  (a) A person not in possession of an instrument  is entitled to enforce the instrument if (i) the  person was in possession of the instrument and  entitled to enforce it when loss of possession  occurred, (ii) the loss of possession was not the  result of a transfer by the person or a lawful  seizure, and (iii) the person cannot reasonably  obtain possession of the instrument because the  instrument was destroyed, its whereabouts cannot  be determined, or it is in the wrongful  possession of an unknown person or a person  that cannot be found or is not amenable to  service of process.
  (b) <u>A person seeking enforcement of an  instrument under subsection (a) must prove the  terms of the instrument and the person's right to  enforce the instrument.</u>Section <u>6A-3-309</u> (emphasis added).
  In <u>Pawtucket Inst. for Sav.</u>, the holder of a third mortgage challenged the validity of a mortgage held by the secondary mortgagee invalid and void in that it [was] not predicated  upon any promissory note; it lack[ed] consideration; was given to secure an obligation  not legally enforceable by mortgage; and its  terms [were] uncertain, vague, and fail to set  forth clearly the obligation of [the mortgagor],  which [was] purportedly secured by the giving of  said mortgage. <u>Pawtucket Inst. for Sav.</u>,475 A.2d 1030.475 A.2d at 1030. In that case, the Court observed that despite the fact that the mortgage deed specifically referred to a promissory note, no such promissory note ever existed. <u>Id.</u> at 1031. However, unlike in the present case, the mortgage deed also referred to a valid construction agreement. <u>Id.</u> The Court stated that "[t]he absence of the promissory note fail[ed] to negate the existence of the obligation between the parties set out in the construction agreement" because, it reasoned, "[a] mortgage is valid without any note or bond, so long as it Page 8 secures an existing debt." <u>Id.</u> Consequently, the Court held "that the validity of the mortgage is not affected by the absence of a promissory note." <u>Id.</u>
[54]   R.I.G.L§ **6A-3-204. Indorsement. —**

assign a mortgage deed. A blank endorsement[59] on a mortgage promissory note is not negotiable

or enforceable until signed by the bearer[60]. A promissory note must have been transferred for

---

  (a) "**Indorsement**" means a signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for the purpose of (i) **negotiating the instrument,** (ii) restricting payment of the instrument, or (iii) incurring indorser's liability on the instrument, but regardless of the intent of the signer, a signature and its accompanying words is an indorsement unless the accompanying words, terms of the instrument, place of the signature, or other circumstances unambiguously indicate that the signature was made for a purpose other than indorsement. For the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument.

  (b) "**Indorser" means a person who makes an indorsement.**

  (c) For the purpose of determining whether the transferee of an instrument is a holder, **an indorsement that transfers a security interest in the instrument is effective as an unqualified indorsement of the instrument.**

  (d) If an instrument is payable to a holder under a name that is not the name of the holder, indorsement may be made by the holder in the name stated in the instrument or in the holder's name or both, but signature in both names may be required by a person paying or taking the instrument for value or collection.

[55] **R.I.G.L.§ 6A-1-201. (B)** (21) "**Holder**" means: (A) The person in possession of **a negotiable instrument** that is **payable either to bearer or to an identified person that is the person in possession; or**   (B) The person in possession of a document of title if the goods are deliverable either to bearer or to the order of the person in possession.* * *

[56] R.I.G.L.§ 6A-1-201.(B)(5) "**Bearer" means a person in possession of a negotiable instrument,** document of title, or certificated security that is payable to bearer or **indorsed in blank**.

[57] R.I.G.L.§ **6A-3-201. Negotiation. —** (a) "Negotiation" means a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its **holder.**

  (b) Except for negotiation by a remitter, if an instrument is payable to an identified person, **negotiation requires transfer of possession of the instrument and its indorsement by the holder**. If an instrument is payable to bearer, it may be negotiated by transfer of possession alone.

[58] R.I.G.L.§ **6A-3-301. Person entitled to enforce instrument. —** "Person entitled to **enforce**" an instrument means **(i) the holder of the instrument**, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to § 6A-3-309 or 6A-3-418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

[59] R.I.G.L§ **6A-3-205. Special indorsement — Blank indorsement — Anomalous indorsement. —**

  (a) If an indorsement is made by the holder of an instrument, whether payable to an identified person or payable to bearer, and the indorsement identifies a person to whom it makes the instrument payable, it is a "special indorsement." When specially indorsed, an instrument becomes payable to the identified person and may be negotiated only by the indorsement of that person. The principles stated in § 6A-3-110 apply to special indorsements.

  (b) If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a **"blank indorsement." When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.**

  (c) **The holder may convert a blank indorsement that consists only of a signature into a special indorsement by writing, above the signature of the indorser, words identifying the person to whom the instrument is made payable.**

  (d) "Anomalous indorsement" means an indorsement made by a person who is not the holder of the instrument. An anomalous indorsement does not affect the manner in which the instrument may be negotiated.

[60] **R.I.G.L.§ 6A-1-201. (B)** (21) "**Holder**" means: (A) The person in possession of **a negotiable instrument** that is **payable either to bearer or to an identified person that is the person in possession; or**   (B) The person in possession of a document of title if the goods are deliverable either to bearer or to the order of the person in possession.* * * .

consideration[61] to be enforceable. A promissory note transferred without consideration is without

warranty[62].

The *mortgagor* is only obligated to pay an entity or person able to enforce the mortgage

promissory note[63]. A bearer of a blank note is not authorized to enforce the note  unless the note

is endorsed to the holder of the note.

---

[61]**R.I.G.L.§ 6A-3-303. Value and consideration. —**
  (a) An instrument is issued or **transferred for value** if:
  (1) The instrument is issued or transferred for a promise of performance,to the extent the promise has been performed;
  (2) **The transferee acquires a security interest or other lien in the instrument other than a lien obtained by judicial proceeding;**
  (3) The instrument is issued or transferred as payment of, or as security for, an antecedent claim against any person, whether or not the claim is due;
  (4) The instrument is issued or transferred in exchange for a negotiable instrument; or
  (5) The instrument is issued or transferred in exchange for the incurring of an irrevocable obligation to a third party by the person taking the instrument.
  (b) "Consideration" means any consideration sufficient to support a simple contract. The drawer or maker of an instrument has a defense if the instrument is issued without consideration. If an instrument is issued for a promise of performance, the issuer has a defense to the extent performance of the promise is due and the promise has not been performed. If an instrument is issued for value as stated in subsection (a), the instrument is also issued for consideration.

[62]  R.I.G.L.**§ 6A-3-416. Transfer warranties. —**
  (a) A person who transfers an instrument **for consideration** warrants to the transferee and, if the transfer is by indorsement, to any subsequent transferee that:
  (1) The warrantor is a person entitled to enforce the instrument;
  (2) All signatures on the instrument are authentic and authorized;
  (3) The instrument has not been altered;
  (4) The instrument is not subject to a defense or claim in recoupment of any party which can be asserted against the warrantor; and
  (5) The warrantor has no knowledge of any insolvency proceeding commenced with respect to the maker or acceptor or, in the case of an unaccepted draft, the drawer.
  (b) A person to whom the warranties under subsection (a) are made and who took the instrument in good faith may recover from the warrantor as damages for breach of warranty an amount equal to the loss suffered as a result of the breach, but not more than the amount of the instrument plus expenses and loss of interest incurred as a result of the breach.
  (c) The warranties stated in subsection (a) cannot be disclaimed with respect to checks. Unless notice of a claim for breach of warranty is given to the warrantor within 30 days after the claimant has reason to know of the breach and the identity of the warrantor, the liability of the warrantor under subsection (b) is discharged to the extent of any loss caused by the delay in giving notice of the claim.
  (d) A cause of action for breach of warranty under this section accrues when the claimant has reason to know of the breach.

[63]R.I.G.L. **§ 6A-3-412. Obligation of issuer of note or cashier's check. —**  The issuer of a note or cashier's check or other draft drawn on the drawer **is obliged to pay the instrument** (i) according to its terms at the time it was issued or, if not issued, at the time it first came into possession of a **holder**, or (ii) if the issuer signed an incomplete instrument, according to its terms when completed, to the extent stated in §§ **6A-3-115** and **6A-3-407**. **The obligation is owed to a person entitled to enforce the instrument or to an indorser who paid the instrument under § 6A-3-415.**

The foreclosing defendant does assert possession of an endorsed note to itself; and thus is not able to foreclose under the provisions of the Uniform Commercial Code.

Rhode Island's Uniform Commercial Code is similar to Utah's Code where a foreclosing entity lacking an enforceable note was denied constitutional jurisdiction in the matter of *In re Wilhelm,* 407 B.R. 392, (Bkrtcy.D.Idaho 2009.

> \*\*\* none of the notes is indorsed, either in blank or **to any specific person or entity.**[8] \*\*\*
>
> "Substantive law governing negotiable instruments**. To resolve the standing and real-party-in-interest issues presented here, the Court must determine who has the right to enforce the notes.** Because bankruptcy law does not provide for enforcement of promissory notes, the Court looks to applicable non-bankruptcy law. See generally *Butner v. United States,* 440 U.S. 48, 54-55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (nature and extent of property interests in bankruptcy are determined by applicable state law). Article 3 of Idaho's enactment of the Uniform Commercial Code governs negotiable instruments. See Idaho Code § 28-3-102(a); id. § 28-3-104(1) (defining negotiable instruments). Under Article 3, persons entitled to enforce an instrument include: (1) a " holder of the instrument," and (2) " a nonholder in possession of the instrument who has the rights of a holder [.]" Idaho Code § 28-3-301(i), (ii). **To be the " holder" of an instrument one must possess the note and the note must be payable to the person in possession of the note, or to bearer. See Idaho Code § 28-1-201(b)(21)(A).**The " holder" option is not available to Movants; none of the notes is payable to the Movant and none of the notes has been indorsed, either in blank or specifically to a Movant. See id .; Idaho Code § 28-3-205 (regarding special and blank indorsements). Thus, the relevant inquiry in these five cases is whether Movants are non-holders in possession with rights to enforce.
>
> A " nonholder in possession of the instrument who has the rights of a holder," Idaho Code § 28-3-301(ii), includes persons who acquire physical possession of an unendorsed note. See Idaho Code § 28-3-203(1), (2). [17] As the statutory comments explain, however, **such nonholder must " prove the transaction" by which they acquired the note:**
>
> If the transferor is not a holder because the transferor did not indorse, the transferee is nevertheless a person entitled to enforce the instrument under Section 3-301 if the transferor was a holder at the time of transfer. Although the transferee is not a holder, under subsection (b) [ sic, (2)] the transferee obtained the rights of the transferor as holder. **Because the transferee's rights are derivative of the transferor's rights, those rights must be proved**. Because the transferee is not a holder, there is no presumption under Section 3-308 that the transferee, by producing the instrument, is entitled to payment. The instrument, by its terms, is not payable to the transferee and the

transferee must account for possession of the unendorsed instrument by proving the transaction through which the transferee acquired it. Id. cmt. 2 (emphasis added).

**Importantly, however, if a person " proves the transaction" by which it acquired the note, but fails to show possession, he or she cannot enforce the note.** See generally 11 Am.Jur.2d Bills and Notes § 210 (2009) (discussing differences between a " holder" of a note, and an " owner" of a note). Again, the statutory comments explain: [A] person who has an ownership right in an instrument might not be the person entitled to enforce the instrument. For example, suppose X is the owner and holder of an instrument payable to X. X sells the instrument to Y but is unable to deliver immediate possession to Y. Instead, X signs a document conveying all of X's right, title and interest in the instrument to Y. Although the document may be effective to give Y a claim of ownership of the instrument, Y is not the person entitled to enforce the instrument until Y obtains possession of the instrument. No transfer of the instrument occurs under Section 3-203(a) until it is delivered. Idaho Code § 28-3-203, cmt. 1.

**Here, Movants have not demonstrated possession of the notes. Nor have they proved any transaction by which they acquired ownership of the notes.(Emphasis Added)**

**1. Movants have not established possession of the notes**
*In re Wilhelm* 407 B.R. 392,402,403  (Bkrtcy.D.Idaho 2009.

The Defendants have not proven and cannot prove according to the Plaintiffs that the Trustees can prove ownership of enforceable notes which conform both to the Uniform Commercial Code and Federal provisions of law, REMIC.

## SUMMARY:

The recommendations of the Magistrate should be disregarded. *Livornia*, supra, allows standing for title disputes while maintaining Article III jurisdiction. The Plaintiffs have a redressable rights under Rhode Island law. The foreclosing Defendant did not own or receive a R.I. statutory power of sale by advertisement from the Plaintiff or the Assignees and is attempting to take the Plaintiff's home without Due Process. The foreclosing Defendant is causing harm to the Plaintiff by an illegal act. The foreclosing Defendant cannot prove it owns an enforcible promissory note under either federal or state law. The Plaintiffs have *a case and controversy* under Article III of the U.S. Constitution. The Plaintiffs have been threatening harm

by the foreclosing Defendant. The loss of the statutory power of redemption is harm. There are six (6) statutory authorities which provide a basis for redress for the Plaintiffs. The Plaintiffs have stated  claims upon which relief should be granted. This Honorable Court has both subject matter jurisdiction and Article III jurisdiction over the Plaintiffs' claims.

**Amicus Curiae**
**For The Plaintiff**
Respectfully submitted,
Keven A.McKenna,
By:/s/ Keven A. McKenna
Dated: September 7, 2011

### Certification

I, Keven A. McKenna,  the undersigned,  hereby certified that on September8, 2011, a copy of the foregoing document, filed through the CM/ECF system, will be sent electronically to the registered participants as indentified on the notice of Electronic Filing (NEF) and paper copies shall be served by first class mail, postage prepaid on parties listed on the NEF as not receiving electronic notice.

/s/Keven A. McKenna

KEVEN A. MCKENNA