# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| ) | | |

In re:  Mortgage Foreclosure Cases     )        Misc. No. 11-mc-88-M-LDA

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

Before this Court is Certain Defendants' Motion for Stay Pending Appeal (the "Motion").[1]  (ECF No. 685.)  In the Motion, Certain Defendants seek "an order staying and suspending the Amended Order issued by this Court on March 29, 2012, and all decisions, orders, and rulings incorporated therein, including without limitation, the Court's stay of the litigation prohibiting any foreclosure and eviction proceedings, the Court's requirement that the parties mediate the cases assigned to the *In re: Mortgage Foreclosure Cases* docket with the Special Master without any time or cost limit, and any requirement that the defendants pay a retainer or other expenses without any opportunity to review detailed billing records."  (ECF No. 685.)

Because of the large number of cases on its docket, the complexity of the issues before it, and the importance of this litigation to all parties - homeowner and financial institutions, bond holders, servicers and other defendants - this Court took the step of staying the litigation to allow an appropriate case management system and program for facilitating settlement to be developed and implemented.

---

[1]  Bank of America and its subsidiaries did not join in this motion or appeal and informed the Special Master that they "will continue to participate in the settlement process."

Because this Court has the inherent power and authority to manage its docket, and because all parties have been given a full opportunity to be heard before any actions were taken, and because the settlement procedure is fully underway and all rights of all parties have been fully preserved, and because the defendants' are not likely to succeed on the merits, the Motion to Stay by Certain Defendants (ECF No. 685) is DENIED.

## I.     FACTUAL BACKGROUND

Hundreds of homeowners and former homeowners still living in their foreclosed homes have filed suit in this Court[2] arising out of their home mortgages, against MERS, Inc. and other financial institutions, bond holders, servicers, and other defendants alleging that Defendants are responsible for fraudulent and/or flawed mortgage foreclosures or attempts at foreclosure. Defendants dispute such claims and contend that the mortgage foreclosures are conducted in accordance with the loan documents and relevant state statutes, and after valid and enforceable assignments of the right to foreclose.

Very serious allegations of fraud, misrepresentation, and predatory tactics have been made in the complaints before the Court. Indeed, these same allegations have been made in courts across the United States. Some settlements have been reached by five of the largest lenders, some of which are Defendants in the cases in our courts.

This situation is problematic for all parties. Plaintiff homeowners are confronted with the emotional and economic devastation of losing their homes to foreclosure by institutions allegedly unknown to them. Defendant financial institutions are confronted with countless mortgages on which homeowners have stopped paying. The problem is exacerbated by a significant downturn in real estate values that has placed many of these properties "under water." And Courts, this

---

[2] As of July 20, 2012, this Court has 512 cases on its mortgage foreclosure docket.

one in particular, have a substantial docket of individual cases that need to be managed efficiently, fairly, and in accordance with the law and proper procedure.

Pursuant to an Order by Chief Judge Mary L. Lisi of this District Court, all of the mortgage cases in this District were assigned to this judge in the summer of 2011.

The Court issued an Order for Status Conference, and temporarily stayed the cases pending the discussions with counsel.[3]  (ECF No. 685-3.)  The Court met with counsel for all parties to the litigation on July 26, 2011 in an effort to determine the scope and individual aspects of the pending cases. And, while individual issues set a few of the cases apart from the pack, the Court determined that it would be most efficient to group the cases for case management purposes in order to manage this large docket and to facilitate settlement and/or loan modification discussions.

Deeming it "essential" after speaking with attorneys from both sides, listening to their positions and the hurdles they envisioned in the litigation down the stretch, the Court issued an Order on August 16, 2011.  The order[4] established a Master Docket, called for liaison counsel, stayed all mortgage foreclosure cases in order to manage its large docket and to allow an organized settlement process to proceed unencumbered by the distractions and burdens associated with litigation, and indicated that the Court was considering appointing a special master pursuant to Federal Rule of Civil Procedure Rule 53, someone who had the necessary expertise in banking and the acumen to bring consumers and bankers together to accomplish a

_____

[3] In addition, this Court has reiterated the stay in subsequent orders.  For example, on January 5, 2012, this Court issued an Order wherein it specified that the stay put in effect on August 16, 2011 "shall remain in full force until such time as further order of this Court . . . ." (C.A. No. 11-mc-88, ECF No. 156 at 4.)  Again, on February 3, 2012, this Court issued an Order repeating that the stay remained in place and explaining that the mortgage foreclosure cases "are held in temporary abeyance in all respects to allow the parties to engage in meaningful mediation." (See Feb 3, 2012 Text Order, ECF No. 685-7.)

[4] The Court consulted and utilized the Manual for Complex Litigation.

mutually acceptable solution. (ECF No. 1.)  The Court preserved in all respects the ability of the parties to have a trial on the merits if this administrative attempt at settlement failed.  The Court invited the parties' comments and input.  Subsequently, the parties submitted suggestions of potential candidates for the special master position.

The Court thereafter appointed Ms. Merrill Sherman to be the Special Master in these mortgage cases.[5] (ECF No. 156.)  The Court solicited comments from all parties and received objections to the process from certain Defendants.  (ECF No. 253.)  The Court considered and overruled those objections. (*See* Feb. 3, 2012 Text Order.)

Special Master Merrill Sherman is in the middle of establishing a procedure for the effective and efficient commencement of settlement discussions.  In preparation, Ms. Sherman has culled pertinent information from hundreds of cases filed in this District Court. She has received additional personal and financial information from the parties, and categorized those cases in order to prioritize them for settlement.

Ms. Sherman has established relationships with counsel for both sides and has communicated with them individually and in groups, spending time answering their questions, seeking their input, addressing their apprehension with the process, and always leaving her door and phone lines open to hear from them about future concerns.  She has almost universally received the cooperation of Plaintiffs' and Defendants' counsel.  This procedure is far along and it is on the verge of allowing the parties to sit down and attempt to negotiate an acceptable settlement or other dispositions that the Special Master and parties deem appropriate.

---

[5] Ms. Sherman had recently retired as President and Chief Executive Officer of Bank Rhode Island and was past chair of the Board of Directors of Crossroads Rhode Island, the largest homeless social service provider in the state.

In response to comments by some of the defendants that the plaintiffs have been living in their homes without making any mortgage payments and/or rent while the financial institutions were stayed from proceeding against them, the Special Master ordered and this Court approved a "use and occupancy fee" to be paid by the Plaintiff in escrow during the pendency of the litigation. Again, the Special Master has received significant cooperation and payment.  The Special Master filed a report of her activities as of May 29, 2012. (*See* Special Master's Report, ECF No. 824.)  This report, in the Court's estimation, demonstrates the efficacy of this process, the progress that Ms. Sherman has made in bringing the parties together, and the willingness of the parties to work to resolution.

While this Motion for Stay and the appeal that preceded it was not a complete shock in light of the ambitious goals the Court and Ms. Sherman are attempting to accomplish, some of the points raised about a lack of clarity of procedure, expenses without limit in amount or time period, and a lack of notice and an opportunity to be heard are, frankly, surprising.

## II.   STANDARD OF REVIEW

In deciding whether to grant a stay pending appeal, the Court must consider: (1) whether the applicant has made a strong showing of success on the merits; (2) whether the applicant will be irreparably harmed absent [a stay]; (3) whether issuance of the stay will injure other parties; and (4) where the public interest lies. *Acevedo-Garcia v. Vera-Monroig*, 296 F.3d 13, 16 n. 3 (1st Cir. 2002); *accord Martinez Rodriguez v. Jimenez*, 537 F.2d 1, 2 (1st Cir. 1976).  The first factor is the most important one: "The *sine qua non* [of the standard] is whether the [movants] are likely to succeed on the merits" of an appeal. *Weaver v. Henderson*, 984 F.2d 11, 12 (1st Cir. 1993).  The Court will analyze these four factors below.

5

## III.   ANALYSIS

Based on the Special Master's extensive work and success at obtaining cooperation thus far and the Court's confidence in its authority to appoint the Master and to charge her with managing a settlement process at this early stage, the Court is confident that this Motion should be denied and the process should go forward.

The Court has a docket of over five hundred mortgage foreclosure cases with more cases filed every day.   District courts have "'inherent power,' not governed by 'rule or statute,' to manage the litigation before [them]." *Zebrowski v. Hanna*, 973 F.2d 1001, 1003-04 (1st Cir. 1992) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630 (1962)).   This power encompasses both the power to stay pending litigation and the power to sanction abuses of the judicial process. *In re Villa Marina Yacht Harbor, Inc.*, 984 F.2d 546, 548 (1st Cir. 1993) (citations omitted).

In *Villa Marina Yacht Harbor*, in a case strikingly similar to the instant cases, the First Circuit was confronted with an order from the district court requiring that the defendant continue to make his mortgage payments. *Id.* at 547.   The district court had entered this order *sua sponte*. *Id.*   When the defendant challenged this order before the First Circuit, the court stated that the defendant's "contention ignores the inherent power possessed by a district court, 'not governed by rule or statute, to manage the litigation before it (citation omitted).'"   The Court went on to say that:

> The district courts "retain the inherent power to do what is necessary and proper to conduct judicial business in a satisfactory manner." *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1119 (1st Cir. 1989) *** We have repeatedly recognized this inherent power of the district court as encompassing the power to order various types of "administrative" actions:   to require the posting of security for costs when warranted by the circumstances of a case [citations omitted]; to modify discovery-related protective orders for so long as such orders is in effect [citation omitted] *** to stay pending litigation when efficacious management of docket reasonably requires. *Marquis v. F.D.I.C.*, 965 F.2d 1148, 1154-55 (1st Cir. 1992).

Indeed, "[b]eyond the provisions of [Fed. R. Civ. P. 53] for appointing and making references to Masters, a Federal District Court has 'the inherent power to supply itself with this instrument for the administration of justice when deemed by it essential.'" *Schwimmer v. United States*, 232 F.2d 855, 865 (8th Cir. 1956) (*quoting Ex parte Peterson*, 253 U.S. 300, 312 (1920)). "It is beyond cavil that, absent a statute or rule to the contrary, federal district courts possess the inherent power to stay pending litigation when the efficacious management of court dockets reasonably requires such intervention." *Marquis v. F.D.I.C.*, 965 F.2d 1148, 1154 (1st Cir. 1992).

### A.    Likelihood of Success on Appeal

Defendants argue that they are likely to succeed on the merits of their appeal because the Court exceeded its authority in issuing the Amended Order. The Court's power and authority to issue such an order is set forth above.

Certain Defendants further argue that the Court essentially issued a preliminary injunction, preventing Defendants from foreclosing on the mortgages without making findings and conclusions to support the injunction. Moreover, Defendants argue that the Court violated their due process rights by failing to provide them with notice and the opportunity to be heard during a process that is unlimited in time and cost. Finally, Defendants argue that the Court exceeded its authority by staying the mortgage cases and requiring mediation without ruling on whether Plaintiffs have standing to sue.

As an initial matter, Defendants do not have a likelihood of success because the Court did not enter an injunction. The Court entered a stay as a case management tool in order to promote discussion among the parties and to encourage settlement. Therefore, because there was no injunction imposed for the First Circuit Court of Appeals to review, the First Circuit does not

have jurisdiction and Defendants' interlocutory appeal is likely to be unsuccessful. *See* 28 U.S.C. 1292(a)(1). Nevertheless, the Court will turn to Defendants' arguments in an effort to address their concerns and reinforce the reasoning behind the stay and Special Master process.

### 1.    Notice and an Opportunity to be Heard and Due Process

Upon reviewing the procedural history from the date the Special Master was appointed to the present, it is clear that Defendants have fully participated in this process and have been permitted to weigh in and object and have their ideas and objections heard. "For more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.'" *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (quoting *Baldwin v. Hale*, 1 Wall. 223, 233, 17 L.Ed. 531 (1863)). "It is equally fundamental that the right to notice and an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner.'" *Fuentes*, 407 U.S. at 80 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

The Court held a status conference with counsel for the parties in July 2011, shortly after it was assigned all of the mortgage cases filed in this district. It discussed in its August 16, 2011 Order that it was considering appointing a master to craft a practical solution to these cases. (ECF No. 1.) The Court heard from the parties and, although the Court overruled Defendants' objections, it took into account their concerns in creating the Special Master's directive. (*See* ECF No. 156.) The Court solicited suggested names for a potential Master for all the parties; the parties, in fact, made such recommendation. Certain Defendants objected to the Special Master Order and requested clarification of certain provisions of the Order (ECF No. 254) which the Court ruled on (Text Order dated February 3, 2012). Once Ms. Sherman was appointed, she held conferences on February 3, 2012 with the parties to hear their thoughts on the process. She met

with counsel separately and as a group.  Because of the number of defense counsel, Ms. Sherman selected a steering committee from among their group, but permitted any other counsel who wished to attend the conferences to do so.  The Special Master has issued five memos (ECF No. 299, ECF No. 317, ECF No. 326, ECF No. 410, and ECF No. 415) and held three additional conferences with the parties.  She has consistently indicated her willingness to speak with any counsel at any time and has done so.  In her June 1, 2012 Special Master Report, Ms. Sherman gave a comprehensive update, including concrete plans to address each category of cases and a realistic view of which cases are suitable for settlement and which are not.  (ECF No. 824 at 4-8.)

While Defendants may not like the course the Special Master and the Court has taken in this master docket, the Court finds that they have been given ample notice and unlimited opportunities to be heard at a meaningful time and in a meaningful manner.  Their due process rights most certainly have not been infringed.

### 2.    Standing

The Defendants argue that the Court must rule on the Plaintiffs' standing to bring these cases before requiring mediation.  While it is true that standing is a threshold issue to be determined at the outset of a case before a court confronts the merits, the Special Master's role as the Court has established it does not tackle the merits at all.  Ms. Sherman's role is to attempt to bring the parties to a mutually acceptable settlement, utilizing her skills, knowledge, and expertise as a banker in Rhode Island.  In its view, the Court need not reach the issue of standing unless and until the Special Master informs the Court that settlement is not possible.

### 3.    The Settlement Is Not Without Time Limits Or Cost Controls

Based on the Court's knowledge of the Special Master's proceedings to date, the settlement process that she has established is not without time limits or cost controls. Ms. Sherman has indicated orally several times at conferences with both sides that she anticipates a quick and efficient process. Further, the Court's order provides that once the Special Master certifies that settlement negotiations are no longer fruitful that she can recommend to the Court that the stay be lifted. (ECF No. 156 at 4.) Substantial progress has been made in gathering case-specific information and in devising a plan for moving forward with the settlement process. The Special Master has been diligent in communicating and following up with the parties in the five months since her appointment. Other than providing basic information, Defendants have not had to expend inordinate amounts of time or financial resources to comply with the Special Master's requests. Moreover, at no time has any party requested from the Court an end date, or even that the process be expedited. The Special Master has consistently informed the parties that, if settlement seemed impossible after undergoing this early information gathering process, those cases would be pulled out of the master docket and the litigation would proceed.[6]

Regarding costs, the Court issued an order requiring that the Special Master's fees and expenses be borne by all the parties fairly and equitably. (ECF No. 156 at 5-7.) It approved the assessment of a $100,000 retainer because it was the most efficient way to establish a fund to compensate the Special Master and to pay her expenses in light of the number of parties and

---

[6] In fact, this Court has issued an order requiring over forty Plaintiffs to show cause why their complaints should not be dismissed for failure to comply with orders of this Court. (ECF No. 965.) The Court has also removed cases from the mortgage docket because they were more appropriate for individual treatment. *See e.g.*, *Schofield v. U.S. Bank*, C.A, No 11-170.

cases rather than billing each party monthly.[7]   No money is distributed without the Special

Master submitting a bill to the Court for its review and approval if it is reasonable.   If the Court

determines that the bill is reasonable, it issues an order approving payment.   There is a system in

place for refunds of retainer monies if appropriate.   Defendants raise additional complaints about

the fairness of the fees assessed, arguing that they are being overcharged because of the manner

the Court has ordered such assessment.   These concerns, if valid, can certainly be raised to the

Court for discussion.   To date, no defendant has raised such an issue.   For example, if

Defendants wish to see a more detailed account of the Special Master's time and expenses, they

can request such records. In fact, in its February 3, 2012 Text Order denying Certain Defendants'

objection to the Special Master order, the Court indicated that "[a]s to Certain Defendants

objection and request for clarification regarding the division of fees and expenses, any request

for relief can be made when the parties receive a Summary Statement."   As far as the Court is

aware, no such request has been made to the Court.[8]

Given the professional and consistent level of communication between the Special

Master and the parties, the Court finds that, although the Order does not specifically set an end

date for completion of the settlement process or a dollar amount permitted to be spent, it is

---

[7] This method was recently altered in light of the Special Master's experience in this case.  The Court approved, upon her request, an assessment of $120.00 per unit as opposed to a flat $100,000 retainer, which was then divided among all of the units. (*See* ECF No. 989.)

[8] The case law is not necessary on point, but is nevertheless instructive.  In *Chang v. University of Rhode Island*, 107 F.R.D. 343 (D.R.I. 1985), the court held that while a portion of the preparatory work necessary to move into the damages phase that a special master would oversee could go forward, nomination and appointment of the special master would be stayed pending resolution of an interlocutory appeal of judgment entered at the conclusion of a bifurcated trial. The main reason the court granted the stay was that it found that the remedial phase of the case would be "a long, arduous, and expensive ordeal for all concerned."  *Id.* at 345.  Unlike the situation in the *Chang* case, the Special Master portion of these cases will be the shortest, least arduous of the entire case.  107 F.R.D. at 343.  The litigation aspect, if mediation fails will be long and bitterly fought, with depositions and motion practice.

11

sufficient to accomplish the Special Master and the Court's goals of managing this potentially unwieldy and important litigation as efficiently and cost effectively as possible.

In light of the Court's determination that Certain Defendants are not likely to succeed in their interlocutory appeal, the Court will briefly address the three less essential elements.

### B.     The Three Other Elements

Defendants argue that they will suffer irreparable injury if they must participate in mediation pending the appeal because the process is costly and onerous. They will further suffer because the Amended Order prevents them from foreclosing on their properties.

The Court finds that Defendants fail to meet this element. In fact, their argument that they are being harmed because they are footing the bill for the properties and Plaintiffs are living in rent-free is belied by the current state of the cases due to the Special Master's actions. The Special Master has instituted use and occupancy fees for all Plaintiffs in these cases and at least 85% have already made such payments. (*See* ECF No. 824 at 3.) Therefore, for the first time in years, Plaintiffs are paying and Defendants will realize these payments at the end of the settlement process. Additionally, the goal that the Special Master is attempting to accomplish is to make the mortgages performing again. That goal will stem any injury Defendants arguably may suffer. These properties have been unprofitable for years and those losses were not caused by the Court's and the Special Master's efforts at resolution. In the event that settlement is not successful in a particular case, all parties will be heard on the merits of the case. The Court believes that any injury caused by delaying foreclosure is outweighed by the positive outcome that may be had in the event that an acceptable resolution can be obtained.

Finally, the Court finds, based on its experience managing these cases that the public's interest will be served by giving the parties the chance to resolve their differences before

embarking into contentious and complicated litigation.  Indeed, the Court's standard Rule 16 order includes a requirement that parties explore the possibility of settlement, even at that early stage.  Mediation and settlement of cases before significant resources are expended is a priority for the Court and should be a priority to the parties.

## IV.    CONCLUSION

For the reasons articulated in this Order and in the Court's Orders appointing Ms. Sherman, outlining her duties and providing for payment for services, Certain Defendants' Motion For a Stay Pending Appeal (ECF No. 685) is DENIED.


IT IS SO ORDERED.

John J. McConnell, Jr.
United States District Judge

Date:  July 23, 2012