## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| In re: Mortgage Foreclosure Cases | )<br>)<br>)<br>)<br>) | Misc. No. 11-mc-88-M-LDA |

## CERTAIN PLAINTIFFS MOTION AND MEMORANDUM OF LAW FOR PRELIMINARY INJUNCTION

The United States District Court for the District of Rhode Island issued an order

so that it could hear multiple arguments for and against the adoption or rejection of an

injunction against foreclosure and eviction in the cases currently before the Court.  The

Plaintiffs have claimed that the Defendants do not have the right to foreclose because the

assignments and foreclosure deeds are either invalid or void as a matter of law.   The

Plaintiffs further contend that mortgage assignments are, pursuant to Rhode Island Law,

transfers of an interest in real estate, and as such, the homeowner/mortgagor is a party to

those transactions thus giving them standing to challenge the validity of the assignments.

The Plaintiffs hereby respectfully request this Honorable Court grant an injunction for all

cases on the above entitled docket pursuant to Rhode Island General Laws §34-11, Form

& Effect of Conveyances.   In particular §34-11-1[1], §34-11-12, §34-11-21 & §34-11-24[2]

---

[1] Form & Effect of Conveyances:  **Conveyances required to be in writing and recorded.** – Every conveyance of lands, tenements or hereditament absolutely, by way of mortgage, or on condition, use or trust, for any term longer than one year, and all declarations of trusts concerning the conveyance, shall be void unless made in writing duly signed, acknowledged as hereinafter provided, delivered, and recorded in the records of land evidence in the town or city where the lands, tenements or hereditaments are situated; provided, however, that the conveyance, if delivered, as between the parties and their heirs, and as against those taking by gift or devise, or those having notice thereof, shall be valid and binding though not acknowledged or recorded. A lease for the term of one year or less shall be valid although made by parol. Leases for terms of more than one year may be recorded with a memorandum of lease in writing rather than the original lease; provided, however, that the memorandum shall contain the names of the parties to be charged, a description of the real estate, the duration of the lease, including renewal options and purchase

of the Rhode Island General Laws as well as §34-16-4[3] of the Rhode Island General

Laws support the position of the Plaintiffs.

## STANDARD FOR A SUBSTANTIAL LIKELIHOOD
## OF SUCCESS ON THE MERITS

The standard for a finding of a substantial likelihood of success on the merits is

an abuse of discretion. <u>Fund for Community Progress v. United Way of Southeastern

New England</u>, 695 A.2d, 517, 521 (R.I. 1997). A substantial likelihood of success means

a reasonable probability, rather than a certainty of ultimate success. <u>Coolbeth v.

Berberian</u>, 112 R.I. 558 (1974). All that is required is that the moving party establish a

prima facie case. <u>Id</u>. at 564. A prima facie case is one that satisfies the burden of proof

on a particular issue. <u>Nocera v. Lembo</u>, 397 A.2d 524 (R.I. 1979). However, the

likelihood of success on the merits should be a minor factor especialy where the potential

---

options.

**History of Section.**

(G.L. 1896, ch. 202, § 2; G.L. 1909, ch. 253, § 2; G.L. 1923, ch. 297, § 2; G.L. 1938, ch. 435, § 1; G.L. 1956, § 34-11-1; P.L. 1979, ch. 231, § 1; P.L. 1981, ch. 380, § 1.)

[2] **Effect of assignment of mortgage.** – An assignment of mortgage substantially following the form entitled "Assignment of Mortgage" shall, when duly executed, have the force and effect of granting, bargaining, transferring and making over to the assignee, his or her heirs, executors, administrators, and assigns, the mortgage deed with the note and debt thereby secured, and all the right, title and interest of the mortgagee by virtue thereof in and to the estate described therein, to have and to hold the mortgage deed with the privileges and appurtenances thereof to the assignee, his or her heirs, executors, administrators and assigns in as ample manner as the assignor then holds the same, thereby substituting and appointing the assignee and his or her heirs, executors, administrators and assigns as the attorney or attorneys irrevocable of the mortgagor under and with all the powers in the mortgage deed granted and contained.

**History of Section.**

(P.L. 1927, ch. 1056, § 15; G.L. 1938, ch. 436, § 14; G.L. 1956, § 34-11-24.)

[3] **Action brought by person claiming through conveyance, devise, or inheritance.** – Any person or persons claiming title to real estate, or any interest or estate, legal or equitable, in real estate, including any warrantor in any deed or other instrument in the chain of title to the real estate, which title, interest, or estate is based upon, or has come through, a deed, grant, conveyance, devise, or inheritance, purporting to vest in the person or persons or his, her, or their predecessors in title the whole title to such real estate, or any fractional part thereof or any interest or estate therein, may bring a civil action against all persons claiming, or who may claim, and against all persons appearing to have of record any adverse interest therein, to determine the validity of his, her, or their title or estate therein, to remove any cloud thereon, and to affirm and quiet his, her, or their title to the real estate. The action may be brought under the provisions of this section whether the plaintiff may be in or out of possession and whether or not the action might be brought under the provisions of § 34-16-1 or under the provisions of any other statute.

**History of Section.**

(G.L. 1938, ch. 528, § 26; P.L. 1940, ch. 938, § 1; P.L. 1941, ch. 1005, § 1; G.L. 1956, § 34-16-4.)

injury is great. <u>Palmigiano v. Travisano</u> 317 F. Supp. 776 D.R.I. 1970. Needless to say it is difficult to imagine a greater injury than the loss of ones home. But nevertheless this memorandum shall focus on the substantial likelihood of success in the cases on this docket in which the validity of the assignments of mortgage are being challenged, particularly when the assignments of mortgage are from MERS.

## ARGUMENT

Each of the Complaints on the docket filed by the Plaintiffs set forth allegations that either 1) there is no assignment of mortgage properly assigning the mortgage to the true entity that is invoking the statutory power of sale; 2) the assignment of record fails to validly assign the Mortgage and Note; 3) the assignment of record was not "duly executed" in accordance with RIGL 34-11-1 and/or 4) that the assignment of record disconnected the mortgage from the Note and that MERS and/or its assignees are not validly acting for the Lender's successor or assign (ie. the actual noteholder).

I. **The Assignments of the Mortgage failed to include the obligation the Mortgage secured (ie. the Note). An assignment of a mortgage without the note is a legal nullity.**

   a. **The <u>Bucci</u> Case: Analysis of MERS or a MERS Assignee invoking Rhode Island's Statutory Power of Sale.**

The Plaintiff anticipates that a substantial portion of the Defendants' arguments against injunction will rely on the only Rhode Island Supreme Court case regarding MERS entitled <u>Bucci v. Lehman Brothers Bank</u>., No. PC-2009-3888. The <u>Bucci</u> case held that MERS itself, had the right to invoke the Statutory Power of Sale because it was the named mortgagee and nominee of Lehman (the original lender named on the

3

mortgage) and its 'successors and assigns'". Bucci at 7. In a case in which the validity of the assignment of mortgage is challenged, however, the Bucci case does not address the question of whether or not the beneficial owner of the note and/or the principal initiator of the foreclosure process was a "successor or assign" of the original lender named on the mortgage. This requires evidence beyond the language of the mortgage. In the Bucci case the plaintiff agreed and accepted as true an affidavit from Cheryl Marchant, VP of Aurora Loan Services, which established that "the Note has been endorsed in blank and is currently held by LaSalle as custodian for the beneficial owner of the Note and/or its agents (including MERS) for whom MERS, in its capacity as mortgagee, is the nominee of the beneficial owner of the Note." The decision to allow such an affidavit by the plaintiff in Bucci was a fatal error that closed the loop and connected a series of missing dots; therefore allowing MERS to foreclose in a situation where many questions were unanswered. A similar admission was made in Kiah v. Aurora Loan Services, LLC, No. 4:10-cv-40161-FDS, 2010. In Kiah, the plaintiff was a pro-se non-attorney litigant who could not "succeed on his theory, because he does not challenge the validity of the assignment of the note to Aurora. That admission is fatal to his claim." Kiah at 3. The Plaintiff in Kiah also acknowledged that "MERS had the power to act as the agent of the noteholder, even after transfer to a new holder". Id. Similar to Bucci, these admissions by the plaintiff in Kiah gave Aurora the right to foreclose.

In the cases on the docket involving MERS, as in Bucci, the Plaintiff obviously admits that MERS is the named "mortgagee" on the mortgage. Likewise, the Plaintiff concedes that MERS is named as the "nominee" of the original Lender on the mortgage.

4

The question as to whether or not the foreclosing entity or its agents is a valid "successor or assign" of the original lender, however, has not been shown by the Defendants and has been specifically challenged in the each Plaintiffs' well-pleaded complaints. Subsequent to the Bucci decision, the Rhode Island Superior Court in this case, has characterized the issue of who actually "owns the note" as the "key" to Judge Silverstein's decision. See Transcript of Preliminary Injunction Hearing, Cardi v. MERS, PC-2008-4798, at p. 163 (October 30, 2009). Furthermore, the question as to whether or not MERS or an assignee of MERS is in fact the "nominee" or agent of the successor or assign of the original lender that allegedly holds the note can not be automatically assumed.

### b. The Disconnection Problem - The Defendants' Failure to Assign the Obligation the Mortgage Secures With the Mortgage is Fatal to the Ability to Invoke the Statutory Power of Sale.

In each case, both the Assignments purporting to assign the mortgage from MERS to new entity fail to contain any language that purports to assign the Note. The failure of an Assignment to contain any language as to the assignment of the Note has been grounds to declare an assignment from MERS a legal nullity. FNMA v. Emmanuel, 2010 NY Slip Op 50819; In Re Tandala Mims AKA Tandala Williams, 438 B.R. 52, 56-57 (S.D.N.Y 10-27-2010) (assignee of MERS failed to establish standing to pursue state law remedy of foreclosure because assignment of mortgage failed to include language assigning note; "Arguably Wells Fargo has proved that it is the title holder of the Mortgage...but the Assignment of Mortgage does not include language assigning the Note along with the Mortgage. Had the assignor desired to assign the Note using the same instrument, it could have used different language to accomplish this end").

5

Even if the language in the Assignments include language purporting to assign the Note together with the Mortgage, an assignment of a mortgage from MERS always fails to assign the note because MERS never held the Note in the first place. In Thoms v. America's Servicing Co., CA # 2:10-cv-00482 at p. 14 (Nev. 10-1-2010), the United States District Court of Nevada denied a Motion for Summary Judgment and a Motion to Dismiss the plaintiff's claim for wrongful foreclosure when it recognized that although MERS purported to assign the beneficial interest of the loan, the assignment from MERS to the foreclosing entity "was an assignment of the deed of trust only, not of the beneficial interest". The Thoms Court reasoned that the mortgage was "not unambiguous as to whether Aegis [the named lender on the mortgage] intended MERS to have its power of attorney for the purpose of transferring the beneficial interest in the loan...because Aegis was clearly the beneficiary". Likewise, in the cases on the docket before this Court, the Mortgages state that MERS has "legal title only" of the mortgage rather than a beneficial interest in the Note.

In the Superior Court Bucci decision, Judge Silverstein found the reasoning of In re Huggins, 357 B.R. 180 (Bankr. D. Mass. 2006) "particularly apposite here". The Huggins case was a decision based on a non-evidentiary hearing on a motion for relief from stay brought by MERS. In Huggins, the Court held that MERS could foreclose because it was acting as nominee for the Lender identified in the mortgage ("Spectrum"). In Huggins, the Lender identified in the mortgage never transferred or assigned the note to another entity and MERS was foreclosing on behalf of the named Lender on the mortgage contract. Therefore there was "no disconnection between the note and the mortgage" and there was clear contractual transparency between the Lender, the

6

Mortgagee and the Borrower. Id. at 184. The Huggins court was clear that the reason why MERS could foreclose in that instance was because there was no disconnection between the note and the mortgage. The Huggins court was careful to distinguish a case in which MERS was foreclosing on behalf of the named Lender on the mortgage from a case in which MERS subsequently assigned the mortgage to another entity. The Huggins court recognized this distinction when it cited LaSalle Bank Nat. Assn. v. Lamy, 12 Misc.3d 1191 (A) 2006 NY Slip Op 51534 August 7, 2006), a decision in which "the court denied a foreclosure action by an assignee of MERS on the grounds that MERS had no ownership interest in the underlying note and mortgage but rather acted as nominee and thus did not have the power or right to assign". Huggins    The Lamy Court stated that:

> "It is axiomatic that to be effective, an assignment of the note and a mortgage given as security thereor must be made by the owner of such note and mortgage and that an assignment made by entities having no ownership interest in the note and mortgage pass no title therein to the assignee. Matter of Stralem, 303 AD2d 120, 758 NYS2d 345, and the cases cited therein). A nominee of the owner of a note and mortgage may not effectively assign the note and mortgage to another for want of an ownership interest in said note and mortgage by the nominee" Lamy at 2.

The foundation of MERS business model and the MERS Mortgage is to disconnect the Note from the Mortgage so that the Note can be transferred while the Mortgage remains stagnant. This disconnection between the mortgage and the note renders MERS authority to assign a mortgage as obsolete. [See Saxon Mortgage Services Inc. v. Hillery, C-08-4357 EMC, 2008 WL 517-180 (N.D. Cal. Dec. 9, 2008) (court found that MERS did not assign the note as there was no evidence that it either held the note or was given the authority by lender to assign the note. Court concluded assignee had no standing);

7

Bellistri v. Ocwen Loan Servicing, LLC, 284 S.W. 2d 619 (Mo. Ct. App. 2009) (held that the note and mortgagee had been separated; assignee from MERS had no standing to foreclose because MERS had no power to transfer the note).

Under Rhode Island Law and pursuant to the United States Supreme Court case of Carpenter v. Lonagan, 83 U.S. 271 (1872), "the note and mortgage are inseparable; the former as essential, the latter as an incident.    As assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity.".   Id at 274. Likewise, in this case, since there is a mere assignment of the mortgage without the assignment of the note, the Assignment is a nullity.  Furthermore, in a recent landmark and on point decision, the Supreme Judicial Court of the Commonwealth of Massachusetts, our neighboring and similar non-judicial foreclosure state, has confirmed that "where a note has been assigned but there is no written assignment of the mortgage underlying the note, the assignment of the note does not carry with it the assignment of the mortgage." U.S. Bank National Assoc. v. Ibanez, SJC 10694 (January 7, 2011).  The Ibanez Court, explained that "the party foreclosing must prove that the assignment was made by a party itself that held the mortgage and the obligation the mortgage secures" (i.e. the note).  (See Ibanez citing In re Parish) 326 B.R. 708, 720 (Bank. N. D. Ohio 2005).  ("If the claimant acquired the note and mortgage from the original lender or from another party who acquired if from the original lender, the claimant can meet its burden of proof through evidence that traces the loan from the original lender to the claimant."). It is clear, therefore, that with every transfer of the note, there needs to be an assignment of the mortgage that corresponds to the transfer of the note in order for the party claiming to have standing to properly foreclose.

The reasoning and logic of the United States Supreme Court in Carpenter v. Lonagan combined with the reasoning and logic of Ibanez, as delineated above, challenges the entire premise of the MERS system and the issues associated with its' role in disconnecting the Note from the Mortgage. The factual allegations in the each Plaintiffs' Complaint epidomize the problems not only with a MERS mortgagee being disconnected from the Note but with the MERS practice of loosely and liberally appointing Vice Presidents and Assistant Secretaries for the sole purpose of granting signatory authority. In many cases it appears that the servicers are utilizing the MERS System to assign the Mortgages to themselves.

c. **MERS Can Never Assign the Note Because it Never Held the Note and Therefore Can Not Foreclose.**

On February 9, 2011 the United States Bankruptcy Court of the District of Massachusetts, Central Division denied a Motion to Dismiss in accordance with Fed.R.Civ.P. 12(b)(6) because, among many other reasons, the Defendant, CitiMortgage, "may not rely on the recorded assignment of the plaintiff's mortgage from MERS to CitiMortgage as evidence that the note was transferred to it". In Re Thomas, CA# 10-40549-MSH, (Mass. 2-9-2011). The Thomas Court reasoned that "while the assignment purports to assign both the mortgage and the note, MERS...was never the holder of the note, and therefore lacked the right to assign it. While MERS was the mortgagee of record, it was acting only as nominee for Allied, its successors and assigns. MERS is never the owner of the obligation secured by the mortgage for which it is the mortgagee of record. (See, e.g. Landmark Nat. Bank v. Kesler, 289 Kan. 528, 536 216 P.3d 158, 164 (2009) (providing a profile of MERS)".

9

A similar conclusion was reached in the Kesler decision. In Kesler, the Supreme Court of Kansas stated that "if MERS is only the mortgagee, without ownership of the mortgage instrument [ie. the note], it does not have an enforceable right" to foreclose. Id at 541-542. Another interesting aspect of the Kesler decision is the Court's reference to a Nevada Supreme Court decision in which MERS denied that it transferred mortgages and contended that "it is not authorized to engage in the practices that would make it a party to either the enforcement of mortgages or the transfer of mortgages". In MERS v. Nebraska Dept. of Banking, 270 Neb. 529 (2005), MERS appealed an administrative finding that it was a "mortgage banker" subject to license and registration requirements. MERS argued "that it does not acquire mortgage loans and is therefore not a mortgage banker...because it only holds legal title to members' mortgages in a nominee capacity and is contractually prohibited from exercising any rights to the mortgages (i.e. foreclosure) without the authorization of the members". Id. at 532-533. The MERS v. Nebraska case is a prime example of how MERS audaciously morphs its definition to suit its needs while often contradicting itself. Such is the inevitable nature of its dangerous business model.

The Thomas and Kesler decisions are consistent with the United States Supreme Court's assertion in the Carpenter v. Lonagan case that an assignment of the mortgage without the note is a legal "nullity". It would logically follow that *any* assignment from MERS is a legal nullity because MERS never holds the notes underlying the mortgages in which it assigns. Therefore, when MERS assigns a mortgage and the assignee is attempting to invoke the Statutory Power of Sale, there must be an evidentiary showing consistent with J. Silverstein's statement in Bucci that the foreclosing party (in that case

MERS) was a "nominee" of a successor or assign of the original Lender. In each case involving MERS, as in the <u>Thomas</u> case, the Plaintiff alleges that the Note was not assigned by the Assignment of record purporting to assign the Mortgage from MERS to the new entity. The Assignments fail to contain any language as to any assignment or transfer of the Note. Therefore, when viewing the pleadings in the light most favorable to the Plaintiff and accepting facts as alleged in the complaint as true, each Plaintiffs complaint that involves a MERS assignment establishes a prima facie case because it specifically alleges that there is not a valid assignment of the note and the mortgage to the party attempting to invoke the Statutory Power of Sale.

## II. Each Plaintiffs' complaint alleges that party invoking the Statutory Power of Sale is not a "successor or assign' of the original lender and is not the note holder or an agent of the note holder.

The Defendants' will argue that MERS has the right to assign the Statutory Power of Sale". This statement attempts to read the language of <u>Bucci</u> in a vacuum and ignores the conclusion of the <u>Bucci</u> case. In <u>Bucci</u> the Court stated that MERS could invoke the Statutory Power of Sale because it is the named mortgage and the nominee of the lenders successors and assigns. In each complaint involving a MERS Assignment, however, the Complaints allege that the party invoking the Statutory Power of Sale is not a valid "successor or assign" of the Original Lender that holds the Note and that MERS or the foreclosing entity (most likely a servicer) is in fact acting as agent for the Lender's successor or assign that holds the note. Therefore, even though MERS may invoke the Statutory Power of Sale by acting as a "wraparound mortgagee", the defendants must show the necessary connections and prove that those connections were and are valid.

The Defendants must show that the Note was transferred to its principal and that MERS is in fact acting as nominee for that principal.

An argument identical to the Defendants' contention that an assignment from MERS automatically transfers the right to foreclose was recently rejected in the case of In Re Agard, CA#810-77338 (E.D.N.Y. 2-10-11). In Agard, Select Portfolio Servicing, Inc. as servicer for U.S. Bank, attempted to argue that MERS's authority to assign the mortgage to U.S. Bank derived from the mortgage itself "which allegedly grants to MERS its status as both "nominee" of the mortgagee and 'mortgagee of record'" Id. at p.2. The fundamental question then became whether or not "MERS had the legal authority to assign a valid and enforceable interest in the subject mortgage". Id. at p. 1. The Agard Court was highly critical of the MERS business model when it stated:

> "MERS and its partners made the decision to create and operate under a business model that was designed in large part to avoid the requirements of the traditional mortgage recording process.    This Court does not accept the argument that because MERS may be involved with 50% of all residential mortgages in the country, that is reason enough for this Court to turn a blind eye to the fact that this process does not comply with the law." Agard at p. 4

The Agard Court held that MERS did not have the legal authority to assign a valid and enforceable interest in the mortgage because: 1) MERS, as a non-party to the Note, failed to "confirm that the Note was properly transferred or in fact whether anyone including agents of MERS had or have physical possession of the Note and 2) the MERS Mortgage failed to grant MERS's specific authority to assign the Mortgage. Id. at 21, 31. Likewise, in the cases at bar the party attempting to invoke the Statutory Power of Sale, has failed to confirm that the Note was validly transferred to the party it is acting for

The language of the Mortgage and the Assignments of record are not sufficient to establish contractual authority for MERS to effectively and validly assign the Mortgage and Note. In order to enforce the rights of the holder of the Note the non-holder agent must show that its' principal is the valid beneficial note-holder. See In Re Sheridan, CA 08-20381-TLM (Idaho 3-12-2009) (MERS failed to show standing where it failed to produce evidence that the principal in which MERS was acting held the note); In Re Hawkins, BK-S-07-13593-LBR at p.9 (Nev. 3-31-2009) ("in order to enforce rights as agent for holder, MERS must establish that its principal is entitled to enforce the note"; "MERS may not enforce the notes as the alleged beneficiary"; "While MERS may have standing to prosecute the motion in the name of its member as a nominee there is no evidence that named nominee is entitled to enforce the note or that MERS is agent of the noteholder").

The requirement that a non-holder agent must show that it is acting on behalf of a valid principal note-holder was best demonstrated in In Matter of Kemp, CA # 08-18700-JHW (N.J. 11-16-2010).    In Kemp, the mortgage listed the lender as "America's Wholesale Lender" (ie. Countrywide) and MERS as the mortgagee. The note listed the lender as "Countrywide Home Loans, Inc." Subsequent to the borrower's execution of the note and mortgage, the note was sold as part of a package from Countrywide to Bank of NY as Trustee. Subsequent to the selling of the note an assignment was recorded purporting to assign the mortgage and note from MERS, as nominee for America's Wholesale Lender to Bank of BY as Trustee for the beneficial note-holder. Sometime later the borrower filed for Chapter 7 and Countrywide, as servicer, filed a proof of claim which the borrower moved to expunge. At a hearing on the motion a representative from

13

Countrywide testified that the Note was never transferred to Bank of NY because Countrywide kept possession of the Note as servicer after the sale from Countrywide to Bank of NY. The Court held that Countrywide could not enforce the Note, as a negotiable instrument under the UCC, because the principal upon which Countrywide as acting (ie. Bank of NY) never had possession of the note.

The Plaintiffs sets forth that inherent in a party's authority to invoke the Statutory Power of Sale is transparency in the mortgage contract and the assignments of mortgage. In a case such as Huggins, where MERS, as mortgagee and nominee of the Lender named in the mortgage, is foreclosing as nominee for the Lender named in the mortgage, the transparency might be contractually clear. In a case in which the obligation the mortgage secures (ie. the Note) has been transferred or assigned by the Lender, however, contractual transparency is not apparent because there is no proof, control, or restriction on whether or not the party invoking the Statutory Power of Sale is, in fact, acting for a successor or assign of the Lender named in the mortgage. Such lack of transparency within the MERS mortgage contract is against the spirit of the limited right to invoke the Statutory Power of Sale because there is no way of telling who the party attempting to foreclose is acting.

A precedent that would allow MERS or a MERS assignee to foreclose without showing that the foreclosing party is in fact acting for the Lender's successors and or assigns (ie. the beneficial holder of the note) would lead to inequitable and unfair results that are against public policy. Such a precedent would encourage abuses of Rhode Island's Statutory Power of Sale and allow situations where a MERS assignee or an agent of a MERS assignee is becoming a member of MERS and assigning the mortgage to

14

itself. For the reasons set forth above and in this memorandum the Plaintiffs respectfully requests that the court find that a substantial likelihood of success on the merits exists and grant an injunction in each case.

The Assignment of Mortgage fails to include any language at all that references the Cardi Note. As our United States Supreme Court has made clear, an assignment of a mortgage without the note is a "legal nullity". Carpenter v. Lonagan, 83 U.S. 271 (1872). The existence and importance of the relationship between the note and a mortgage securing the note has been acknowledged by our Supreme Court notably in the case of Turner v. Domestic Investment and Loan corp., 119 R.I. 29 (1977). In Turner, the Rhode Island Supreme Court held that while a legal mortgage is an executed conveyance, there must be an obligation for a mortgage to secure in order to validly foreclose. Although the Plaintiffs in this case obviously concede that the obligation exists, the Plaintiffs aver that the entity claiming to hold the mortgage fails to have valid authority under the obligation and the Assignment of Mortgage to validly enforce foreclosure.

## CONCLUSION

The Statutory Power of Sale must be limited to its terms as analyzed in the Bucci case. The Bucci decision is not the final say on foreclosures involving MERS in Rhode Island nor does the Bucci decision address the issue of MERS assignments. The Bucci case while analyzing Rhode Island's Statutory Power of Sale in the context of the MERS Mortgage Contract, limited its holding. The Bucci case in no way shape or form addressed the issue of MERS' authority or ability to validly assign a mortgage or note. The Bucci case held that MERS had the statutory and contractual authority to invoke the Statutory Power of Sale because MERS was the mortgagee and the nominee of the

lender's successors and assigns.  In these cases the Defendants have not shown and the Plaintiffs allege in their complaints that the foreclosing entities are not the lender's successor or assign and are not the nominee or agent of the noteholder.  Therefore, the Plaintiffs' allegations are more than sufficient to establish a prima facie case.  The Plaintiff has set forth sufficient facts to demonstrate that he is entitled to the relief sought.

Respectfully submitted
Plaintiffs on docket represented by
Tod S. Dion Esq.

/s/ Todd S. Dion
Todd S. Dion Esq. (6852)
1319 Cranston Street
Cranston, RI 02920
401-663-7377 Phone
401-270-2202 Fax

June 26, 2013

CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2013, a copy of the foregoing document, filed through the CM/ECF System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies shall be served by first class mail postage prepaid on the parties listed on the NEF as not receiving electronic notice.

/s/ Todd S. Dion
Todd S. Dion