UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND


In re: Mortgage Foreclosure Cases                    Misc. No. 11-mc-88-M-LDA


## CERTAIN DEFENDANTS' RESPONSE TO THE COURT'S
## JUNE 21, 2013 SHOW CAUSE ORDER (DOC. NO. 2165)

Certain Defendants object to the Special Master's June 17, 2013, request for approval of

bills for services rendered from May 1, 2013, through May 31, 2013.  This month, the Special

Master's bill itemizes costs and expenses of $80,212.05 for the month of May, which bill

represents the largest amount invoiced to date.  (*See* Invoice No. 16, dated 6/17/13).  These

defendants submit the following objections out of their continued, and validated, concern for the

absence of any temporal and monetary limitations set by the Court with respect to this mediation

program since its inception.

As recently recognized by the First Circuit Court of Appeals in *Fryzel v. Mortgage Elec.*

*Registration Sys., Inc.*, 12-1526, 2013 WL 2896794, *4 (1st Cir. June 14, 2013), the terms of this

mandatory mediation program have failed "to conform to the standard of reasonable trial court

discretion as explained in *In re Atl. Pipe Corp.*, 304 F.3d 135 [(1st Cir. 2002)]."  Specifically, the

mediation order lacks adequate "procedural and substantive safeguards to ensure fairness to all

parties involved."  *In re Atl. Pipe Corp.*, 304 F.3d at 147.  As evidenced by the expense of the

mediation efforts thus far and the volume of cases involved, the establishment of reasonable time

limits and fee constraints is appropriate and necessary.  *Fryzel*, 2013 WL 2896794, *4; *see also*

*In re Atlantic Pipeline Corp.*, 304 F.3d at 147.  Accordingly, these defendants respectfully object

to the approval of the Special Master's request for fees and expenses incurred in connection with the facilitation of a mediation program that presently exceeds permissible bounds.

Further, the defendants highlight the discouraging number of cases on this docket that have achieved settlement through the mediation program.  As of the present date, there are approximately nine-hundred (900) active cases assigned to this docket—a number that continues to rise at a rate exponentially faster than the rate at which cases are resolved through mediation. As reported by the Special Master in her Status Report as of April 30, 2013 (Doc. No. 2130), one hundred and forty-three (143) of nine hundred and sixteen (916) cases have been disposed of through settlement conference activity or otherwise dismissed—a success rate hovering at only fifteen (15) percent.  Perhaps more disconcerting is the actual breakdown of this reported number—ninety-two (92) of these one hundred and forty-three (143) "disposed" cases represent cases dismissed via sanction for failure to comply with court orders and mandates, and fourteen (14) of these disposed cases were removed from the docket for "other" reasons.  (*See* Status Report of April 30, 2013, "Docket Overview.")  Lifting these "sanctioned dismissal" and removed cases from the analysis reveals that, as of April 30, 2013, less than one-half (0.5) percent of cases assigned to the docket (a mere 37 cases, or 0.04%) appear to have been settled by way of mandated mediation.

Moreover, the defendants emphasize the cumulative cost of the mediation program to date in light the number of cases that have reached resolution through the program.  Based on the disbursement of funds approved by the Court since the institution of the mediation order, the administrative cost of the mediation program to date surpasses $738,973.00.  Simply stated, the average cost of settling a case through mandatory mediation presently equates to approximately

34354874v1 0915271

$19,972.00.   At this rate, the cost of settling the remaining 773 cases listed as "active" as of April 30, 2013, approaches $15.5 million dollars.

As these defendants have consistently maintained, the invoices and the status reports repeatedly reflect that the core of the mediation program has transformed from the facilitation of settlement conferences to an administrative quagmire operating at an ever-increasing cost.  Each month, the Special Master seeks fees and expenses incurred for nondescript services such as "miscellaneous emails," "miscellaneous telephone calls," "staff meeting[s]" and interoffice conferences.  (*See e.g.,* Special Master's Invoice.)  Certain employees, such as Mr. Slingo, are paid high wages for work that is primarily administrative in nature.[1]   As typically revealed in Mr. Slingo's Weekly Employee Time Sheets, which the defendants note the Special Master did not submit to the Court this month, the bulk of Mr. Slingo's time entries reflect purely administrative functions. (*See generally*, Mr. Slingo's Weekly Employee Time Sheet entries.) For example, Mr. Slingo routinely performs the following tasks: "Updated case entries in Access;" "Entered Pre-conference forms;" "Entered initial position statements;" "Respond to attorney emails;" "Scheduled conferences;" "Followed up on deadlines;" "Sent deadline lists" "Printed out prep pack[e]ts" and imputed edits to court filings made by the Special Master.  (*See e.g.*, Mr. Slingo's Weekly Employee Time Sheets for March 25 to April 19.)

On similar grounds, the defendants renew their objection to the funds paid to Sullivan & Company LLP for undefined services.  In particular, the defendants submit the bill entries for Mr. Simon in the month of May. The defendants also objected to Mr. Simon's bills for October 2012, December 2012, January 2013, February 2013, March 2013, and April 2013.   The

---

[1] As disclosed by previous time sheets, Mr. Slingo is apparently paid at a rate of $75.00 per hour, which equates to an annual salary of approximately $156,000, for a typical forty (40) hour work week.

34354874v1 0915271

following are Mr. Simon's entries for May, which appear even more unclear than in prior invoices:

| | |
|---|---|
| 5/7/2013: | meeting (1) |
| 5/14/2013: | meeting (1) |
| 5/17/2013: | issues with first quarter rec (1) |
| 5/21/2013: | follow up on reconciliation issues (0.75) |

(*See* Sullivan & Company Invoice, No. 38860, dated 5/31/2013.)   The Special Master is requesting that the parties pay Mr. Simon at a rate of $220/hour for vague and unspecified tasks. The Court should not require the parties to this litigation to continue to pay for Mr. Simon's undefined activities.  Also with respect to the Sullivan & Co. invoice, these defendants object to the continued monthly charge of $2000.00 for "office space & technology," an overhead expense inappropriately invoiced as a separate charge, as well as the $3,616.65 charge for Informational Technology work provided to Sullivan & Co. through Fanion, McDonagh, & Co., LLC to modify the database used by Sullivan & Co. in connection with its invoicing of Use & Occupancy payments and retainer fees.

Each month, the cost of administering the mediation program inflates, yet the bulk of the billing entries reflect administrative work, rather than genuine settlement activity.  Though mindful that the facilitation of the mediation program is not a simple task, the defendants remain concerned that little effort has been made to streamline the administration of this program, particularly with respect to payroll costs, billing transparency, and the elimination of unnecessary and duplicative tasks among employees.  The defendants respectfully urge this Court to consider all of these factors, not only during its review of the Special Master's bill, but also in any future efforts to structure the program to align with the directives of the First Circuit's opinion in

4

*Fryzel.*  Accordingly, these defendants object to the Special Master's bill for $80,212.05 for the month of May.

34354874v1 0915271

Respectfully submitted,

FEDERAL NATIONAL MORTGAGE ASSOCIATION
AND SPECIALIZED LOAN SERVICING, LLC

By Their Attorneys,


/s/ Maura K. McKelvey
Maura K. McKelvey, #6770
mmckelvey@hinshawlaw.com
Samuel C. Bodurtha, #7075
sbodurtha@hinshawlaw.com
Hinshaw & Culbertson LLP
321 S. Main Street, Suite 301
Providence, RI 02903
Tel: (401) 751-0842
Fax: (401)-751-0072

RBS CITIZENS, NATIONAL ASSOCIATION D/B/A
CCO MORTGAGE CORPORATION, CCO MORTGAGE
CORP., RBS CITIZENS, NATIONAL ASSOCIATION,
HOUSEHOLD FINANCE CORPORATION II, HSBC
MORTGAGE CORPORATION, BENEFICIAL RHODE
ISLAND, INC., HSBC MORTGAGE SERVICES, INC.,
HOUSEHOLD FINANCE COMPANY, HSBC BANK
USA, N.A., AURORA LOAN SERVICES, LLC,
LEHMAN BROTHERS BANK, FSB
AURORA BANK, FSB, US BANK AS TRUSTEE,
NATIONSTAR MORTGAGE LLC, ARGENT
MORTGAGE COMPANY, LLC, U.S. BANK N.A. AS
TRUSTEE TO STRUCTURE ASSET INVESTMENT
LOAN TRUST MORTGAGE PASS THROUGH
CERTIFICATES SERIES 2005-9, U.S. BANK
NATIONAL ASSOCIATION, and FIRST GUARANTY
MORTGAGE COMPANY

By Their Attorneys,


/s/ David J. Pellegrino
David J. Pellegrino (#7326)
Charles A. Lovell (#4004)
PARTRIDGE SNOW & HAHN LLP
180 South Main Street
Providence, Rhode Island 02903

34354874v1 0915271

Tel. (401) 861-8200
Fax. (401) 861-8210
djp@psh.com


FLAGSTAR BANK, FSB

By Their Attorneys,


Admitted *Pro Hac Vice*          */s/ Mary Ellen Manganelli*
Mary Ellen Manganelli
Gregory S. Bombard
Bulkley, Richardson and Gelinas, LLP
125 High Street
Oliver Street Tower, 16th Floor
Boston, MA  02110
(617) 368-2500
mmanganelli@bulkley.com
gbombard@bulkley.com


FEDERAL HOME LOAN MORTGAGE
CORPORATION, SETERUS, INC., PHH MORTGAGE
CORPORATION, PROVIDENT FUNDING GROUP,
INC., and PROVIDENT FUNDING ASSOCIATES, LP

By Their Attorney,


*/s/ Jennifer J. Normand*
Jennifer J. Normand, Esq., #8337
jnormand@harmonlaw.com
Thomas R. Lavallee, Esq. #8579
tlavallee@harmonlaw.com
HARMON LAW OFFICES, P.C.
150 California Street
Newton, MA 02458
Telephone: (617) 558-2264
Fax: (617) 243-4038

34354874v1 0915271

HSBC MORTGAGE SERVICES INC.

By its attorneys,


/s/ Sean R. Higgins
Sean R. Higgins, (pro hac vice)
sean.higgins@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
One Post Office Square, 30th Floor
Boston, Massachusetts 02109
Tel.: (617) 573-4700
Fax: (617) 573-4710

SAND CANYON CORPORATION
f/k/a OPTION ONE MORTGAGE CORP.,

By their attorneys,


/s/ Patricia A. Buckley
PATRICIA A. BUCKLEY, Bar ID#2987
pbuckley@benjestlaw.com
BENGSTON & JESTINGS, LLP
40 Westminster Street, Suite 300
Providence, RI  02903
Tel.  (401) 331-7272
Fax. (401) 331-4404

34354874v1 0915271

FEDERAL NATIONAL MORTGAGE ASSOCIATION, ONE WEST BANK, FSB, HSBC BANK USA, AS TRUSTEE FOR THE SERIES OMAC 2005-4, NATIONWIDE ADVANTAGE MORTGAGE COMPANY, GREENTREE SERVICING, LLC, NATIONSTAR MORTGAGE, LLC, NEW YORK COMMUNITY BANK and RESIDENTIAL CREDIT SOLUTIONS, INC.

By their attorney,

/s/ *Thomas R. Lavallee*

Thomas R. Lavallee, Esq., #8579
tlavallee@harmonlaw.com
HARMON LAW OFFICES, P.C.
150 California Street
Newton, MA 02458
Tel. (617) 558-8466
Fax: (617) 243-4038


NATIONSTAR MORTGAGE, LLC AND SELECT PORTFOLIO SERVICING, INC.
By its attorneys,


/s/ *Meredith A. Swisher*

James B. Fox, Esq.
Meredith A. Swisher, Esq.
Admitted *Pro Hac Vice*
Bernkopf Goodman LLP
Two Seaport Lane, 9th Floor
Boston, MA 02210
Phone: (617) 790-3000
Fax: (617) 790-3300
E-mail: jfox@bg-llp.com
mswisher@bg-llp.com


Dated:  June 26, 2013

34354874v1 0915271

## CERTIFICATE OF SERVICE

I, Maura K. McKelvey, hereby certify that the foregoing document was filed through the Court's ECF filing system and that a copy of the same will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 26, 2013.

*/s/ Maura K. McKelvey*

10

34354874v1 0915271