UNITED STATES DISTRIC COURT
FOR THE
DISTRICT OF RHODE ISLAND

_____ )
                                        )
                                        )
In re: Mortgage Foreclosure Cases       )          Misc. No. 11-mc-88-M-LDA
                                        )
_____ )

## PLAINTIFFS' AMICUS BRIEF

The First Circuit Court of Appeals, in its infinite wisdom, remanded this matter to the District Court, classifying as a preliminary injunction the Court's prior issuance of an order staying all foreclosure and evictions actions in the general "MERS"/foreclosure cases in an effort to manage the increasing docket of these cases currently and in the future before the Court. The First Circuit did not prohibit the District Court from reissuing its order, rather requiring proper notification and hearings thereon prior to its reissuance.

The stay order has had the desired effect, as coupled with the appointment of a Special Master, many of the pending cases have been settled through mediation, are in the process of mediation, or have simply been dismissed by the Court for the failure of various Plaintiffs to comply with the Special Master's Use and Occupancy and master's Fees. The hardship to the various Plaintiffs, in the pipeline, so to speak, with the elimination of the stay and mediation process cannot be adequately expressed. The Rhode Island newspapers will begin to double in size due to the spate of increased foreclosure sales. The Court's own calendar would also be swamped with the filings of individual Motions for Stay if the order is fully eliminated. Owing to the many hundreds of cases currently pending before the Court, for judicial expedience alone the Court has and should use its power to streamline and manage its own docket.

Using the Circuit Court's guidance, the entire mortgage foreclosure caseload should be consolidated and set down for hearing(s) on the issuance of a new preliminary injunction. A two-pronged test was set down by the Circuit Court, firstly, whether a showing of a likelihood of probable success on the merits can be demonstrated under Rule 65, and secondly, if such a showing is made by the moving parties, then a second hearing held to address the mediation if feasible and if so, to estimate time schedules and related costs with periodic reconsideration.

That the Federal District Courts have the authority to issue injunctions is derived from the courts' inherent equity powers and Rule 65 of the Federal Rules of Civil Procedure. "In most cases the determination whether to issue an injunction involves a balancing of the interests of the parties who might be affected by the court's decision--the hardship on plaintiff if relief is denied as compared to the hardship to defendant if relief is granted." 11A Charles A. Wright, Arthur R. Miller & Mary Kay Kane at § 2942. Decision as to whether an injunction is warranted on the facts of a particular case is committed to the sound discretion of the trial court. *See id.; Lemon v. Kurtzman,* 411 U.S. 192, 200, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973) ("In shaping equity decrees, the trial court is vested with broad discretionary power").

At common law, chancery courts in England provided extraordinary relief such as injunctions and specific performance only when the parties could not obtain an effective remedy from the courts of law. 11A Wright & Miller at § 2944; McClintock, Equity, § 21 (2d ed.1948). "Even though there no longer are separate law and equity courts ... injunctive relief continues to be viewed as 'extraordinary' and courts are reluctant to award it if the claimant can secure adequate rectification of his grievance by an award of damages." *Id.*

"[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki,* 442 U.S. 682, 702, 99 S.Ct.

2545, 61 L.Ed.2d 176 (1979). "A plaintiff seeking an injunction must show that there is an imminent threat of harm and that the threatened harm is 'irreparable.'" Owen Fiss, Injunctions 59 (2d ed.1984). *In re ZYPREXA INJUNCTION*, 474 F.Supp.2d 385 at 418 (E.D.N.Y. 2007)

A federal court can always issue an injunction to prevent irreparable injury. This Court's injunctions are permitted … by its engrafted power to prevent irreparable injury and also by its inherent injunctive powers. *Wulp v. Corcoran*, 454 F.2d 826, 831 n. 5 (1st Cir. 1972).

In *GUIDANCE ENDODONTICS, LLC, v. DENTSPLY INTERNATIONAL, INC*., et al, 633 F.Supp.2d 1257 (D.N.M. 2008), The Court there stated, "Injunctive relief is an "extraordinary remedy," and the movant must demonstrate a "clear and unequivocal right" to have a request granted. *Leviton Mfg. Co., Inc. v. Nicor, Inc*., No. CIV 04-0424 JB/RHS, CIV 04-1295 JB/ACT, 2007 WL 505796 (D.N.M.)(Browning, J.)(citing *Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250, 1256 (10th Cir.2003)). The Supreme Court and the United States Court of Appeals for the Tenth Circuit have explained that " [t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can beheld." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 68 L.Ed.2d 175 (1981). See *Keirnan v. Utah Transit Auth.*, 339 F.3d 1217, 1220 (10th Cir.2003)(" ' In issuing a preliminary injunction, a court is primarily attempting to preserve the power to render a meaningful decision on the merits.' " )(quoting *Tri-State Generation & Transmission Ass'n v. Shoshone River Power, Inc*., 805 F.2d 351, 355 (10th Cir.1986)).

 To establish its right to preliminary relief, a moving party must demonstrate: " (1) the movant will suffer irreparable harm unless the injunction issues; (2) there is a substantial likelihood the movant ultimately will prevail on the merits; (3) the threatened injury to the movant outweighs any harm the proposed injunction may cause the opposing party; and (4) the

injunction would not be contrary to the public interest." *Wyandotte Nation v. Sebelius*, 443 F.3d 1247, 1254-55 (10th Cir.2006) (quoting *Kiowa Indian Tribe of Okla. v. Hoover*, 150 F.3d 1163,1171 (10th Cir.1998)). <u>If the moving party demonstrates that the first, third, and fourth factors " tip strongly in his favor, the test is modified," and the moving party " may meet the requirement for showing success on the merits by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue for litigation and deserving of more deliberate investigation."</u> *Okla. ex rel. Okla. Tax Comm'n v. Int'l Registration Plan, Inc.*, 455 F.3d 1107, 1113 (10th Cir.2006)(quotation marks omitted). Id at 1268 (emphasis added).

While it is impossible to examine each and every case currently pending before the Court on the "MERS" docket, many of the case have the following issues in common:

The auction and sale and mortgage deed are void  pursuant to the provisions of Chapter 11 of Title 34 and the provisions of Title 6A of the Rhode Island's Uniform Commercial Code. Appellant also avers that R.I.G.L. 34-11-22 is also unconstitutionally in conflict with the State's Due Process Clause and the State access to justice clause because that statute substitutes the role of a judge's pre-foreclosure review of real estate statutes with an advertising clerk at a state wide newspaper.

Only a note holder in conformance with the R.I. U.C.C. is authorized to exercise the R.I. Statutory Conditions, 34-11-21 and the Statutory Power of Sales by Advertisement and Sale. 34-11-22 .Mortgage Servicers are not a note holder and not subject to the Uniform Commercial Code and not qualified under statute to conduct a foreclosure.

Mortgagee statutes must be strictly construed. "The statute is in derogation of the common law, and, as such, strict compliance is required. *Art Metal Construction Co.,* 56 R.I. at

4

246, 185 A. at 144." Gem Plumbing & Heating Co., Inc. v. Rossi, 867 A.2d 796, 803 (R.I. 2005).

Defendants were not authorized by R.I. state law to have conducted a foreclosure through the

advertising statue, R.I.G.L.§34-11-22, and thus have denied the  Plaintiff Due Process Rights to a

judicial hearing, at which the Plaintiffs might object to the taking of their statutory property right

to the redemption of equity in their homes, pursuant to R.I.G.L§ 34-23-2 and R.I.G.L§34-26-1.

        In securitized mortgage case, the Trustee of the Plaintiffs' securitized mortgage have not

had its trust summarized and recorded on land records of the municipality of the grantor of the

mortgage as required by R.I.G.L.34-4-27; thus Defendant purchasing the putative mortgagee

deed did not own fee simple in the Plaintiff's real estate.

        Unrecorded Powers of Attorney May Not Foreclose. The assignments are void and the

foreclosure deeds are void because they were signed by alleged attorneys in fact without any

records of their powers of attorney having been filed in the land records, as required by required

by the provisions of R.I.G.L.§34-11-4 and R.I.G.L 34-27-4 pursuant to R.I.G.L.§34-11-1 and

R.I.G.L.§34-11-34  as not being duly signed by the mortgagee or assignees  pursuant to R.I.G.L.

§34-27-4.

        If the Trustee had authorized Attorneys to sign on its' behalf, it had to file the

authorization for the power of attorney to sign on the land records. If the assignments and the

foreclosure deeds were not duly signed, as required by R.I.G.L. §34-11-1, by R.I.G.L.§34-11-

12(6), by R.I.G.L.§34-11-22, and by R.I.G.L.§34-27-4, the prior assignment is void and the

putative foreclosure deed is void.

        Because a mortgage servicer can perform a limited function of mortgagee, it does not

mean that the mortgage servicer can perform all functions of a mortgagee. The provisions of

R.I.G.L. §34-11-7, R.I.G.L. § 34-11-1, R.I.G.L. §34-11-12, R.I.G.L. §34-11-19, R.I.G.L.§ 34-11-

20, R.I.G.L. § 34-11-22,  and R.I.G.L. §34-11-24 did not authorize the Defendant Mortgage

Servicers to conduct foreclosures.

Mortgage Servicers are limited only to the functions set forth in R.I.G.L.§19-9-9;

R.I.G.L§34-26-8, R.I.G.L.§5-70-1; and R.I.G.L.§34-28-17.1 and no more.

The Magistrate misunderstood that application of standing to assignments by entities not

in the chain of title. It reversed the role of strangers to title. It is the assignee who is the stranger

to title if they do not have an agency agreement with the endorsed note holder.

Rhode Island's statutory affidavit for the exercise of the power of the sale requires an

oath that the principal and interest on the promissory note was not paid, that notice was mailed to

the mortgagor, that notice was published in the newspaper, and an auctioneer sold the property

for a specific price.

Without adherence to the statutory conditions contained in Title 34, the foreclosure by

advertising statute is a state action under the color of law for the purpose of a 42 USC 1983

action.  Article I, §2 of the Rhode Island State Constitution provides that "**No person shall be

deprived of life, liberty or property without due process of law."** A home is property**.** Due

process is the right to notice and judicial review before a person's home is taken. R.I.G.L.§34-

11-22 cuts off judicial review.

Those provisions, R.I.G.L. § 34-11-22 and R.I.G.L.§ 34-13-3 deny the rights of a home

owner to a judicial hearing on the applicability of  the following statutes protecting the home

owners' property rights.

1. to prove that an insufficient  number of advertisements were  published and improper

   notices were not provide as required by R.I.G.L.§34-11-22 as a predicate to the

   exercise of foreclosure by advertising;

1) To prove that the mortgagor did not receive a certified notice of the foreclosure date thirty days (30) day before the first published advertisement as required by R.I.G.L. §34-26-4;

2) to prove that mortgage deed is void because the home owner did not receive a counseling notice forty five (45) days before the auction, pursuant to R.I.G.L.§34-27-3.1;

3) to prove the superior title of the mortgagor to the foreclosing party through the title clearing provisions of R.I.G.L.§34-16-4;

4) to prove that the owner of the property was not in default of his promissory note and, pursuant to R.I.G.L.§ 34-11-21 and that the Statutory mortgage condition was not broken; thus the statutory condition of sale could not be exercised;

5) to prove that a conveyance in the homeowners' chain of title, was void through the provisions of R.I.G.L.§34-11-1 because the conveyance was not in "**writing, duly signed, acknowledged** as hereinafter provided, **delivered**, and **recorded** in the records of land evidence;

6) To prove that an assignment of the power of statutory sale was made by a MERS member without a recorded power of attorney;

7) to prove in a title clearing hearing that the foreclosure deed from a trust was not first proceeded with the filing of a summary of the trusts' power to do so, pursuant to R.I.G.L.§ 34-4-27. Title to real estate – Trusts, thus was not duly signed by an authorized trustee, and was void pursuant to R.I.G.L.§34-11-1 as not being <u>duly</u> signed;

8) to prove that, in a title clearing hearing, that an assignment or a foreclosure deed or foreclosure affidavit was signed by an attorney whose power of attorney was not

recorded pursuant to R.I.G.L.§34-11-34;and thus is void pursuant to R.I.G.L.§34-11-1 as not being <u>duly</u> signed;

9) to prove in a title clearing hearing that the signature by a *mortgage servicer* instead of a *mortgagee*, signed illegally an assignment, a foreclosure deed, or a foreclosure affidavit; and thus such conveyance was not <u>duly</u> signed and was void pursuant to R.I.G.L.§34-11-1;

10) To prove that the mortgagor can redeem the equity in their home, pursuant to R.I.G.L.§34-26-1; and,

11) To prove that the mortgagor can redeem title at a judicial hearing by payment of the outstanding debt within three (3) years after a mortgagee takes title by auction or by entry, pursuant to R.I.G.L.§34-23-2.

The provisions of R.I.G.L.§34-11-22 and R.I.G.L.§ 34-13-3, as written, allow a private party to act as a its own judge in determining whether the aforementioned real estate statutes were followed in violation of Articles V and X of the R.I. State Constitution, which delegates to the Judiciary the exclusive use of the judicial powers, and of procedural due process as contained in Article I, 2 which prohibits a person from judging himself. A newspaper advertising clerk does not review the legal right of a person to conduct a foreclosure and the conformance of the advertiser to real estate statutes of Rhode Island.

Foreclosure by advertising was not a common law contract right. It was created by statute in derogation of any common law right that might be asserted; and thus the regulatory provisions of title 34 require strict adherence and only a judge may determine such adherence.

From 1896 to 1927, according to R.I. general laws, a complaint to foreclose, pursuant to R.I.G.L.§ 34-27-1, R.I.G.L. 1896, ch. 207, § 15, was the sole method for creditors who owned a

mortgage deed to foreclose. In 1927 the General Assembly first enacted R.I.G.L§ 34-11-22 allowing foreclosures through advertising and auctions without a judicial hearing. The 1986 R.I. Constitution then made non judicial foreclosures unconstitutional.

R.I.G.L§ 34-11-22, the  statutory power of sale in mortgage**,**  provides that \*\*\* it shall be lawful for **the mortgagee** or his, her or its executors, administrators, successors or assigns **to sell**, together or in parcels, all and singular the premises hereby granted or intended to be granted, or any part or parts thereof, **and the benefit and equity of redemption of the** mortgagor and his, her or its heirs, executors, administrators, successors and assigns therein, at public auction \*\*\*, . which sale or sales made as aforesaid shall forever be a **perpetual bar against the mortgagor** and his, her or its heirs, executors, administrators, successors and assigns, and all persons claiming the premises, so sold, by, through or under him or her, them or any of them." (Emphasis Added). Judicial hearings are not provided with R.I.G.L§34-11-22.

In the 1986, the voters of Rhode Island approved Article II, §2 which provided as follows: "No person shall be deprived of life, liberty or property without due process of law, nor shall any person be denied equal protection of the laws." The voters noted in the passage of section 24 of Article I that the scope of its due process clause was not limited by narrow scope of of the Fourteenth Amendment. A mortgaged home is property. Without judicial review, no one knows whether the mortgagee and its assigns have conformed to R.I. law and have a basis for foreclosure. A clerk at the Providence Journal does not review conformance with statute.

There can be no doubt that purpose of the foreclosure by advertising statutes, R.I.G.L. 34-11-22, 34-26-5, and 34-13-3, provide a statutory  advantage to persons claiming to have the right to foreclose otherwise by judicial foreclosure by avoiding judicial accountability to adherence to R.I. real estate mandates. There is no evidence that any person has not used the

foreclosing by advertising statute and chosen a judicial foreclosure, R.I.G.L. 34-27-1 since 1927 when the General Assembly apparently first created the right to foreclose by advertising and auction.

These averments, as set forth throughout the "MERS" cases filed with the Court, are substantial issues and are reflected in the recorded title history of each case. These issues, both Federal and State, require judicial decision, not to be summarily dismissed for a faulty interpretation of standing. Indeed, the mortgage servicers who initiated or completed foreclosures against these Plaintiffs are the parties without proper standing. A Rule 65 hearing should be accorded allowing full briefing by any and all interested parties. The stay and mediation program is and has been a successful docket manager. It should not be eliminated.

Respectfully Submitted,

/s/ Keven A. McKenna
Keven A. McKenna, #0662
Jay R. Katznelson, #2252
23 Acorn Street
Providence, RI 02903
(401) 273-8200
kevenm@kevenmckennapc.com
jkatznelsonesq@yahoo.com

## CERTIFICATE OF SERVICE

I, Keven A. McKenna, hereby certify that this document filed through the ECF system
will be sent electronically to the registered participants as identified on the Notice of Electronic
Filing (NEF) on December 27, 2012.

/s/ Keven A. McKenna