**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

|  |  |  |
|---|---|---|
|  | ) |  |
|  | ) |  |
| In re:  Mortgage Foreclosure Cases | ) | Misc. No. 11-mc-88-M-LDA |
|  | ) |  |
|  | ) |  |

**CERTAIN DEFENDANTS' OPPOSITION TO PLAINTIFFS' BRIEFS SEEKING**
**CONTINUATION OF THE PRELIMINARY INJUNCTION**

**I.      INTRODUCTION**

For an army of complaints based upon such unfounded allegations as 'robo-signing,' it is at best ironic that what the various plaintiffs in these consolidated proceedings have resorted to is essentially 'robo-pleading.'  The First Circuit has ordered that a hearing be held on whether a global stay of the actions within this master foreclosure docket meets the standard for issuance of a preliminary injunction, and the fact that the vast majority of these complaints are simply cookie-cutter copies is critical to an understanding of why such a preliminary injunction cannot persist.  The burden is on the party seeking a preliminary injunction to make a clear showing by verified factual allegations on that standard, but the plaintiffs simply cannot satisfy this obligation, if for no other reason than that the plaintiffs for the most part have not even taken the time to provide personalized facts, let alone verified ones.  This is to say nothing of the fact the bombardment of allegations in the plaintiffs' complaints do not even state a claim for relief.

These identical claims by the same counsel for the majority of the borrowers here have been rejected so repeatedly on the merits in the Rhode Island state trial courts that Judge Rubine of the Rhode Island Superior Court felt compelled to state the following in a recent opinion:

> Plaintiff's Complaint merely alleges conclusory and erroneous statements of Rhode Island law, which legal theories are belied by the previous decisions of this Court.  Plaintiff alleges legal conclusions not reflecting this Court's earlier conclusions of law, but rather alleges law as Plaintiff would like it to be . . . .  The issues presented in this matter have been previously decided by this Court on

1

material facts substantially similar to those alleged by this Plaintiff.  Accordingly, Plaintiff's Complaint must be dismissed for failure to state a claim for relief.

*Dilibero v. MERS*, No. PC 2011-4645, 2012 WL 4507551, at \*5 (R.I. Super. Ct. Oct. 1, 2012) (citing cases).  "Since the allegations set forth [in any given c]omplaint" from these counsel are "nearly identical to the allegations of [every other] complaint," Judge Rubine has become so accustomed to confronting these meritless claims that he has in multiple opinions noted that he simply "will incorporate and adopt the reasoning set forth in" his prior decisions.  *Casimiro v. MERS*, No. PC 2011-1833, 2012 WL 6093911, at \*2 (R.I. Super. Ct. Dec. 4, 2012); *see also Dilibero*, 2012 WL 4507551 at \*3.  Judge Rubine has been explicit that "*[a]s this Court has stated time and again*, Plaintiffs' allegation with respect to the invalidity of the assignments of the Mortgage interest constitutes a legal conclusion not supported by the prevailing case law and is insufficient to survive a motion to dismiss."  *Casimiro*, 2012 WL 6093911 at \*3 (emphasis added).

The undersigned counsel represent defendants in certain of the actions collectively subsumed within this master foreclosure docket.[1]  This brief is in response to the Order of this Court dated June 19, 2013 [ECF No. 2163], seeking to vacate the global preliminary injunction pursuant to Fed. R. Civ. P. 65(a).  The plaintiffs present no verified factual support.  They have no likelihood of success on the merits.  Any irreparable harm is at best inconsistent and certainly not demonstrated across the entire spectrum of plaintiffs.  Balancing of the equities and the public interest weigh in favor of the defendants as well.  The preliminary injunction that has been in place in these proceedings since 2011 cannot continue any longer.

---

[1] Counsel to this brief represent certain defendants in the actions with civil action docket numbers (1) 11-528M; (2) 12-261M; (3) 12-314M; (4) 12-408M; (5) 12-518M; (6) 12-551M; (7) 12-701; (8) 12-896M; (9) 13-231; (10) 13-249M; (11) 13-302 and (12) 13-320.

## II.   <u>PROCEDURAL POSTURE</u>

By Order dated August 16, 2011, this Court mandated that "all mortgage foreclosure cases (currently filed and to be filed in the future)" "venued in the United States District Court for the District of Rhode Island" were to be "hereby <u>STAYED</u> . . . until further order of the Court" and managed under a "Master Docket (11-mc-88-M-LDA) captioned *In re: Mortgage Foreclosure Cases*."  [ECF No. 1].

By Order dated January 5, 2012, this Court appointed a Special Master to oversee an omnibus mandatory mediation process across this master foreclosure docket and continued the stay "until such time as further order of this Court after a certification by the Special Master that <u>all</u> attempts at negotiating a settlement have failed . . . ."  [ECF No. 156].

An Amended Order issued on March 29, 2012 to clarify the initial Order, providing for a "stay" of all action related to the subject cases occurring outside of the litigation itself, including foreclosure proceedings and eviction matters.  [ECF No. 412].

On appeal of these Orders, the First Circuit issued a decision in *Fryzel v. MERS, Inc.*, ordering "remand with instructions to hold a prompt hearing with reasonable notice on the question whether the injunction should be continued, in belated compliance with Federal Rule of Civil Procedure 65(a)(1)," because on "review [of] what the district court calls the stay order," "[i]ts character as a[ preliminary] injunction is unmistakable."  Nos. 12-1526, 12-1563, 12-1720, 12-1721, 12-1768, 12-1839, 2013 WL 2896794, at *1-2 (1st Cir. June 14, 2013).  Accordingly, the First Circuit stated that "[t]he district court will schedule a hearing at the earliest reasonable date to determine whether the existing injunction . . . should be continued" at which "[t]he burden of demonstrating entitlement to any injunctive relief will rest on the mortgagors as it would have if a timely hearing had been held in compliance with Rule 65."  *Id.* at *5.  A

determination of whether the various plaintiffs have standing to bring their claims "is . . . necessarily implicated in *the mortgagors' burden* to show probable success as a condition of continuing the injunction." *Id.* (emphasis added).

By Order dated June 19, 2013, this Court responded to the First Circuit's decision, requesting briefing on "the requirements for the issuance of an injunction" "pursuant to Fed. R. Civ. P. 65(a)(1)" from both plaintiffs as well as defendants, with a "hearing pursuant to Rule 65(a)(1)" to be held on July 8, 2013 (now July 10, 2013).  [ECF No. 2163].

### III.   ARGUMENT

### A.   SUMMARY OF ARGUMENT

The various plaintiffs are not entitled to continuation of the omnibus preliminary injunction because they fail to carry their burden of proving by a clear showing that they meet the preliminary injunction standard pursuant to Fed. R. Civ. P. 65(a).  A party seeking a preliminary injunction is required to provide verified factual support to meet this burden, and, as a threshold matter, none of the plaintiffs in the actions being defended by the undersigned counsel so much as provide a single affidavit or verified complaint for these cases.  The injunction must be denied for this alone.

Further still, the plaintiffs simply fail to satisfy the familiar preliminary injunction test. They have no likelihood of success on the merits, let alone a substantial or clear likelihood, when their allegations fail to even state a claim for relief.  At a threshold level, borrowers lack standing under Rhode Island law to challenge the assignment of their mortgages.  In addition, (1) a mortgage is not mandated to be held at all times by the same party that holds the note that it secures; (2) the mortgage contracts themselves do not prohibit assignment; (3) there is no support for unsubstantiated assertions of unauthorized signatories to assignments; (4) borrowers cannot

challenge purported lack of consideration for assignments; (5) any generic allegations of fraud fail for lack of particularity; (6) there is no claim that a mortgage obligation is discharged when its note is securitized; (7) a claim that a note obligation is written off upon default and somehow automatically satisfied is not supported by any language in the contractual uniform mortgage instruments at issue and is just specious; (8) borrowers cannot bring claims for purported violations of MERS internal guidelines; and (9) borrowers cannot bring claims for purported violations of investor pooling and servicing agreements to which they are not parties.

In addition, the plaintiffs fail the other elements of the preliminary injunction test. There is no showing of irreparable harm, especially not one that can be demonstrated on a common basis across all borrowers, given that they all face unique circumstances. Some borrowers have already been foreclosed upon, in which case there would be no irreparable harm for an injunction to prevent in the first instance. For other borrowers, the properties at issue were never even their residences at all, in which case an injunction would be improper, since they could be compensated with monetary damages. Likewise, any balancing of the equities is firmly on the side of the defendants, especially in light of the practical consequences of the injunction through mandated mediation through the Special Master in favor of loan modifications. The plaintiffs are being granted an unbargained-for windfall, as case law is clear that borrowers have no inherent right to a loan modification. Lastly, the public interest also counsels in favor of vacating the injunction, because the public has a clear interest in a modern and fluid market for available mortgage credit, which the borrowers here effectively attack system-wide for their own individual purposes. In sum, the preliminary injunction cannot stand.

**B.**   **LEGAL STANDARD UNDER FED. R. CIV. P. 65 FOR ISSUANCE OF A PRELIMINARY INJUNCTION**

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *See, e.g.*, *Brennan v. Wall*, C.A. No. 08-419 S, 2009 WL 3151175, at *2 (D.R.I. Sept. 28, 2009) (emphasis in original) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles A. Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 2948 (2d ed. 1995))).

A court considers four factors to determine the propriety of a preliminary injunction:

(1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of [hardships]; and (4) the effect (if any) of the court's ruling on the public interest.

*Esso Standard Oil Co. v. Monroig-Zayas*, 445 F.3d 13, 17-18 (1st Cir. 2006) (citation omitted). "The party seeking the preliminary injunction bears the burden of establishing that these four factors weigh in its favor." *Id*. at 18 (citation omitted). "The sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed . . . the remaining factors become matters of idle curiosity." *Id.* (citation omitted). As the First Circuit has just reiterated, "the mortgagors' likelihood of success in challenging foreclosure" is "the critical requirement." *Fryzel*, 2013 WL 2896794 at *3.

A party that moves "for a preliminary injunction . . . must present '[e]vidence that goes beyond the unverified allegations of the pleadings. . . .'" *Kelly Servs., Inc. v. Greene*, 535 F.Supp.2d 180, 181 n.1 (D. Me. 2008) (quoting Wright, Miller & Kane § 2949). "This is typically accomplished by submission of affidavits. A verified complaint may be 'treated as the functional equivalent of an affidavit.'" *Id.* (citations omitted).

6

C.   **PLAINTIFFS' INABILITY TO MEET THE PRELIMINARY INJUNCTION STANDARD**

1.   Plaintiffs fail to meet the requirement of verified factual support for issuance of a preliminary injunction.

Federal case law is unequivocal that plaintiffs may not obtain a preliminary injunction on their unverified pleadings alone, and must offer at least affidavit support to meet their substantial burden of proof at this procedural stage.  "To carry its burden, a plaintiff seeking a preliminary injunction *must* offer proof beyond unverified allegations in the pleadings."  *Strahan v. Roughead*, C.A. No. 08-cv-10919-MLW, 2010 WL 4827880, at *10 (D.Mass. Nov. 22, 2010) (emphasis added) (citations omitted).  When "[p]laintiffs have not presented any facts or other supporting materials beyond their pleadings to justify consideration of their request for preliminary injunction relief, [then] sufficient cause for injunction has not been shown."  *Davis v. City of Portsmouth, Va.*, 579 F.Supp. 1205, 1211 (D. Va. 1983).  *See also Town of Burlington v. Dept. of Ed.*, 655 F.2d 428, 433 (1st Cir. 1981) (denying a preliminary injunction when the moving party "exercised its ample opportunity to brief its position" but "at no time did it submit affidavits or make offers of proof on the matter of irreparable injury");  *In re Int'l Home Prods. Inc.*, Bankr. No. 12-02997, Adv. No. 12-00279, 2013 WL 1856456, at *13 (Bankr. D.P.R. Apr. 30, 2013);  *Ill. Migrant Council v. Pilliod*, 398 F.Supp. 882, 891 (N.D. Ill. 1975) ("These allegations are, however, made in an unverified complaint and therefore cannot be considered in support of the motion for preliminary injunction.") (citation omitted).

Here, the plaintiffs have not provided verified complaints or affidavit support otherwise in any of the matters within these consolidated proceedings being defended by the undersigned counsel.  By contrast, the pleadings consist of generalized and speculative allegations about the assignment process within the mortgage market broadly, which as mentioned are generally cut

and pasted from one complaint to the next, simply switching out the names of parties and

signatories as they go (and sometimes incorrectly).  Among other such allegations, for instance,

the plaintiffs routinely simply assert in their unsupported pleadings that their "notes [are] current

or ha[ve] been satisfied by another third party."[2]

Plaintiffs cannot carry their burden either with obscure references to materials from

unrelated actions in other jurisidictions, which do not in any event even seem to make an effort

to provide factual support for any particular case within *these* proceedings.  Counsel for the

majority of the plaintiffs have submitted an enormous filing here, which between the brief itself

and its jumble of exhibits totals over 600 pages.  *See* Plaintiffs' Memorandum in Support of

Preliminary Injunction dated June 27, 2013 ("Babcock Brief") [ECF No. 2172].  Remarkably,

despite the size of this tome, these plaintiffs fail to provide even a scintilla of verified evidence

bothering to come from these actions themselves, instead resting on a hodgepodge of disparate

affidavits and deposition transcripts from varied state and federal proceedings, none even in

Rhode Island.[3]

As is typical, plaintiffs' counsel has tried and failed at this tactic before.  In *Cafua v.*

*MERS*, the Court held that

> Attorney Babcock cannot by way of his investigative efforts and conclusive
> statements . . . establish the necessary personal knowledge and competence to
> testify as required by Rule 56(e) with respect to facts necessary to defeat a motion
> for summary judgment.  In other words, facts alleged to exist by reason of
> documents obtained through discovery *in an unrelated case in a foreign*

---

[2] *See, e.g., Alves v. MERS, Inc.*, 1:13-cv-00302-M-LDA, ECF No. 1, Complaint for Declaratory Judgment and Injunctive Relief, at ¶ 64 (D.R.I. May 2, 2013) [hereinafter *Alves Complaint*].

[3] Defendants also note that one of the complaints makes a strange argument that MERS has made certain "judicial admissions" as to its business model in a case roughly a decade ago in Nebraska.  *See Gordon v. MERS, Inc.*, 1:12-cv-00518-M-LDA, ECF No. 1, Complaint for Declaratory Judgment, Damages and Injunctive Relief pursuant to the Provisions of §9-30-1, et. seq. of the General Laws of the State of Rhode Island, at ¶ 12(g), (i) (D.R.I. July 12, 2012) [hereinafter *Gordon Complaint*].  Putting aside the inapplicability of any such findings, it is basic doctrine that a judicial admission only "precludes the pleader who admitted the fact from challenging it later *during the lawsuit in which it has been admitted.*"  *DiLuglio v. Providence Auto Body, Inc.*, 755 A.2d 757, 767 (R.I. 2000) (emphasis added).

> *jurisdiction*, as well as information which appears on a website, [even] simply by repeating such information in the form of an affidavit, does not rise to the level of personal knowledge of such underlying facts.

No. PC 2009-7407, 2012 WL 2377404, at *6 (R.I. Super. Ct. June 20, 2012) (emphasis added).

Likewise, in *Payette v. MERS*, the Court noted that "Plaintiffs submitted a 216-page deposition of [a signatory to unrelated mortgage assignments] that was taken during the discovery process of a different case, not involving these Plaintiffs or this property, in . . . Florida." No. PC-2009-5875, 2011 WL 3794701, at *7 (R.I. Super. Ct. Aug. 22, 2011)). "The Court [found] Plaintiffs' enigmatic references to [this unrelated signatory] irrelevant, and [held] that Plaintiffs . . . failed to present an issue of fact as to [the assignment] authority [in the case at hand]." *Id.* at *7-8.

The plaintiffs continually assert that they "will introduce evidence" and suggest a need for the defendants to make some evidentiary showing, *see* Babcock Brief at 6, 22, but they are entirely mistaken when what is before the Court is their own request for a preliminary injunction. The burden is on *them* to satisfy the stringent preliminary injunction standard, they have to do so by *verified* evidence, and they have to do it *now*. *See Fryzel*, 2013 WL 2896794 at *5. The plaintiffs' 'showing' is baldly insufficient to satisfy this test, putting aside an overarching lack of merit, and the preliminary injunction must be denied for this reason alone.

    2.    <u>Plaintiffs have no likelihood of success on the merits of their actions, let alone a substantial likelihood.</u>

        a.    A borrower to a mortgage has no standing to challenge the assignment of that mortgage under Rhode Island state law.

The Rhode Island state courts have consistently held that borrowers to mortgages lack standing to challenge the assignment of those mortgages. In *Rutter v. MERS*, the Court reaffirmed this view, stating that "[s]imply, Rhode Island trial courts have held that 'homeowners lack standing to challenge the propriety of mortgage assignments and the effect

those assignments, if any, could have on the underlying obligation.'"  Nos. PC 10-4756, PD 10-4418, 2012 WL 894012, at *7 (R.I. Super. Ct. Mar. 12, 2012) (quoting *Payette*, 2011 WL 3794701 at *6).  "The principle that a party to a contract does not have standing to challenge the contract's subsequent assignment is well established." *Id.* (citation omitted).  "In fact, it is a long-standing principle of Rhode Island law." *Id.* (citing *Brough v. Foley*, 525 A.2d 919, 922 (R.I. 1987));  *see also Cosajay v. MERS, Inc.*, 1:10-cv-00442-M-LDA, ECF No. 21, Report and Recommendation, at 22-24 (D.R.I. June 23, 2011) (Martin, M.J.) (citing cases).  "As an obligor who agreed by the express terms of [a m]ortgage to allow assignment, [a borrower has] no standing to now contest it." *Rutter*, 2012 WL 894012 at *7.  A borrower under Rhode Island law lacks standing to challenge assignment of his or her mortgage because of "the general prohibition on a litigant's [standing] to raise another person's legal rights." *Kriegel v. MERS*, No. PC-2010-7099, 2011 WL 4947398, at *4 (R.I. Super. Ct. Oct. 13, 2011).

In *Brough*, the Rhode Island Supreme Court held that prospective purchasers of property subject to a right of first refusal as delineated in the purchase and sale agreement had no standing to challenge the substance of the assignment of that right to its contemporary holder.  525 A.2d at 921-22.  "The sole right that plaintiffs had in respect to the subject real estate [wa]s set forth in the sales agreement" and "[t]his agreement gave no right to plaintiffs to . . . pass on the effectiveness of the assignment [from the prior holder of the right of first refusal to its] nominee, or the nominee's exercise of that assignment." *Id.* at 921.  With respect to the assignment, the Court held that "[t]he plaintiffs were, in substance, strangers to [that] transaction[] and were given no rights under the contract to challenge the transaction[.]" *Id.* at 922;  *see also Kriegel*, 2011 WL 4947398 at *5 (referring to the "*Brough* rule" as "well-settled" and finding the mortgage assignment process to be factually indistinguishable from the fact pattern in *Brough*).

The recent First Circuit decision of *Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282 (1st Cir. 2013), does not change this analysis, because *Culhane* was not only a case concerning standing under Massachusetts state law, but also as a federal decision, it was not even a dispositive interpretation of the question in Massachusetts. *See, e.g.*, *Barton v. Clancy*, 632 F.3d 9, 17 (1st Cir. 2011) ("A federal court sitting in diversity . . . must apply state substantive law" and in so doing "look[s] to the pronouncements of a state's highest court in order to discern the contours of that state's law.") (citations omitted); *see also Van Hoecke v. First Franklin Fin. Corp.*, No. KC 2009-0743, 2013 WL 1088825, at *4 n.3 (R.I. Super. Ct. Mar. 7, 2013) ("Although [*Culhane*] holds that mortgagors have standing to challenge a mortgage assignment under Massachusetts law, this Court is obligated to apply the common law of Rhode Island."). Even further, in *Culhane*, the First Circuit upheld summary judgment against a borrower whose claims regarding assignment of her mortgage failed as a matter of law, although the Court found that the borrower had standing to assert these limited types of assignment-based claims. 708 F.3d at 291-94. The Court in *Culhane* rejected the borrower's attempted challenges to assignment of the mortgage since it found "MERS validly held the mortgage on the plaintiff's premises at the time of the assignment" so that "the assignment was valid and [the assignee] properly exercised the statutory power of sale as both the holder of the mortgage and the loan servicer for the noteholder." *Id.* at 294 (citations omitted). Even if the various plaintiffs here had standing under Rhode Island law to bring at least certain challenges regarding the assignment of their mortgages, which they do not, their claims still fail on the merits for the reasons as detailed at length *infra*.

        b.      Rhode Island does not require that a mortgage
              accompany the note it secures.

It is settled law in Rhode Island that a mortgage may be held separately from the note that

it secures, and any challenge to the mortgage assignment process on this basis lacks merit.  The

Plaintiffs' first alleged set of challenges to the assignment process all sound in this purported

failing, whether couched as that MERS cannot assign a note that it does not own, that assignment

of a mortgage without its note is somehow a nullity, or that the current holder of the mortgage is

allegedly not the noteholder.[4]  The Rhode Island Supreme Court has recently rejected any such

argument in *Bucci v. Lehman Bros. Bank, FSB*, No. 2010-146-Appeal, 2013 WL 1498655, at *14

(R.I. Apr. 12, 2013).  "As nominee, MERS 'holds bare legal title' to the mortgage and is acting

on behalf of, and at the direction of, the note owner.  On the other hand, the note owner retains

the beneficial interest, or equitable title, in the mortgage." *Id.* (citing *Culhane v. Aurora Loan

Servs. of Neb.*, 708 F.3d 282, 291-94 (1st Cir. 2013)).  "The law contemplates distinctions

between the legal interest in a mortgage and the beneficial interest in the underlying debt.  These

are distinct interests, and they may be held by different parties." *Id.*

> Because the lender retain[s] equitable title to the mortgage and passe[s] that
> equitable title to each of its successors and assigns, including the current owner,
> the mortgage and note have never been separated as plaintiffs contend.  Instead,
> the note and the equitable interest in the mortgage have always remained unified,
> and the mortgage has 'followed the note.'  Furthermore, the holder of legal title to
> the mortgage—MERS [in that case]—always has acted as an agent of the owner
> of the equitable title.  In our opinion, this transactional structure is consistent with
> the law of th[e] state [of Rhode Island].

*Id.* at 15; *see also Casmiro v. MERS*, No. PC 2011-1833, 2012 WL 6093911, at *4 (R.I. Super.

Ct. Dec. 4, 2012) ("§ 34-11-24 . . . provides that an assignment of the mortgage carries with it

'the note and debt thereby secured.'  Accordingly, when drafting § 34-11-24 the legislature did

not intend to render a nullity an assignment of a mortgage interest without simultaneous

---

[4] *See, e.g.*, *Alves Complaint* ¶¶ 17-21.

assignment of the Note.").  There is accordingly no merit to a contention that assignment of a mortgage is invalid because the mortgage and the note are held by nominally distinct parties.[5]

> c.   None of the mortgages at issue by their terms limit exercise of the statutory power of sale to the initial Lender thereto, and they, by contrast, expressly contemplate exercise by the mortgagee, as well as its successors and assigns.

The Rhode Island Supreme Court likewise rejected an argument in the *Bucci* decision that the terms of typical form mortgages limit exercise of the statutory power of sale contained therein to the initial Lender on the mortgage alone.  The plaintiffs' second alleged set of challenges to the assignment process, centered on a premise that any given "mortgage does not state anywhere that the mortgagee or its assigns may invoke the Statutory Power of Sale,"[6] are not only inaccurate, but they have also been flatly rejected by the Court in *Bucci*.

Contrary to the plaintiffs' contentions, *see Kriegel*, 2011 WL 4947398 at *6 ("This allegation stands in direct contrast to the clear and unambiguous language of the Mortgage . . . ."), the mortgages at issue are standard form MERS mortgages, which all contain the following language in the section immediately following the definitions (with emphasis added):

> Borrower does hereby mortgage, grant and convey to MERS, (solely as nominee for Lender *and Lender's successors and assigns*) *and to the successors and assigns of MERS, with Mortgage Covenants upon the Statutory Condition and with the Statutory Power of Sale*, the following described property . . . .

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, *MERS (as nominee for Lender and Lender's successors and assigns) has the right:  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property* . . . .

---

[5] The *Bucci* decision forecloses any of the plaintiffs' challenges to the general structure of the MERS system.  This Court has also just recently rejected any purported claim that all assignments must be recorded pursuant to Section 34-11-1 of the Rhode Island General Laws.  *Town of Johnston v. MERSCORP, Inc.*, C.A. No. 12-452-M, 2013 WL 3146771, at *4 (D.R.I. June 21, 2013) (McConnell, J.) ("Reading the entire statute as a whole shows that certain unrecorded conveyances are in fact valid, thus acknowledging that all conveyances need not be recorded.")
[6] *See, e.g.*, *Alves Complaint* ¶ 47.

13

The Court in *Bucci* has analyzed this exact quoted language and directly rejected these arguments by the plaintiffs that seek to limit exercise of the statutory power of sale to the initial Lender to the mortgages.  2013 WL 1498655 at *8-9.  As the Court held, "[t]hese provisions are clear and leave no room for interpretation.  The plaintiffs explicitly granted the statutory power of sale and the right to foreclose to MERS, and consequently, MERS has the contractual authority to exercise that right."  *Id.* at *9.[7]  Plaintiffs here simply focus on the "later provision in the mortgage that empowers the 'Lender' to invoke the statutory power of sale," but as the Court in *Bucci* stated further, this "subsequent provision [does] not negate the previous language in the [m]ortgage . . . ."  *Id.* (internal quotation marks omitted).  The plaintiffs' arguments on this prong therefore run directly contrary to a binding decision of the Rhode Island Supreme Court.

> d.   Any claims that mortgage assignments were executed by unauthorized signatories are speculative on their face, and certainly insufficient to support the necessary verified and clear showing needed to support a preliminary injunction.

The plaintiffs are unable to support a preliminary injunction with bald allegations, let alone lacking in affidavit support, that the various signatories to the assignments in question were not authorized to execute these documents.  The plaintiffs' third set of challenges to the assignment process rest on naked assertions that, for instance, any given signatory "had no authority to assign" for the party he or she represented, "was a robo-signer," and "attempt[ed] to defraud the general public."[8]  There is no substantiation of any of these claims, and counsel for the plaintiffs have simply cut and pasted the name of the signatory of the mortgage assignment for any given case into identical language in the various complaints.

---

[7] *See also Porter v. First NLC Fin. Servs. LLC*, No. PC 10-2526, 2011 WL 1251246, at *4 (R.I. Super. Ct. Mar. 31, 2011) ("Plaintiff's contention that the 'Rhode Island statute does not authorize MERS to become a statutory mortgagee' is as without merit as it is without citation to legal authority.").

[8] *See, e.g.*, *Alves Complaint* ¶¶ 10-16.

Rhode Island courts have firmly rejected these sorts of unfounded assertions of 'robo-signing.' As the Court held in *Rutter*, the "contention that . . . assignments were executed by an unauthorized signatory is a mere conclusion or legal opinion that is insufficient to create a genuine issue of material fact to defeat [a] Motion for Summary Judgment." 2012 WL 894012 at *8 (citing *Payette*, 2011 WL 3794701 at *7-8 (claim of 'robo-signing' "is as factually unsupported as it is legally untenable")); *see also Cafua*, 2012 WL 2377404 at *4 ("Plaintiffs have presented no evidence sufficient under Rule 56 to demonstrate that the signature of [an assignment signatory] is unauthorized."). If a lack of a verified factual showing is insufficient to create a disputed issue of material fact on summary judgment posture, then it certainly cannot affirmatively satisfy the burden of a clear showing necessary to support a preliminary injunction.

"Moreover, as a matter of law, the assignment is presumptively valid." *Cafua*, 2012 WL 2377404 at *4. The Court in *Cafua* cited *Dolan v. Hughes*, 20 R.I. 513, 40 A. 344 (1898), for the proposition that "the presumption of law is in favor of the validity of the assignment and of the good faith of the transactions thereunder, and they must be proved to have been *fraudulently* made before the court can invalidate the assignment." *Id.* (emphasis added). In addition, "there is no requirement under Rhode Island law that MERS or [a servicer] record a power of attorney or corporate resolution for those individuals executing assignments to act on either entity's behalf." *Casimiro v. MERS*, No. PC 2011-1833, 2012 WL 6093911, at *3 (R.I. Super. Ct. Dec. 4, 2012).

Putting aside the lack of any factual showing, then, it is simply indisputable, even on the inapplicable *Culhane* reading, that borrowers lack standing to assert supposed fraud in the course of execution of these mortgage assignments, which if anything would make the assignments *voidable* at the option of the assignor, not void. A "borrower 'may not assert any ground which

15

may render the assignment voidable . . . for example, [borrower] cannot raise alleged acts of fraud, or question the motive or purpose underlying an assignment.'" *Kriegel*, 2011 WL 4947398 at *5 (citations omitted).  Even the First Circuit in *Culhane*, interpreting Massachusetts state law, "h[e]ld only that a mortgagor has standing to challenge a mortgage assignment *as invalid, ineffective, or void*" and "does *not* have standing to challenge shortcomings in an assignment that render it merely *voidable* at the election of one party but otherwise effective to pass legal title."  708 F.3d at 291 (emphasis added) (citations omitted); *see also Van Hoecke*, 2013 WL 1088825 at *4 n.3 (borrower lacks "standing to assert defects in the execution of a particular mortgage assignment" even under *Culhane*).[9]  Whether for lack of standing or lack of verified factual support, any such 'robo-signing' claim is utterly baseless and ineffective.

    e.  A claim by a borrower to challenge a mortgage assignment for supposed lack of consideration is baseless.

   The plaintiffs' fourth conclusory challenge encompasses a line simply thrown into many of their complaints contending, without factual support, that any given assignment "is void due to failure of consideration."[10]

   Courts have consistently rejected such assertions.  In *Kiah v. Aurora Loan Servs., LLC*, the Court addressed and rejected on a motion to dismiss this same contention that an "assignment of mortgage was without consideration and is therefore void."  Civ. No. 10-40161-FDS, 2011 841282, at *6 (D. Mass. Mar. 4, 2011).  As the Court held, this was "nothing more than sheer speculation, with no specific facts to support it.  Furthermore, and in any event, it is difficult to see why plaintiff has standing to assert such a claim, and how in any event he has suffered a

---

[9] Further, where MERS is a party to the litigation and has not disputed a mortgage assignment from MERS, the plaintiffs cannot challenge that silent ratification.  *See Yuille v. Am. Home Mortg. Servs., Inc.*, 483 Fed. Appx. 132, 135 (6th Cir. 2012) (holding that "any defect in the written assignment of the mortgage would make no difference where both parties to the assignment ratified the assignment by their subsequent conduct in honoring its terms," and the borrower, "as a stranger to the assignment, lacked standing to challenge its validity") (citations omitted).
[10] *See, e.g., Alves Complaint* ¶ 27.

compensable injury if the consideration was not paid."  *Id.*  Likewise, in *Reeves v. ReconTrust Co., N.A.*, the Court granted a motion to dismiss on a claim "for wrongful foreclosure based on failure of consideration" in a mortgage assignment.  846 F.Supp.2d 1149, 1164 (D. Or. 2012).  As the Court held, the "lack of consideration may be a defense available to [the assignor], but is not a basis for plaintiffs, as third parties, to void the transfer."  *Id.* (citation omitted).  Putting aside the lack of any verified factual support for such claims, they therefore lack merit as a matter of law as well.

        f.      Any generic claims of fraud fail for lack of particularity.

Any generic allegations by the plaintiffs sounding in fraud lack merit because they have neither been pled with the requisite degree of particularity, nor do they allege the essential elements of such a claim.  The plaintiffs' fifth set of challenges to the assignment process rest in such unsupported allegations that "[t]he mortgage is void due to fraud," "[t]he note is void due to fraud,"[11] "[t]he assignment was altered after its execution,"[12] or that a certain noteholder "is not the true foreclosing entity" but rather "represents an undisclosed securitized trust."[13]  As the Court held in *Dilibero*:

> [t]his Court does not accept the legal conclusion that plaintiff was defrauded by alleged defects in the instrument of assignment [because n]ot only does Plaintiff fail to allege fraud with sufficient particularity as required by Rule 9 of the . . . Rules of Civil Procedure, but Plaintiff also fails to allege the essential elements of fraud—that an intentional misrepresentation was made by any of the defendants, which misrepresentation she relied on, causing her damage.

2012 WL 4507551 at *4.  In *Juarez v. Select Portfolio Servicing, Inc.*, the First Circuit affirmed dismissal of a claim of fraud by a borrower because "establishing that something *possibly*

---

[11] *See, e.g.*, *Alves Complaint* ¶¶ 80, 83.
[12] *See, e.g.*, *Brackett v. MERS, Inc.*, 1:12-cv-00551-M-LDA, ECF No. 1, Complaint for Declaratory Judgment and Injunctive Relief, at ¶ 39 (D.R.I. July 24, 2012).
[13] *See, e.g.*, *Campanile v. MERS, Inc.*, 1:11-cv-00528-M-LDA, ECF No. 1, Complaint for Declaratory Judgment and Injunctive Relief, at ¶¶ 74-75 (D.R.I. Nov. 8, 2011).

happened is far distant from the threshold particularity requirements that must be pled under

Fed.R.Civ.P. 9(b)."  708 F.3d 269, 280 (1st Cir. 2013) (emphasis in original).  Not only must a

viable claim for fraud plead such factors as scienter and materiality, but it must also "include

specifics about 'the time, place, and content of the alleged false representations.'"  *Id.* at 279-80.

Without any "allegations regarding [a borrower's] reliance on defendants' allegedly false

statements" or "when and what was said . . . in the alleged misrepresentations," a "complaint

[that is] devoid of those specifics" does not state a claim for fraud that has any likelihood of

success on the merits.  *Id.*

> g.   The plaintiffs' assertions that their various mortgages were
> effectively extinguished because they may have been securitized
> are completely baseless.

There is no merit whatsoever to an argument that a mortgage interest becomes

unenforceable when the note that it secures is pooled into a securitized instrument.  The

plaintiffs' sixth alleged set of challenges to the assignment process sound in this contention, as

certain plaintiffs argue that mortgage assignment or enforcement was invalidated for instance

because "[o]nce a loan is securitized, it forever loses its security" or because a note somehow "is

not enforceable when the note is broken into pieces and distributed amongst a number of

shareholders."[14]

Federal courts have uniformly rejected as a matter of law any argument that a party loses

its interest in a loan when it is securitized.  *See Lane v. Vitek Real Estate Indus. Grp.*, 713 F.

Supp. 2d 1092, 1099 (E.D. Cal. 2010)); *Logvinov v. Wells Fargo Bank*, C-11-04772 DMR, 2011

WL 6140995, at *3 (N.D. Cal. Dec. 9, 2011); *Taylor v. CitiMortgage, Inc.,* No. 2:10–CV–505–

TS, 2010 WL 4683881, at *3 (D. Utah Nov. 10, 2010).  It is well-established that securitization

merely creates "'a separate contract, distinct from Plaintiff['s] debt obligations under the

---

[14] *See, e.g.*, *Alves Complaint* ¶¶ 72, 77.

reference credit (i.e. the Note).'" *Taylor*, 2010 WL 4683881 at *3 (quoting *Larota–Florez v. Goldman Sachs Mortg. Co.,* 719 F.Supp.2d 636, 642 (E.D.Va. 2010)).  Securitization of the loan also does not alter or affect the legal beneficiary's standing to enforce the mortgage.  *Reyes v. GMAC Mortg. LLC,* No. 2:11-CV-100 JCM, 2011 WL 1322775, at *2 (D. Nev. Apr. 5, 2011). Federal courts have clearly indicated that "[t]here is no legal authority that the sale or pooling of investment interests in an underlying note can relieve borrowers of their mortgage obligations or extinguish a secured party's rights to foreclose on secured property." *Taylor,* 2010 WL 4683881 at *3 (quoting *Upperman v. Deutsche Bank Nat'l Trust Co.,* No. 1:10–CV–149, 2010 WL 1610414, at *2 (E.D .Va. Apr. 16, 2010)).

As certain Plaintiffs essentially argue here that securitization of their mortgage loan has simply done away with their mortgage, this argument has been squarely rejected by federal courts as baseless.  *See Logvinov*, 2011 WL 6140995 at *3, *Taylor,* 2010 WL 4683881 at *3, *Upperman*, 2010 WL 1610414 at *2.  Securitization neither grants borrowers a reprieve from the terms of their mortgage, nor does it do away with a mortgagee's right to foreclose.  As in *Brassey v. Wash. Mut. Bank*, in which a borrower alleged that the transferring, pooling, and securitization of his note resulted in the defendants' having no authority under the note, claims brought on such a basis are properly dismissed.  No. 2:10-CV-1108-TC, 2011 WL 1457238, at *1 (D. Utah Apr. 14, 2011).  Any claim premised on the securitization process therefore has no likelihood of success on the merits.

> h.   Assertions by plaintiffs that their notes have been written off and are therefore in some way satisfied are spurious.

Although it is difficult to discern given the generally incoherent nature of the bulk of the plaintiffs' complaints, certain of them seem to allege that—somehow—because the plaintiffs have admittedly defaulted on their note obligations, this bizarrely makes their note obligations in

fact satisfied and unenforceable.  This seventh argument appears to contend that "[o]nce a loan goes into default it gets written off," which in turn results in "tax credits [being] given by the IRS," and therefore apparently "the loan is settled and the note satisfied" or "is no longer recognized as an asset or account receivable of" its holder.[15]  The plaintiffs cite no authority per their burden, and it is impossible for them to do so because these fanciful contentions have, as usual, no factual support.  The plaintiffs also appear to simply be confused here.

First, the plaintiffs' 'reasoning' is simply factually flawed because a loan is not written off as soon as a borrower defaults.  The plaintiffs certainly could not point to any such provisions in the mortgages or notes at issue.  On the contrary, courts have explicitly recognized the fact that when a borrower defaults, a mortgagee decides whether to pursue legal action against the borrower in order to recover on the debt, which often naturally entails attempting to recover the mortgage collateral in foreclosure.  *See Am. Title Ins. Co. v. E. W. Fin.*, 16 F.3d 449, 458 (1st Cir. 1994).  This legal process, which can take years, might continue until a lender chooses to "write off the debt as uncollectible" or cost-prohibitive to pursue.  *Id.* (citation omitted).

Second, the plaintiffs improperly interpret the function of a "write-off" under the circumstances.  The plaintiffs appear to confuse a write-off with a charge-off, which is just an accounting term, applied appropriately in a situation in which an asset is lost and can be counted against gross revenues.  Typically, a lender may charge off the difference between what the borrower owed and the amount for which the mortgaged property sold during foreclosure proceedings.  *See, e.g.*, *Falmouth Nat. Bank v. Ticor Title Ins. Co.,* 920 F.2d 1058, 1063 (1st Cir. 1990).  The difference can be partially or wholly charged off as uncollectible, which might depend on the defaulting borrower's ability to repay or a declining property value.  A charge off in no way means that the debt obligation is not owed.  *See, e.g.*, *Milton Bradley Co. v. U.S.*, 146

---

[15] *See, e.g.*, *Alves Complaint* ¶¶ 69, 87-90.

F.2d 541, 542 (1st Cir. 1944) ("The debts which the statute permits to be charged off when ascertained to be worthless are debts *where there is an obligation of the debtor to pay and a right of the creditor to receive and enforce payment*.") (emphasis added) (citation omitted).  Either way, the loss suffered by the owner of the indebtedness is reflected in the operating income of the company, and the company is taxed accordingly.  Any suggestion that a mortgagee is somehow prevented from enforcing its rights under a debt obligation, due to the tax consequences that might eventually result from a loss that it might at some point recognize on that debt, not only has no basis in law but also truly makes no sense.

> i.   The internal guidelines of MERS do not prevent it from being able to assign mortgages for which it is the nominee.

There is no merit to a contention to somehow invalidate a mortgage assignment from MERS, allegedly based upon its own internal standards, as the courts have rejected such an argument as well.  At least one of the complaints presents this eighth line of argument, asserting that an "assignment by MERS [is] void and a nullity" because "MERS cannot . . . by its own rules, regulations and by-laws act on its own behalf." [16]  Putting aside the lack (again) of any verified factual basis that MERS in any given instance was not acting at the direction of the owner of the note, per the mortgage for which MERS was the nominee, the Rhode Island Supreme Court has found this argument lacking.  "MERS's right to foreclose and exercise the statutory power of sale" is not impacted by a question of whether "MERS decided to go forward with a foreclosure sale based on its own regulations . . . ."  *Bucci*, 2013 WL 1498655 at *16 n.17.

In *Payette*, the Court explicitly confronted an argument from plaintiffs "that MERS failed to follow its internal rules for the disposition or transfer of interests, and that these failures result in nullification of the foreclosure."  2011 WL 3794701 at *7.  As the Court noted, the plaintiffs

---

[16] *See Gordon Complaint* ¶ 12(a), (l).

could "not cite any authority that the failure to follow internal guidelines affects a bank,

mortgagee, or servicer's authority to foreclose." *Id.* The Court further held that plaintiffs were

unable "to demonstrate that such a breach, if shown, could comprise a private cause of action to

rescind the foreclosure sale and extinguish the homeowner's repayment obligation." *Id.*

      A contrary determination would run wholly counter to the *Bucci* decision more generally,

which approves of the overarching MERS system, since the plaintiff here appears to simply

challenge any assignment from MERS on its face. *See Bucci*, 2013 WL 1498655 at *8-16.

Furthermore, since plaintiffs lack standing to challenge mortgage assignments under Rhode

Island state law more generally, let alone when an assignment might be deemed at most

voidable, plaintiffs certainly cannot provide any authority for a contention that they have

standing to challenge an entity's assignment based on its own internal rules.

      j.     The plaintiffs may not bring challenges to mortgage assignments
             based upon an asserted breach of mortgage investors' own pooling
             and servicing agreements.

      Any assertion that a mortgage assignment was invalid premised upon an alleged violation

of a pooling and servicing agreement ("PSA") pursuant to which the note for that mortgage was

securitized fails to state a claim as well. The last type of challenge that the plaintiffs bring, found

in at least one of the complaints, is that "not only were the note and mortgage allegedly

transferred outside of the closing date [for the securitized trust], but [they] were not transferred in

the manner as defined by the PSA as to all the loans in the Trust."[17]

      Courts have uniformly rejected such challenges premised specifically on a PSA to which

a borrower is not party, for lack of standing. The First Circuit in *Juarez,* indeed, cited

approvingly to a line of federal district court decisions that "have found no standing on the part

of a mortgagor to challenge the validity of the assignment of their mortgage under a PSA." 708

---

[17] *See Gordon Complaint* ¶ 12(o), (r).

F.3d at 277 (citation omitted).  Just as here, the borrower in *Juarez* alleged that the loan in question was assigned into the trust after a date by which loans were slated to be transferred into the trust.  *See id.*  In one such decision, *Oum v. Wells Fargo NA*, the Court noted that a plaintiff "does not have a legally protected interest in the assignment of the mortgage to bring an action arising under the [Pooling Servicer Agreement]."  842 F. Supp. 2d 407, 413 (D. Mass. 2012) (citation omitted) (brackets in original).

Further, even in *Abate v. Freemont Inv.& Loan*, a Massachusetts trial court decision that echoed the eventual First Circuit decision in *Culhane* in drawing a distinction between void versus voidable assignments, the Court found that a borrower did not have standing to challenge an assignment pursuant to an alleged violation of a PSA.  No. 12 MISC 464855(RBF), 2012 WL 6115613, at *10 (Mass. Land Ct. Dec. 10, 2012).  The Court held that a borrower "may challenge an assignment on the grounds that it is voidable . . . only if he is a party entitled to void the assignment."  *Id.* at *7.  Accordingly, a borrower "has no standing to enforce the terms of [a securitized] Trust" when that borrower "has nowhere alleged [and could not] that he is a party to any [such] agreement[.]"  *Id.* at *10.  A claim that a mortgage "[a]ssignment is void because it 'was made in violation of the terms of the [Trust] which closed on [a certain date] and could not accept loans thereafter'" "is a claim that the [a]ssignment may be voided because it violated the terms of the Trust."  *Id.*  "[T]he only persons entitled to void the [a]ssignment on this basis are the parties to the agreements setting the terms of the Trust."  *Id.*

Therefore, even though under Rhode Island state law borrowers lack standing more generally to contest the assignment of their mortgages, even under a more narrow standard as articulated in *Culhane* and *Abate*, they certainly have no standing premised upon the terms of a pooling and servicing agreement.  Any claim based on such an argument lacks merit.

3.     Plaintiffs can demonstrate no significant risk of irreparable harm.

As already detailed *supra*, the plaintiffs must fail the prong of the test under the preliminary injunction standard requiring irreparable harm, if for no other reason than because they are unable to make the requisite verified factual showing to support this assertion across the entire group.  After all, the required showing is not simply whether irreparable harm is possible, but rather whether it "is *likely* in the absence of an injunction."  *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008) (emphasis in original); *see also Sheldon v. Vilsack*, No. 11-10487, 2011 WL 611891, at *3 (E.D. Mich. Feb. 11, 2011) (denying preliminary injunction of foreclosure when borrower did "not provide evidence that she would not be able to afford alternate housing and [did] not explain why monetary compensation would be inadequate should she be required to relocate").

Different plaintiffs are differently situated, and it is not enough to simply claim that the foreclosure process may cause plaintiffs to be evicted.  The present unique posture of these proceedings is analogous to the class-action context, and "where injunctive relief is sought on a class-wide basis, the moving party must prove that . . . there is reason to believe that the putative class members face the same harm."  *C.f. Mandrigues v. World Savings Inc.*, No. C 07-4497 JF (RS), 2009 WL 160213, at *3 (N.D. Cal. Jan. 20, 2009).  In *Madrigues*, the Court found that while "foreclosure under certain circumstances may constitute irreparable harm . . . whether a particular foreclosure constitutes irreparable harm turns in part on the reasons for foreclosure." *Id.* (citations omitted).  For instance, foreclosure does "not constitute irreparable harm where [a] borrower declined to avail itself of remedies offered by [the] lender" or when a borrower "sought a loan beyond her financial means and expectation of job loss."  *Id.* (citations omitted).  The *Madrigues* Court found that the "record [before it] provide[d] an inadequate basis for granting

the sweeping injunction that Plaintiffs [sought]," especially because the "Plaintiffs [could only] point[] to generalized evidence."  *Id.* at *4.

Certain plaintiffs have already faced foreclosure, which belies any irreparable harm to them which they might assert that an injunction would prevent.  In *Pimentel v. Deutsche Bank Nat. Trust Co.*, the Court denied a preliminary injunction when "the subject property was [already] sold by Defendants . . . at a foreclosure sale" and therefore "[i]n light of this, it appears that the 'irreparable injury' has already occurred, and Plaintiffs have already lost title to their property."  No. 09-CV-2264 JLS (NLS), 2009 WL 3398789, at *3 (S.D. Cal. Oct. 20, 2009). "An eviction from property to which [Plaintiffs] have no legal claim does not amount to irreparable harm," and "[r]egardless of whether foreclosure constitutes an irreparable harm, wrongful eviction from an unowned property can be compensated through monetary relief."  *Id.* (citation omitted); *c.f. In re Medaglia*, 402 B.R. 530, 532 (Bankr. D.R.I. 2009) (citing "gavel rule" under bankruptcy law that "the debtor's right to cure is cut off at the foreclosure sale") (citations omitted).

For other plaintiffs, in fact, not only do they not necessarily even live in the property at issue, but the property was in fact always a rental property, and these plaintiffs might not even live in the state of Rhode Island at all.  In *Sandoval v. Aurora Loan Servs., Inc.*, the Court denied a motion for a preliminary injunction to prevent a foreclosure when "the property at issue [was] not [the plaintiff's] personal residence, but rather one of a number of rental properties that she has acquired, almost all of which [were] in one stage of default or another."  Civ. No. 11-11994-RGS, 2011 WL 5970918, at *1 (D. Mass. Nov. 29, 2011).  "Irreparable harm most often exists where a party has no adequate remedy at law."  *Id.* (citing *Charlesbank Equity Fund II, LP v. Blinds to Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004)).  The Court therefore found that "[p]utting

aside the merits of the [complaint, the plaintiff] allege[d] no harm flowing from a foreclosure on this particular property that could not be compensated by an award of money damages." *Id.*; *c.f. Geneva Ltd. Partners v. Kemp*, 779 F.Supp. 1237, 1241 (N.D. Cal. 1990) (denying request for preliminary injunction to prevent foreclosure because "in this case plaintiffs are faced with the loss of commercial, and not residential, property"); *Medgar Evers Houses Assocs. L.P. v. Carro*, No. 01-CV-6107, 2001 WL 1456190, at *5 (E.D.N.Y. Nov. 6, 2001) (same).

Even more generally, the plaintiffs do not face irreparable harm when, as is common among the plaintiffs here, they have been in default on their mortgage loans for several years. As such, their continual failure to meet these debt obligations evinces the undeniable likelihood that they will have caused their own harm by having taken on an unsustainable debt load for their own financial capability. It is settled law that "[a] preliminary injunction movant does not satisfy the irreparable harm criterion when the alleged harm is self-inflicted." *FIBA Leasing Co. v. Airdyne Inds.*, 826 F.Supp. 38, 39 (D. Mass. 1993) (citing *San Francisco Real Estate v. Real Estate Inv. Trust of Am.*, 692 F.2d 814, 818 (1st Cir. 1982)). In *Livonia Props. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, the Sixth Circuit upheld denial of a preliminary injunction preventing foreclosure when "the alleged harms [the plaintiff] would suffer from foreclosure were the direct result of [the plaintiff's] default on the loan [since] self-inflicted harm is not the type that injunctions are meant to prevent." 399 Fed.Appx. 97, 104 (6th Cir. 2010).

The plaintiffs all have very different individual cases, and they are simply unable to provide individualized evidence of irreparable harm that would justify a preliminary injunction across the board. For this reason as well, the preliminary injunction cannot be maintained.

4.    The balance of the equities in these actions favors the defendants.

A preliminary injunction is further disfavored here when balancing the respective

hardships, especially in light of the overall tenor of the plaintiffs' allegations, which not only

generally fail to even state a claim on the merits, but are also essentially frivolous.  The equities

strongly support the defendants in this action, which are businesses engaging in the ordinary

course of residential lending, providing a service and simply looking to realize on the collateral

which nobody could dispute secured the loans that they provided.  They are now confronted with

these plaintiffs, who have now lived in these properties rent-free for years, while the ordinary

foreclosure process that anyone would expect as a consequence of defaulting on a mortgage loan

has been blocked essentially state-wide by judicial fiat.

The hardships on the other side of the ledger are, as noted, at best inconsistent.  Because

plaintiffs have essentially filed cookie-cutter complaints, there really is no telling what the

circumstances of the plaintiffs really are.  In any event, plaintiffs have not provided verified

evidence to shift the balance in their favor.  A case from the Rhode Island Superior Court, *Royal

Props. Assocs. v. R.I. Hospital Trust Nat. Bank*, provides a salient contrast, because in that

decision, the Court granted a preliminary injunction to prevent foreclosure after engaging in a

balancing test,  as the borrower was only "in default of one monthly mortgage payment [and]

continued to satisfy its monthly mortgage obligation since the inception of this cause of action."

PC91-5006, 1992 WL 813489, at *2 (R.I. Super. Ct. Jan. 31, 1992).

Such a balancing of the equities tips especially in favor of the defendants in light of the

fact that the plaintiffs have in practice received an unbargained-for windfall over the course of

the injunction to this point.  *See Bucci*, 2013 WL 1498655 at *15 ("Courts should be vigorous in

[preventing] a windfall for the mortgagor and the frustration of [the note owner's] expectation of

27

security.") (quoting Restatement (Third) Property (Mortgages) § 5.4, cmt. e. at 385-86 (1997)).

A borrower is contractually obligated to repay his or her bargained-for debt, and he or she has no

entitlement to a loan modification as a matter of course, whether under the HAMP program (due

to a lack of private right of action or third-party beneficiary status) or pursuant to a covenant of

good faith and fair dealing. *See Nash v. GMAC Mortg., LLC*, No. CA 10-493S, 2011 WL

2470645, at *6-10 (D.R.I. May 18, 2011) (citing *Woods Corporate Assocs. v. Signet Star

Holdings, Inc.*, 910 F.Supp. 1019, 1034 (D.N.J. 1995) ("By refusing to execute an agreement to

renegotiate the loan, [the defendant] did nothing more than exercise its contractual rights to

protect its interest in the security. . . .  [The defendant] had no obligation to a loan modification .

. . .")).  But loan modifications are precisely what the Special Master, imposed pursuant to this

injunction, has been pushing for.  The injunction has therefore placed defendants in the position

of being driven to provide windfall benefits in exchange for the settlement of truly meritless

claims.  It must be vacated for this reason as well.

              5.    <u>The public interest requires an end to the preliminary injunction.</u>

Lastly, the public interest in a functioning and liquid residential mortgage credit market

weighs in favor of the defendants here against the preliminary injunction.  The plaintiffs'

baseless claims, rejected so often in the Rhode Island state courts, are effectively a crusade

against the very modern mortgage assignment system itself, including the operation of MERS.

The Court in *Bucci* has expressly recognized the public benefit in facilitating this market, as

"[t]he MERS® System was developed to allow for more efficient transfers of [residential loan]

interests in the primary and secondary mortgage markets," so that "loans can be transferred more

quickly and economically."  2013 WL 1498655 at *1-2.  Plaintiffs' attack on this system, which

serves the public by facilitating access to mortgage credit in providing a more liquid market, has

by this injunction engendered chaos in the mortgage business of the entire state of Rhode Island. The public suffers as the costs generated by this uncertainty are passed onto them.  When a lender cannot even count on being able to obtain basic collateral for a loan, this credit market is thrown into disarray.  It is only individuals who are benefiting here, and these individuals have defaulted on their loans, typically for a span of years.  There is no public interest in the continuation of the preliminary injunction, and it may not persist.

## IV.   CONCLUSION

WHEREFORE, the defendants here request that the preliminary injunction in place in the above-captioned consolidated proceedings be vacated, and that this Court grant such other and further relief as is proper and just.

Respectfully submitted,

DEFENDANTS
NATIONSTAR MORTGAGE, LLC,
FEDERAL HOME LOAN MORTGAGE
CORPORATION, and THE BANK OF NEW
YORK MELLON, as TRUSTEE for FIRST
HORIZON MORTGAGE PASS-THROUGH
CERTIFICATES SERIES FH06-FA1, as
TRUSTEE for the HOLDERS OF THE
CERTIFICATES, FIRST HORIZON
MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES FHAMS 2006-
AA8, and as INDENTURE TRUSTEE, on
behalf of the CSMC TRUST 2010-16
MORTGAGE-BACKED NOTES AND
CERTIFICATES SERIES 2010-16.
By their attorneys,

/s/  Patricia A. Buckley_____
Patricia A. Buckley, Esq. (RI Bar ID No. 2987)
Bengtson & Jennings, LLP
40 Westminster St., Suite 300
Providence, RI  02903
Phone: (401) 331-7272
Fax:    (401) 331-4404
E-mail:  pbuckley@benjestlaw.com

/s/  James B. Fox_____
James B. Fox, Esq.
Meredith A. Swisher, Esq.
Admitted *Pro Hac Vice*
Bernkopf Goodman LLP
Two Seaport Lane, 9th Floor
Boston, MA  02210
Phone: (617) 790-3000
Fax:    (617) 790-3300
E-mail:  jfox@bg-llp.com
          mswisher@bg-llp.com

<u>CERTIFICATION</u>

I hereby certify that in compliance with the Order of this Court dated June 19, 2013 [ECF No. 2163], this submission has been filed on this 2nd day of July, 2013, by e-mail to the Docket Clerk, Barbara Barletta, at Barbara_Barletta@rid.uscourts.gov, for further docketing and service by the same.

*/s/ Patricia A. Buckley*
PATRICIA A. BUCKLEY

574921 v5/38755/3