UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                            :
In re: Mortgage Foreclosure Cases           :    Misc. No.  11-mc-88
                                            :
_____ :

**DEFENDANT, PROSPECT MORTGAGE, LLC.'S, BRIEF OBJECTING TO THE CONTINUATION THE ISSUANCE OF THE STAY OR IMPOSITION OF AN INJUNCTION**

Prospect Mortgage, LLC ("Prospect") is a defendant in a single case on this docket. The case was filed by George Babcock, Esq. on behalf of Plaintiff, Patti Gallagher.  It is Civil Action Number 12-493. According to Plaintiff's Complaint, Patti Gallagher is a resident of the State of Rhode Island and she owns or owned property at 44 Rainbow Road, Glocester, RI. (See para. 1 of the attached Complaint, as **Exhibit A**.)  Plaintiff posits in her Complaint a variety of seemingly technical irregularities in an effort to apparently seek a declaration nullifying the attempt by MERS and Bank of America to invoke the power of sale and/or to foreclose. (See paras. 39-50 of **Exhibit A**.) However, nowhere in the Plaintiff's Complaint does she indicate that foreclosure has occurred or is even imminent.  Moreover, nowhere in her Complaint does she indicate that the Defendant Prospect undertook any action that was improper or which requires redress.  Although there appear to be allegations against MERS and Bank of America asserted in the Complaint, there is no assertion leveling any specific allegations against Prospect.  Prospect was a pass-through defendant.  Plaintiff's counsel simply filed a boiler plate Complaint used hundreds of times, without any consideration to the fact that there is no allegation against Prospect.

Accepting as true the well-pleaded factual allegations in the Complaint, the Court should not allow an injunction to enter specifically against Prospect simply based on the fact that the Complaint does not contain any colorable allegation against it. In addition, as an overarching proposition, the imposition of an injunction in this consolidated litigation is misplaced. As set forth below, Plaintiff expressly granted the mortgage interest to MERS and the successors and assigns of MERS. Plaintiff also agreed in her mortgage that MERS and its successors and assigns would serve as the mortgagee and nominee on behalf of the lender and subsequent successors and assigns of the lender. Plaintiff further agreed in the Mortgage that, as mortgagee and nominee of the lender, MERS was empowered to take any actions that the lender could take—including assigning interests in the mortgage and taking actions needed to foreclose when the borrower defaults.

Any injunction imposed on the parties should be lifted and the Defendants should have the opportunity to seek summary dismissal. MERS has both the contractual and statutory authority to foreclose on the property as the mortgagee and the nominee of the lender, as well as the lender's successors and assigns.

### A. **PERTINENT BACKGROUND**

Plaintiff alleges that on October 23, 2009, she executed a mortgage for her home in Glocester, Rhode Island which named MERS as the mortgagee, acting solely as the nominee for the lender and the lender's successors and assigns. (See para. 8 of the attached Complaint as **Exhibit A**.) According to the Plaintiff's Complaint, the lender was Prospect Mortgage, LLC, (See para. 9 of the Complaint as **Exhibit A**.) Plaintiff claims that MERS allegedly attempted to assign the mortgage to defendant, Bank of America. (See para. 10 of the Complaint as **Exhibit A.**) Plaintiff alleges that the signator for the assignment from MERS to Bank of

2

America was Talisha T. Wallace, an individual Plaintiff contested was not authorized to sign. (See paragraphs 10 of the Complaint as **Exhibit A.**) Plaintiff also alleges in a general manner that the mortgage assignment was void or improper pursuant to R.I.G.L. §34-11-1, §34-11-24 and §34-11-22. (See paragraphs 25, 26, and 46, of the attached Complaint as **Exhibit A.**) However, the Plaintiff fails to explain in what manner each of these specific sections of the statute were violated, other than to indicate that neither MERS nor Bank of America has the standing to foreclose. (See paragraphs 48-49 of the Complaint as **Exhibit A.**) As a matter of law, Plaintiffs' allegations against all Defendants, including Prospect, should be dismissed.

More specifically, with respect to Prospect, because Plaintiff alleges in her Complaint that Prospect is identified as "the Lender" (see para. 9 of **Exhibit A**) but then makes no allegation as to any redressable action against it, Prospect should also be dismissed because it no longer has any relationship to the mortgage or loan.

### B. STANDARD OF REVIEW

This Court has directed the parties to brief the issue "of whether the Plaintiffs have established" the four necessary elements of injunctive relief. Plaintiffs' counsel has written that this should be reviewed under an "abuse of discretion" standard. Although an appellate court, reviewing whether an injunction was correctly imposed, is to do so while applying an abuse of discretion standard, this Court is not and cannot serve as an appellate court assessing its own order. Moreover, the Court has never had a hearing on a preliminary injunction with regard to this docket. Thus, the Court must assess the four elements of injunctive relief on their face and not under a heightened standard of review. The Plaintiffs have the burden of proof to establish by a clear showing that the four factors considered for injunctive relief weigh in their favor.

As the Court set out in its Order, in order for the Plaintiffs to have a right to preliminary injunction, they must establish the following elements: 1) they have a substantial likelihood of success on the merits; 2) there exists, absent the injunction, a significant risk of irreparable harm; 3) the balance of hardships tilts in favor of the plaintiff; and 4) granting the injunction will not negatively affect the public interest. *TEC Eng'g Corp. v. Budget Molders Supply, Inc.,* 82 F.3d 542, 544 (1st Cir. 1996). Although the Plaintiffs, as a group, will have a difficult time establishing elements 2-4, as will be addressed later in this Brief, they have no ability to establish the first essential element. As such, the "stay" or "injunction" must be lifted.

### C. ARGUMENT

**1. PLAINTIFFS DO NOT HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS.**

Collectively, Plaintiffs raise a variety of arguments to claim their foreclosures are somehow improper, but they ignore the terms of the mortgages they signed, and their allegations fail to state any cognizable claims for relief.

On April 12, 2013, the Rhode Island Supreme Court ruled on *Bucci v. Lehman Bros. Bank, FSB*, 2013 WL 1498655 (R.I. 2013). *Bucci* was one of the original cases brought by Plaintiffs' counsel in this familiar milieu. The Rhode Island Supreme Court outlined the essential issue it was required to address in *Bucci* as follows:

> In this case, we are asked to determine whether a nominee of a mortgage lender, who holds only legal title to the mortgage, but who is not the holder of the accompanying promissory note, may exercise the statutory power of sale and foreclose on the mortgage.

*Id.* at 8.

The nominee was MERS, as is the case in the vast majority of cases on this Court's Mortgage Foreclosure Docket. The brief factual predicate framing the *Bucci* decision is also

4

strikingly similar to the facts that frame most of the cases on this Court's consolidated docket. The *Bucci* factual predicate consists of the following:

> On May 15, 2007, Anthony Bucci borrowed $249,900 from Lehman Brothers Bank, FSB (Lehman Brothers) to finance the purchase of a home, and he signed an adjustable rate note (note) that evidenced the debt. On that same date, he and his wife, Stephanie Bucci (collectively, the Buccis or plaintiffs) executed a mortgage on the property that secured the loan. Like many loans in the modern era of lending, even though the note was made payable to the lender—in this case Lehman Brothers—the mortgage was granted to Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for the lender and the lender's successors and assigns. In October 2008, the plaintiffs ceased making loan payments, thereby defaulting on the note. Sometime thereafter, MERS initiated foreclosure proceedings. A foreclosure sale was scheduled, but the day before it was to take place, the plaintiffs commenced an action seeking a declaratory judgment and injunctive relief, in which they sought to prevent MERS from exercising the power of sale contained in the mortgage. The trial justice denied the plaintiffs' request, and judgment was entered on behalf of the defendants on September 21, 2009. The plaintiffs timely appealed to this Court. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

*Id.* at 8.

In *Bucci,* the R.I. Supreme Court affirmed the decision made by Judge Silverstein several years earlier, which established that mortgagors such as the Plaintiffs in this case, waive the assertion that the nominee was not an agent of the noteholder. In *Bucci*, just like all the cases at hand, the Plaintiffs sought declaratory judgment and injunctive relief against MERS and other defendants. *Id.* at 1. Plaintiffs borrowed money to purchase a home. *Id.* at 1. Plaintiffs executed a note to Lehman Bros. Bank and executed a mortgage to cover the purchased real estate. *Id.* The mortgage indicated that MERS was acting as a nominee for the lender and the lender's successors and assigns. *Id.* MERS was the mortgagee under the security instrument. *Id.* As a result, the Court found that MERS had the authority to foreclose. *Id.*

Among the holdings made in the *Bucci* case, the Court concluded that MERS, as the nominee, had the contractual authority to initiate foreclosure; that MERS was a mortgagee within

5

the meaning of the statutory scheme and; that the mortgagors (homeowners) waived the assertion that MERS, as nominee was not the agent of the noteholder. *Id.* These are all the same issues that Plaintiffs have raised in the cases on this Court's docket this case. The decision by the R.I. Supreme Court in *Bucci* alone requires that the injunction be lifted.

Plaintiffs' counsel, Todd Dion, Esq., has attempted to distinguish the *Bucci* decision by asserting that the affidavit of Cheryl Marchant, VP of Aurora Services, which was uncontested, "closed the loop and connected a series of missing dots; therefore allowing MERS to foreclose in a situation where many questions were unanswered." (Brief of Todd Dion, Esq. at p. 4.) However, in *Bucci*, the R.I. Supreme Court addressed this specific issue in footnote 12 as follows:

> Even if plaintiffs had not waived this argument [that the Marchant affidavit did not establish agency on the note and it was a question of fact], we nonetheless believe that it lacks merit because of MERSCORP's rules of membership to which each member has agreed. Indeed, other courts have held that a contractual relationship exists between MERS and its members, which allows MERS to act on their behalf. See, e.g., *Taylor v. Deutsche Bank National Trust Co.*, 44 So.3d 618, 620 (Fla.Dist.Ct.App.2010) ("The participants agree to appoint MERS to act as their common agent on all mortgages registered by them in the MERS system."); *MERSCORP, Inc. v. Romaine*, 8 N.Y.3d 90, 828 N.Y.S.2d 266, 861 N.E.2d 81, 83 (N.Y.2006) ("Members contractually agree to appoint MERS to act as their common agent on all mortgages they register in the MERS system."). Because plaintiffs have conceded that an agency relationship existed when they agreed to that fact in the Marchant affidavit, and because we believe that the current beneficial owner of the note contractually agreed to allow MERS to foreclose on its behalf, we need not address plaintiffs other arguments regarding MERS's contractual ability to be the nominee of the current owner of the note.

*Bucci*, p. *16, Footnote 12.

The rationale as to why there is no disconnection between the note and the mortgage was previously set forth in *Jimenez v. People's Choice Home Loan, Inc.,* 2012 WL 2873807 (Trial Order), July 10, 2012. In *Jimenez*, Judge Rubine came to the following conclusion:

Plaintiff alleges that the Note was bifurcated the day he signed it and it never reconnected with the Mortgage. (Pl.'s Mem. in Support of Obj. to Def.'s Mot. to Dismiss at 6.) As evidence of this bifurcation of the Note and Mortgage, Plaintiff asserts that People's never negotiated the Note to any other party. *Id.* The Note is not a part of the record. Neither party has introduced evidence purporting to prove the identity of the current note-holder. Regardless of who or what entity currently holds the Note, MERS is designated the nominee for whatever financial entity holds the beneficial interest of the Note based upon the broad language contained in the Mortgage Agreement. *Porter v. First NLC Financial Services*, No. PC-2010-2526, 2011 WL 1252146 at * 8 (R.I. Super. March 31, 2011) (Rubine, J.). Moreover, under § 34-11-24, "an assignment of mortgage ... shall ... have the force and effect of granting, bargaining, transferring and making over to the assignee, ... the mortgage deed with the note and debt thereby secured." *Kriegel*, 2011 WL 4947398 at * 7. Thus, upon MERS assignment of the Mortgage interest to LaSalle, MERS was acting as nominee of People's and People's successors and assigns, and LaSalle became the assignee of the Mortgage together with the Note and debt thereby secured, regardless of the identity of the note-holder. Also, MERS, as well as its successors and assigns, acted as nominee of the lender, note-holder, even without physical possession of the Note, which was the instrument giving rise to the debt secured by the Mortgage. It is well established by this Court's earlier precedent that the designation of MERS as mortgagee of the Mortgage to MERS does not fatally disconnect the Note and Mortgage. See *Payette*, 2011 WL 3794701; see also Kriegel, 2011 WL 4947398; Porter, 2011 WL 1252146; *Bucci v. Lehman Brothers Bank, FSB*, No. PC-2009-3888, 2009 WL 3328373 (R.I. Super. August 25, 2009) (Silverstein, J.). Accordingly, this Court finds Plaintiff's argument that the mortgagee and lender must be the same party under Rhode Island statutory law fails to state a claim for relief.

The RI Supreme Court is not alone in its belief that MERS was the agent on the note, as well as the mortgage. The view taken by the R.I. Supreme Court in *Bucci* has been shared by a wide variety of federal courts, too. In *Cervantes v. Countrywide Home Loans, Inc., et al.,* No. 09-17364, 2011 U.S. App. Lexis 18569, the Ninth Circuit Court of Appeals dismissed all claims against MERS with prejudice and without leave to amend, in a putative class action case. The Court of Appeals explicitly found that the borrowers were not injured or harmed by any action taken by MERS, and that the disclosure of MERS' role as mortgagee in the standard deed of trust document – which was signed by the borrowers – was a contract. *Id.* at 7.

7

In *Cervantes*, the Appeals Court rejected the plaintiffs' allegation that use of the MERS System was a conspiracy to commit fraud that led to predatory lending and the inability to track changes in lenders when mortgages are securitized and sold. *Id.* at 4-5. In the opinion written by Judge Consuelo M. Callahan, the Court said, "[T]he deed states that the loan or a partial interest in it 'can be sold one or more times without prior notice to Borrower…'" *Id.* at 4. The Court also noted that the deed indicated that MERS has "the right to foreclose and sell the property." *Id.* Judge Callahan wrote, "By signing the deeds of trust, the plaintiffs agreed to the terms and were on notice of the contents… . In light of the explicit terms of the standard deed signed by Cervantes, it does not appear that the plaintiffs were misinformed about MERS's role in their home loans." *Id.* at 4-5.

The Appeals Court further found that "[T]he plaintiffs have failed to show that the designation of MERS as a beneficiary caused them any injury by, for example, affecting the terms of their loans, ability to repay the loans, or their obligations as borrowers," and, there was no "explanation as to how the operation of the MERS system actually stymied their efforts to identify and contact the relevant party to modify their loans." *Id.* at 4.

As will be highlighted below, this ruling supports the well established legal principle that MERS, as mortgagee, is an agent for the lender and when MERS holds legal title to the lien, the mortgage follows the note. *Id.* at 2-3.

> a. <u>MERS is a Legitimate, Judicially Cognizable Administrative System Within the Residential Mortgage Industry.</u>

In *Bucci*, the Rhode Island Supreme Court confirmed that MERS is a legitimate, judicially cognizable administrative system within the residential mortgage industry. *Id.* at 1-2, 8-12. Although the Plaintiff intimates in her subject Complaint against Prospect that there is something inherently afoul simply because MERS was the mortgagee and nominee for the

8

lender, this notion has been fully dispelled. The Rhode Island Supreme Court's decision in *Bucci* makes it crystal clear that MERS had the authority to take the cause of action it chose. *Id.* at 10-16. Moreover, as noted above, other courts across the country have acknowledged MERS's legitimate role in the lending industry. *See, e.g., MERSCORP, Inc. v. Romaine,* 8 N.Y.3d 90, 828 N.Y.S.2d 266, 861 N.E.2d 81, 83 (N.Y. 2006); *Jackson v. Mortgage Elec. Registration Sys., Inc.,* Civ. No. 08-305 (JNE/JJG), 2008 WL 413293, at *2 (D.Minn. Feb.13, 2008); *In re Huggins,* 357 B.R. 180, 183 (Bankr.D.Mass.2006); *Mortgage Elec. Registration Sys., Inc. v. Nebraska Dep't of Banking,* 270 Neb. 529, 704 N.W.2d 784, 785-88 (Neb. 2005).

b. <u>MERS has the Contractual Authority to Foreclose.</u>

Just like in other cases, Plaintiff has asserted that the language of the mortgage does not authorize MERS to foreclose by power of sale. Specifically, Plaintiffs contend that paragraph twenty-two of the Mortgage, which states that "Lender ... may invoke the STATUTORY POWER OF SALE," limits the invocation of the Statutory Power of Sale. However, the language contained on Page 1 of 6 of the mortgage specifically grants MERS the Statutory Power of Sale.

In determining whether the mortgage authorizes MERS to foreclose through use of the Statutory Power of Sale, the Rhode Island Supreme Court concluded in *Bucci* that MERS does have the contractual authority to foreclose. *Id.* at 16. This makes perfect sense based upon the following rules of contract interpretation: "If the court finds that the terms of an agreement are clear and unambiguous, the task of judicial construction is at an end and the agreement must be applied as written." *McBurney v. Teixeira,* 875 A.2d 439, 443 (R.I. 2005). "[A]n agreement is ambiguous only when it is reasonably and clearly susceptible to more than one interpretation." *Id.* "In determining whether an agreement is clear and unambiguous, the document must be

viewed in its entirety and its language be given its plain, ordinary and usual meaning." *Id.* Courts generally eschew a hyper-technical interpretation of a contract term in favor of a more common place construction. *City of E. Providence v. United Steel Workers of Am., Local 15509,* 925 A.2d 246, 252-53 (R.I.2007).

        c. <u>MERS has the Statutory Authority to Foreclose.</u>

By citing to purported violations of R.I.G.L. §34-11-1, §34-11-24 and §34-11-22, the Plaintiff also asserts that Rhode Island statutory law implicitly prohibits MERS from invoking the Statutory Power of Sale. However, Rhode Island statutory law does not prohibit a mortgagee in a nominee capacity from invoking the Statutory Power of Sale. This, too, was made absolutely clear by the Rhode Island Supreme Court's decision in *Bucci*.

After undertaking the analysis that would be utilized in all similarly situated disputes, the R.I. Supreme Court concluded that MERS had the contractual authority to foreclose and that the statutory scheme which governs mortgagees did not require the mortgagee and note holder to be the same entity. *Id.* at 14 and 19.

The underlying assumption in virtually all of Plaintiffs' cases is that the nominee does not have the authority to foreclose or act in the way that is did. However, because the statute has been construed not to require the mortgagee and the note holder to be the same entity, the contractual rights allow for foreclosure. Thus, the Plaintiffs do not have a substantial likelihood of success on the merits and, as such, the injunction should be lifted.

    **2. PLAINTIFFS CANNOT ESTABLISH, ABSENT THE INJUNCTION, A SIGNIFICANT RISK OF IRREPARABLE HARM.**

In all of the cases on this Court's docket, the Plaintiffs have failed to make the mortgage payment they contractually agreed that they would make. The length of time of non-payment varies in each case. However, there does not appear to be a case in which the Plaintiff is

claiming that he/she made all of the required loan payments. If the assessment of this second prong is predicated solely on whether some plaintiffs may have their home foreclosed upon then, by virtue of that measuring stick alone, there is risk of harm. Whether or not this harm is the direct result of the Plaintiffs' own doing and whether it can be remedied monetarily are different questions, however, which must be considered.

Potential foreclosure is a response to a circumstance in which the mortgagor has not made loan payments for a significant amount of time. The mortgagee and/or lender is owed an obligation that remains unfulfilled. If irreparable harm does occur – and that assumes this Court concludes that foreclosure is irreparable harm, which is not a given – the harm is known to the mortgagor at the outset if the loan payments are not made. It is the essence of the loan agreement. It may be some level of harm, but it is not irreparable and it is what the Plaintiff had every reason to expect.

### 3. THE BALANCE IN HARDSHIPS DOES NOT TILT IN FAVOR OF THE PLAINTIFFS.

In each case on the Mortgage Foreclosure Docket the Plaintiffs are either in danger of foreclosure or foreclosure has already occurred. Foreclosure is undeniably a hardship. It is financially, mentally and emotionally draining. It is not a circumstance anyone seeks out. However, the question is not whether this circumstance is a hardship but how that hardship is balanced against the rights of the Defendants. In most cases, the Defendant either loaned money to allow the Plaintiff to purchase his/her house or is servicing the loan that the Plaintiff received.[1] In each case, the amount that the Plaintiff agreed to pay has not been paid. In some cases payment is overdue by several years. The hardship of non-payment was not caused by the

---

[1] However, as pointed out, in the *Gallagher v. Prospect Mortgage, LLC* case, Prospect neither services the loan nor is the lender. Prospect, like other Defendants such as SunTrust Mortgage, are simply caught in a vortex from which they are not allowed to seek an escape. They cannot modify the loan, nor are even invited to the negotiation with the Special Master. They have no authority.

Defendants. There is no allegation that any Defendant prevented any Plaintiff from making a mortgage payment when it was due.

Balancing the equities and/or hardship in these consolidated matters requires a review of the contractual rights of the parties. Each of the Plaintiffs executed a Mortgage Agreement which expressly set forth the terms of payments required. In each case, those terms were not met. In each case, the Defendants proceeded to take the action afforded it by virtue of the contractual relationship. In each case, the Plaintiff has pointed out what he/she believed to be technical anomalies (none of which are meritorious) in the way that the mortgage and note were conveyed as the reason the Defendant did not have the right to commence foreclosure. In some cases, the Defendant has not even commenced foreclosure but the Plaintiff apparently filed suit preemptively.

Although mindful that foreclosure is a last resort, it is the only resort the Defendants have when the mortgagor has not made payment and the attempts at modification have proven fruitless. If the mortgagee cannot protect its interest by foreclosing in order to sell the home to a mortgagor who can make payments, then the very underpinnings of home ownership is at risk.

As unsympathetic as it might appear to financially strained individuals, the essence of a system based upon self-determination and freedom of contract requires that the equities in this case favor the Defendants/Mortgagees.

### 4. GRANTING THE INJUNCTION WILL NEGATIVELY AFFECT THE PUBLIC INTEREST

The Free Market economy provides that individuals can enter into private agreements for goods and services as they see fit based on their own financial circumstances. The determination to become a home owner requires a critical assessment of one's own financial circumstances. It requires the recognition of long term financial/contractual obligations.

12

Making homes available to potential owners seems like a noble proposition, but the fact is that there are many people who do not have the financial stability and/or consistency to warrant the long term financial obligation of home ownership. Moreover, people often agree to loan payments that are far in excess of what they are capable of regularly making.

In the cases at bar, and in particular in the formation of the Mortgage Foreclosure Docket, the injunction has served as a holding station for mortgagors who are unable to pay their mortgage. The exponential growth of the docket is the clearest evidence that the injunction has an adverse impact on the public interest. An attempt by a mortgagee in Rhode Island to exercise its right of foreclosure is met by a filing of a federal court complaint which cannot be answered by the Defendant. Regardless of the merits of the Plaintiff/Mortgagors' circumstances, the Mortgagee's hands are tied at least until the matter gets reached for mediation by the Special Master. In too many cases, the Defendant is neither the servicer nor the lender and therefore has no power or authority to even affect a modified loan. However, the Defendant must still be confined to a purgatory in which it must pay monthly legal bills and monthly Special Master bills for the privilege of being unjustifiably sued via a Complaint that does not even articulate a viable cause of action against it. When an individual or a corporate entity is stripped of all of its rights, prevented from defending itself, and deprived of its contractual remedies, this cannot be viewed as serving the public interest.

### D.     CONCLUSION

For the foregoing reasons, this Court should lift the injunction (or stay) imposed in this litigation against all Defendants. In the alternative, if this Court is not sufficiently persuaded to the lift the injunction against all Defendants, it should be lifted against Prospect Mortgage, LLC, as it is not a cognizable defendant in this action.

        For the Defendant,
        Prospect Mortgage, LLC
        By its attorneys,


        */s/ Todd D. White*
        TODD D. WHITE (#5943)
        ADLER POLLOCK & SHEEHAN P.C.
        One Citizens Plaza, 8th Floor
        Providence, RI  02903-1345
        Tel:    401-274-7200
        Fax:   401-351-4607


## CERTIFICATION

I hereby certify that a true and accurate copy of the within was conveyed via the ECF system to the attorneys of record on this 3rd day of July, 2013.


        */s/ Todd D. White*

*649446.1*