UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| In re: Mortgage Foreclosure Cases | ) ) ) ) ) ) | Misc. No. 11-mc-88-M-LDA |

## DEFENDANTS' RESPONSE TO ORDER CONCERNING INJUNCTIVE RELIEF[1]

On June 19, 2013, this Court requested the parties to brief the question of whether the Court should order continued injunctive relief from foreclosures and evictions in light of the First Circuit's June 14, 2013 ruling. Rather than identify admissible evidence that demonstrates that Plaintiffs (individually) are likely to succeed on the merits of their claims, Plaintiffs have relied upon their unverified pleadings and used the briefing order as an opportunity to polemicize against the mortgage industry in general, and to articulate abstract legal issues common to some (but not all) of these foreclosure cases. Plaintiffs appear to assume that if the Court finds that there are some purely legal issues that Plaintiffs might succeed on, and that in general the loss of one's home constitutes irreparable harm, then each plaintiff will have satisfied his Rule 65 burden. Plaintiffs are mistaken. The Court cannot do justice to the Rule 65 inquiry in the manner that Plaintiffs propose.

Rule 65 and the associated Due Process rights it incorporates require more than a summary procedure. Instead, an individualized demonstration of a likelihood of success and irreparable harm is required. See generally Sniadach v. Family Finance Corp., 395 U.S. 337, 342 (1969) (J. Harlan concurring) ("I think that due process is afforded only by the kinds of 'notice'

---

[1] The Defendants joining in this brief are parties in the following civil actions: Berarducci, No. 13-356, Fonseca No. 12-264, Fontaine No. 12-004, Ford No. 11-571, Harrington No. 11-626, Hoeuy No. 10-483, Perretta No. 12-927, Rodriguez No. 13-353, Senra No. 12-048.

1

#1747039

and 'hearing' which are aimed at establishing the validity, or at least the probable validity of the underlying claim against the alleged debtor before he can be deprived of his property or its unrestricted use."); Blackman v. District of Columbia, 185 F.R.D. 4 (D.D.C. 1999) (after finding of liability in two consolidated class actions, recognizing that individual hearings on requests for injunctive relief were required in order for individual members of the class to demonstrate irreparable harm because "determining which [plaintiffs] are facing the threat of irreparable harm is often difficult and requires a detailed, fact-specific inquiry").

The same four-factor analysis that applies to a decision to grant or deny a preliminary injunction must be applied here, where the Court is to decide whether to dissolve a preliminary injunction:  (1) likelihood of success; (2) the threat of irreparable harm to the party seeking interim relief in the absence of the injunction; (3) the equities; and (4) the public interest.  Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 15 F.3d 1222, 1225 (1st Cir. 1994).  "The *sine qua non* of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity."  Wine & Spirits Retailers, Inc. v. Rhode Island, 418 F.3d 36, 46 (1st Cir. 2005) (internal quotations and citations omitted); see Hubbard v. United States, 496 F. Supp. 194, 198 (D.D.C. 2007) ("It is particularly important for the movant to demonstrate a substantial likelihood of success on the merits" for "absent a substantial indication of likely success on the merits, there would be no justification for the [C]ourt's intrusion into the ordinary process of administration and judicial review.").  It is Plaintiffs, as the moving parties, that "bear the burden of establishing that these four factors weigh in its favor."  Esso Standard Oil Co. (Puerto Rico) v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006).

To demonstrate a likelihood of success on the merits, each plaintiff must first identify the legal theory set forth in his or her complaint which that plaintiff advances to support a likelihood of success.  If each of the plaintiffs were to have sought injunctive relief individually, they would have had to develop and argue why, under the facts as alleged, they have a likelihood of success on the merits. A particular plaintiff cannot be said to have demonstrated an entitlement to injunctive relief merely from his status as a plaintiff on this docket.  The fact that these cases have been consolidated does not lessen Plaintiffs' Rule 65 burden.  As the First Circuit has ruled:

> Consolidation is permitted as a matter of convenience and economy in administration, ***but does not merge the suits into a single cause, or change the rights of the parties***, or make those who are parties in one suit parties in another.  One or many or all of the phases of the several actions may be merged.  But merger is never so complete even in consolidation as to deprive any party of any substantial rights which he may have possessed had the actions proceeded separately.

In re Massachusetts Helicopter Airlines, Inc., 469 F.2d 439, 441-42 (1st Cir. 1972) (emphasis supplied).[2]

An essential element under Rule 65 is that competent evidence beyond mere allegations in pleadings be presented to demonstrate a likelihood of success on the merits.  "Evidence that ***goes beyond*** the unverified allegations of the pleadings and motion papers must be presented to support or oppose a motion for a preliminary injunction." Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2949 (2d. ed.) (emphasis supplied); see also Strahan v. Roughead, 08-CV-10919-MLW, 2010 WL 4827880 (D. Mass. Nov. 22, 2010) ("To carry its burden, a plaintiff seeking a preliminary injunction must offer proof beyond unverified allegations in the pleadings."), quoting Palmer v. Braun, 155 F.Supp.2d 1327, 1331 (M.D. Fla.2001); Illinois Migrant Council v.

---

[2] Defendants incorporate by reference the arguments concerning Plaintiffs' inability to show a likelihood of success on the merits set forth in Certain Defendants' Opposition to Plaintiffs' Briefs Seeking Continuation of the Preliminary Injunction (Doc. #2175).

3

#1747039

Pilliod, 398 F.Supp. 882, 891 (N.D. Ill. 1975), aff'd, 540 F.2d 1062 (7th Cir. 1976); Gaylor v. Reagan, 553 F. Supp. 356, 358 (W.D. Wis. 1982) (unverified complaint signed only by plaintiff's attorney is not evidence for the purpose of determining whether plaintiff is entitled to injunctive relief).  Thus, as a matter of law, the plaintiffs who have submitted neither affidavits nor verified complaints are not entitled to injunctive relief on the current state of the record.

Nor can the Court determine whether each (or indeed, any) of the plaintiffs have demonstrated irreparable harm on a wholesale basis.  See Blackman, 185 F.R.D. 4.  While Defendants are willing to concede that a plaintiff who both owns the subject property at issue and lives there as his or her principal residence could demonstrate irreparable harm – harm which must then be balanced against that plaintiff's likelihood of success on the merits – second homeowners, absentee mortgagors (who do not reside at the property), or mortgagors of investment properties categorically do not.[3]  Indeed, as a matter of law, any case in which the plaintiff seeks to enjoin foreclosure on a rental property or a second home is not an appropriate candidate for injunctive relief:

> While the Court recognizes that real property is often judicially perceived as unique, in this case plaintiffs are faced with the loss of commercial, and not residential, property. They are thus threatened with an economic loss which is compensable in large part, if not entirely, in damages.  'Mere financial injury ... will not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation.' Goldie's Bookstore, Inc. v. Superior Court, 739 F.2d 466, 471 (9th Cir.1984) (citations omitted) (wherein the court declined to enjoin the loss of a commercial leasehold).  The Court finds that adequate compensatory relief will be available to plaintiffs if they ultimately prevail . . . .  Accordingly, the possibility of irreparable harm to plaintiffs is at best remote.

---

[3] Any summary procedure without individualized review of the particular complaint would assume that each plaintiff currently resides at the subject property at issue.  This is a fact which is demonstrably untrue.  Indeed, as a matter of fact several of the pending actions involve claims where the plaintiff either never resided or no longer resides at the property.

#1747039

Geneva Ltd. Partners v. Kemp, 779 F. Supp. 1237, 1241 (N.D. Cal. 1990); see also Sandoval v. Aurora Loan Servs. Inc., No. 11-11994-RGS, 2011 WL 5970918, at *1 (D. Mass. Nov. 29, 2011) (court denied motion for preliminary injunction to prevent foreclosure when the property was not the plaintiff's "personal residence, but rather one of a number of rental properties that she has acquired"); Miller v. Deutsche Bank Trust Co., CIV. 11-00264 LEK, 2011 WL 1750741 (D. Haw. May 5, 2011) (denying injunctive relief where "the Court cannot discern whether any of the five subject properties are Plaintiff's residence or are investment properties," and noting that "Courts have found that where the foreclosure is against investment property, the property interest is not sufficiently unique to justify a finding of irreparability."). By definition, the damages of these plaintiffs, if any, can be redressed though remedies at law. See e.g., Jessen v. Keystone Sav. & Loan Ass'n, 191 Cal.Rptr. 104, 106-07 (Ct. App. 1983) (holding that investment units could be adequately compensated in damages because their price would be fixed by the open market). Plaintiffs, in fact, acknowledge that their claims for irreparable harm are limited to asserted rights in the ownership of principal residences. (See Babcock Brief at 36 "In the case at hand, Plaintiffs all argue that they will suffer from irreparable harm because their residence is unique and is their home."). Plaintiffs' briefs have not even attempted to assert any other type of irreparable harm other than the loss of a primary residence.

After each plaintiff identifies the legal theories on which he relies and competent evidence allegedly supporting a finding of a likelihood of success on the merits and irreparable harm, Defendants must then be permitted to submit legal argument and evidence in opposition to each case in which injunctive relief is sought. See e.g., Granny Goose Foods, Inc., Granny Goose Foods, Inc. v. Bd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty., 415 U.S. 423, 433, n. 7 (1974) ("The notice required by Rule 65(a) before a preliminary

injunction can issue implies a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition." ); see also Aoude v. Mobil Oil Corp., 862 F.2d 890, 894 (1st Cir. 1988) (while "in certain settings a [request for injunctive relief] can adequately be 'heard' on the papers," before a preliminary injunction can issue a party must be afforded "a fair opportunity to present relevant facts and arguments to the court, and to counter the opponent's submissions").[4]

As the First Circuit has ruled, to the extent injunctive relief is granted, there must be findings sufficient to satisfy Rule 52, showing that each plaintiff granted relief has submitted sufficient evidence to demonstrate a likelihood of success, and that each plaintiff will suffer irreparable harm absent relief.[5] See Fed. R. Civ. P. 52(a)(2) (requiring that court ordering a preliminary injunction "state the findings and conclusions that support its action"); TEC Eng'g Corp. v. Budget Molders Supply, Inc., 82 F.3d 542, 545 (1st Cir. 1996) ("The requirements of Rule 52(a) are intended to assure that the district court gives appropriate consideration to all essential relevant factors and provides an adequate basis for meaningful appellate review of its decision."). In short, because of the very nature of the Rule 65 inquiry, the Court simply cannot

---

[4] For example, where a plaintiff argues lack of corporate authority to assign a mortgage, (assuming Plaintiffs have standing to raise claims) Defendants should be afforded an opportunity to demonstrate that such authority exists. Additionally, Defendants should be given the opportunity to demonstrate the harm that would result from forcing them to continue to permit Plaintiffs to live in their properties without receiving any payments and at the same time paying the taxes and insurance associated with the Property. As Judge Wolfe of this Court recognized in Wade v. Option One Mortgage Corporation et al., Civil Action No. 09-11587, while a home is "uniquely important," failure to pay any money for a period of approximately two years "imposes a hardship on the defendants for a residential financing which really has no prospect of being paid." Similarly in these cases, Plaintiffs' failure to pay money and Defendants' inability to foreclose, market and sell the properties has imposed a severe hardship on Defendants.

[5] To be sure, there are legal issues that, if resolved by the Court in favor of the *defendants*, will result in the dismissal of many of the cases on this docket. The First Circuit correctly ordered this Court to issue its long-awaited decision in *Cosajay*, and defendants look forward to that ruling. However, even if abstract legal issues such as standing to challenge assignments are resolved in Plaintiffs' favor that cannot be the end of the Rule 65 inquiry, which must necessarily take into consideration the specific facts of each case.

make a single one-size-fits-all injunction determination after a single hearing – particularly a hearing at which no evidence will be presented.

Although there will be an administrative impact on the Court to make the required individualized findings of fact, the Court must nonetheless make the appropriate Rule 52 and 65 determinations taking into account (1) the different factual circumstances of the various Plaintiffs, (2) the different legal theories advanced in different cases, and (3) the differences among the assignments to the foreclosing parties.  To do so, it must set up a process by which Plaintiffs, consistent with Rule 65, bear the burden of persuasion and submit sufficient proof to the Court.  Accordingly, Defendants propose that this Court use the hearing on July 8, 2013 to establish a procedure to determine which, if any, of the plaintiffs whose cases are subject to the foreclosure docket should benefit from continued injunctive relief.   Any such procedure must ensure that any resulting injunction decision complies with the procedural requirements of Rule 65 and affords Defendants their substantive and procedural rights.  To rule on a motion for a preliminary injunction *en masse*, without any individual or group resolution of the legal and factual questions at issue, would simply lead to another interlocutory appeal and further delay.

## CONCLUSION

WHEREFORE, Defendants request the Court set forth a procedure consistent with Rule 65 before making a determination as to whether the Court should order continued injunctive relief from foreclosures and evictions.

Respectfully submitted,

GMAC MORTGAGE CORPORATION, FEDERAL NATIONAL MORTGAGE ASSOCIATION, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., BANK UNITED, FSB, GMAC BANK, MATRIX SERVICING LLC, MORGAN STANLEY CREDIT CORP.
By their attorneys,

*/s/ Brian S. Grossman*
Brian S. Grossman, RI Bar ID 7308
Richard E. Briansky, *pro hac vice* admission
Amy B. Hackett, *pro hac vice* admission
PRINCE LOBEL TYE LLP
100 Cambridge Street, Suite 2200
Boston, MA 02114
Tel:  617-456-8000
bgrossman@princelobel.com
rbriansky@princelobel.com
ahackett@princelobel.com

Dated:  July 3, 2013

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 3rd day of July, 2013, a true and accurate copy of the within was emailed to Barbara Barletta, Docket Clerk of the Federal District Court at Barbara_Barletta@rid.uscourts.gov.

*/s/ Brian S. Grossman*
Brian S. Grossman