UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

In Re: Mortgage Foreclosure Cases  :  Misc. No. 11-mc-88-M-LDA

**OPPOSITION OF DEFENDANT, RAYMOND C. GREEN, INC., TO PLAINTIFFS' MOTION FOR A CONTINUANCE OF THE PRELIMINARY INJUNCTION**

Defendant, Raymond C. Green, Inc. ("Green"), as a defendant in a case currently on the mortgage foreclosure docket, submits this opposition to plaintiffs' motion for a continuance of the preliminary injunction.[1] This Court should deny plaintiffs' motion for a continuance of the preliminary injunction restraining the parties from filing pleadings, motions and other documents and directing the parties to participate in mandatory settlement conferences. Cases such as Spencer E. Dickinson II v. Raymond C. Green, Inc. and others simply do not satisfy the criteria for a preliminary injunction because plaintiffs cannot show a likelihood of success on the merits nor can they demonstrate that they face irreparable harm.

**FACTS AND TRAVEL**

The facts and travel of In re: Mortgage Foreclosure Cases, Misc. No. 11-mc-88-M-LDA, have been set forth in the opposition memoranda previously filed by the numerous other defendants. To avoid repeating those facts, Green hereby incorporates those facts and travel into its opposition. The specific facts of Spencer E. Dickinson II v. Raymond C. Green, Inc., however, have not been presented to this Court for consideration. The operative facts of these mortgage foreclosure cases should not be disregarded when determining whether the preliminary injunction should continue. Each case is unique; they cannot be lumped together based on a few

---

[1] The case is Spencer E. Dickinson II v. Raymond C. Green, Inc. C.A. No. 13-067M.

shared commonalities. Accordingly, below are the facts of <u>Spencer E. Dickinson II v. Raymond C. Green, Inc.</u>

In 1974 Dwight and Eleanor Dickinson purchased the property located at 314 Highland Drive, Jamestown, Rhode Island ("subject property"). The property was their retirement home. This was not the plaintiff's childhood home. The subject property was owned equally by Dwight and Eleanor Dickinson as tenants in common. Dwight Dickinson died in 1997. Pursuant to Dwight Dickinson's will a credit shelter trust ("Trust") was established and funded primarily with his fifty percent (50%) share of the subject property. The primary beneficiary of the trust was Phillip Dickinson. There also were bequests to Dwight Dickinson's four grandchildren in the amount of twenty-five thousand ($25,000) each. Spencer Dickinson II was the sole heir to Eleanor Dickinson's share of the subject property.

After Dwight Dickinson's death the subject property was owned by the Trust and Eleanor Dickinson equally. Eleanor Dickinson lived at the subject property for approximately 10 years. Near the end of her life she moved to an assisted living facility.

In October 2010, Spencer Dickinson II purchased the Trust's share of the subject property as part of a settlement of litigation between the Dickinson brothers and to avoid a partition action in the Rhode Island Superior Court. The purchase price was $2,237,000.00. The Trust took back a promissory note ("Note") and mortgage ("Mortgage") for the amount of the purchase price. The Note called for a balloon payment on October 8, 2012 of the unpaid balance.

In January 2011, Eleanor Dickinson died and her interest in the subject property was transferred to Spencer Dickinson II. Then on December 5, 2011, Phillip Dickinson, as the sole

trustee of the Trust, assigned the Note and Mortgage to himself. Thereafter, Phillip Dickinson assigned the Note and Mortgage to Green as security for a loan in the amount of $400,000.

On October 8, 2012 Spencer Dickinson II failed to make the balloon payment due under the Note. As a precondition to foreclosure, Green notified Spencer Dickinson II in writing of the default. Green also sent him a thirty (30) day notice of its intention to foreclose. In response thereto Spencer Dickinson II filed the instant complaint for declaratory judgment and to quiet title on January 29, 2013. The case was placed on the mortgage foreclosure docket and has been subject to the "no-filing stay."

## LEGAL STANDARD

When determining whether to issue a preliminary injunction this Court must weigh the following four factors:

> (1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest. Wine & Spirits Retailers, Inc. v. Rhode Island, 418 F.3d 36, 46 (1st Cir. 2005).

It is well established that "[a] preliminary injunction is an extraordinary and drastic remedy." Mazurek v. Armstrong, 520 U.S. 968, 972, 117 S.Ct. 1865, 1867 (1997). The moving party carries the burden of persuasion and must make a clear showing that the four factors weigh in his favor. Brennan v. Wall, C.A. 08-419 S, 2009 WL 3151175 (D.R.I. Sept. 28, 2009). "If the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." Id.

## ARGUMENT

A continuance of the preliminary injunction is not appropriate. Plaintiffs cannot establish by a clear showing that the four factors weigh in their favor. Two factors in particular weigh

heavily against plaintiffs. First, they cannot show a likelihood of success on the merits. Specifically, in the case of <u>Spencer E. Dickinson II v. Raymond C. Green, Inc.</u>, the plaintiff's allegations that the Note and Mortgage were not assigned properly to Green and that Green does not have the authority to invoke the statutory power of sale are wholly without merit. Second, plaintiffs, like the plaintiff in <u>Spencer E. Dickinson II v. Raymond C. Green, Inc.</u>, are not in danger of irreparable harm. In that case, the subject property is an investment property. It is not Spencer Dickinson II's residence. As such Spencer Dickinson II has an adequate remedy at law in the form of monetary damages. Simply put, the loss of an investment property does not justify a finding of irreparable harm.

## I. SPENCER E. DICKINSON II PROBABLY WILL NOT SUCCEED ON THE MERITS OF HIS CASE LIKE MANY OF THE PLAINTIFFS WITH CASES ON THE MORTGAGE FORECLOSURE DOCKET

Spencer Dickinson II is in default on the Note and Mortgage he executed in favor of the Trust. Rhode Island law allows for a mortgagee or its assigns to foreclose when the mortgagor is in default. The statutory power of sale states:

> But if default shall be made in the performance or observance of any of the foregoing or other conditions, or if breach shall be made of the covenant for insurance contained in this deed, then it shall be lawful for the mortgagee or his, her or its executors, administrators, successors or assigns to sell, together or in parcels, all and singular the premises hereby granted or intended to be granted, or any part or parts thereof, and the benefit and equity of redemption of the mortgagor and his, her or its heirs, executors, administrators, successors and assigns therein, at public auction... R.I. Gen. Laws Ann. § 34-11-22 (West).

Further, as the assignee of the Note and Mortgage, Green has the authority to exercise the statutory power of sale.

> An assignment of mortgage substantially following the form entitled "Assignment of Mortgage" shall, when duly executed, have the force and effect of granting, bargaining, transferring and making over to the assignee, his or her heirs, executors, administrators, and assigns, the mortgage deed with the note and debt thereby secured, and all the right, title and interest of the mortgagee by virtue thereof in and to the estate described therein, to have and to hold the mortgage

deed with the privileges and appurtenances thereof to the assignee, his or her heirs, executors, administrators and assigns in as ample manner as the assignor then holds the same, thereby substituting and appointing the assignee and his or her heirs, executors, administrators and assigns as the attorney or attorneys irrevocable of the mortgagor under and with all the powers in the mortgage deed granted and contained. R.I. Gen. Laws Ann. § 34-11-24 (West).

Here, the assignment from Phillip Dickinson to Green includes both the Note and Mortgage and states in pertinent part:

> 1. For value received, the receipt and sufficiency of which are hereby acknowledged, the Assignor hereby assigns, transfers and coveys to Assignee:
>
> a. all of the Assignor's right, title, and interest in and to the following promissory note (the "Note"): a Promissory Note in the original face amount of $2,237,500.00 dated October 8, 2010 from Spencer E. Dickinson II to The Dwight Dickinson Credit Shelter Trust, as endorsed to Assigner this date; and
>
> b. all of Assignor's right, title and interest in and to the mortgage securing the Note, which mortgage is recorded with the land evidence records of the Town of Jamestown, RI (the "Records Office") in Book 712 Page 279 (the "Mortgage")"

In order to challenge Green's right to foreclosure Spencer Dickinson II alleges that the assignments from the Trust to Phillip Dickinson and from Phillip Dickinson to Green are void. First, he claims that Phillip Dickinson did not have the power to assign the Mortgage to himself and that the Trust did not have the power to assign the Mortgage and endorse the Note to Phillip Dickinson. The facts do not support these legal conclusions. Phillip Dickinson was the sole trustee after the death of Eleanor Dickinson. Under the terms of the Trust the trustee has the power to convey real estate and to distribute the trust estate upon the death of Eleanor Dickinson. The terms of the Trust provided that one hundred thousand dollars ($100,000) was to be distributed to Dwight Dickinson's four grandchildren and the balance of the trust estate was to be distributed to Phillip Dickinson. The appropriate distributions were made to the four grandchildren as documented by general releases filed with the probate petition. Once the

grandchildren received their share of the trust estate Phillip was entitled to the balance which included the Note and Mortgage. Accordingly, Phillip Dickinson, as the trustee, had the authority to assign the Note and Mortgage to himself individually.

Next Spencer Dickinson II claims that the assignment from Phillip Dickinson to Green is void because Phillip Dickinson did not lawfully hold the Note and Mortgage. As shown above, the Trust did assign the Note and Mortgage properly to Phillip Dickinson individually. As the holder of both the Note and Mortgage, Phillip Dickinson had the power under Rhode Island law to assign the Note and Mortgage to Green. Following this series of assignments Green has the power to foreclose on the subject property as the assignee of the Note and Mortgage. Therefore, it is likely that the plaintiff will not prevail on the merits when this matter goes to trial.

## II. SPENCER DICKINSON II DOES NOT FACE IRREPARABLE HARM

Spencer Dickinson II likewise cannot establish that is he is threatened with irreparable harm. "Irreparable harm most often exists where a party has no adequate remedy at law." Charlesbank Equity Fund II, LP v. Blinds to Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004). A Court has found that plaintiff-owners of rental properties subject to foreclosure do not face irreparable harm. In Sandoval v. Aurora Loan Services, Inc., the United States District Court for the District of Massachusetts denied a plaintiff's motion for an injunction to stave off a foreclosure of rental property. 2001 WL 5970918, *1 (2011). The Sandoval Court found that the property at issue was not the plaintiff's personal residence but rather a rental property. The Court concluded that the plaintiff could be remedied by an award for monetary damages.

Like the property in Sandoval, the subject property is not Spencer Dickinson II's residence; rather, it is an investment property. Spencer does not live in the property, nor has he

ever lived there. Furthermore, the property has been rented at least twice since Eleanor Dickinson entered the assisted living facility.[2]

Spencer Dickinson, like the plaintiff in Sandoval, has an adequate remedy at law. The subject property is a source of income for Spencer Dickinson II. In this regard the subject property is the same as any other type of investment. In fact, Spencer Dickinson II has been attempting to sell it for over two years now. The purpose of any investment, whether it is a rental property or a stock, is to sell it in order to make a profit. Accordingly, Spencer Dickinson II has an adequate remedy at law because monetary damages would justly compensate him for any injury he would suffer if the property is foreclosed erroneously.

## CONCLUSION

As demonstrated by the specific facts of Spencer Dickinson II v. Raymond C. Green, Inc., C.A. No. 2013-067 M, plaintiffs cannot show a likelihood of success on the merits or the threat of irreparable harm if the preliminary injunction is dissolved. Accordingly, this Court should find that the four factor test weighs in favor of defendants and deny the motion to continue the preliminary injunction.

        Respectfully submitted
        Raymond C. Green, Inc.,
        By its attorney,

        /s/ Ryan C. Hurley
        Ryan C. Hurley, Esq. (7539)
        Kiernan, Plunkett & Redihan
        91 Friendship Street
        Providence, RI 02903
        (401) 831-2900
        (401) 331-723 (FAX)
        Email: rhurley@kprlaw.com

---

[2] Whether tenants still occupy the subject property is unknown by Green at this time.

## **CERTIFICATION OF SERVICE**

  I hereby certify that this document has been filed electronically and is available for viewing and downloading from the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on July 5, 2013.

                  /s/ Ryan C. Hurley