## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| **In re:  Mortgage Foreclosure Cases** | ) | **Misc. No. 11-mc-88-M-LDA** |
| | ) | |
| | ) | |

## CERTAIN DEFENDANTS' OPPOSITION TO PLAINTIFFS'
## BRIEFS REGARDING PRELIMINARY INJUNCTION

Certain defendants oppose plaintiffs' request to continue the preliminary injunction[1] in these cases.[2]  Plaintiffs have not sustained their burden of proving entitlement to injunctive relief under Fed. R. Civ. P. 65(a).  They have not demonstrated any likelihood of success on the merits.  Plaintiffs failed to establish standing to sue.  They have not shown that each plaintiff has sustained irreparable harm.  Any alleged irreparable harm is the result of plaintiffs' own act, not actions by defendants.  The balance of hardship and the impact on public interest favor defendants.  This is particularly so as defendants are charged with maintaining the properties in issue during the pendency of these actions, while being denied access to those properties.

---

[1]  In its June 19, 2013 Order (ECF No. 2163, modified June 26, 2013), this Court invited the parties to submit briefs regarding whether plaintiffs have satisfied the elements required for injunctive relief, in light of the decisions of the First Circuit in *Fryzel v. Mortgage Electronic Registration Systems, Inc.*, et al. and *Macera v. Mortgage Electronic Registration Systems, Inc., et al*.  Nos. 12-1526 and 12-1778 (1st Cir. June 14, 2013).

[2]  This Brief is filed on behalf of certain defendants in the following actions, more particularly identified at the end of this submission:  11-455, 12-464, 12-642, 12-714, 12-802, 12-784, 13-017, 13-069, 13-130, 13-242, 13-241, 13-256, 13-355 and 13-439.

# I.     Plaintiffs Are Not Entitled to Injunctive Relief.

The four part standard for a preliminary injunction is well settled – likelihood of success, irreparable harm, equities and public interest.[3]  Of particular importance is that parties seeking injunctive relief, here plaintiffs, bear the burden of providing a sufficient factual basis to justify the issuance of a preliminary injunction.  *Nieves–Marquez v. Puerto Rico*, 353 F.3d 108, 120 (1st Cir.2003).  "This burden is a heavy one: 'Because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal.'"  *Friends of Magurrewock, Inc. v. U.S. Army Corps of Engineers*, 498 F.Supp.2d 365, 369 (D.Me. 2007), (quoting *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1256 (10th Cir.2003)).[4]

"The sine qua non of the four part test is likelihood of success on the merits: if the moving party cannot demonstrate that it is likely to succeed in its quest, the remaining factors become matters of idle curiosity." *Esso, supra,* (quoting *New Comm Wireless Servs., Inc. v. SprintCom, Inc*., 287 F.3d 1, 9 (1st Cir.2002).  *See*, *Weaver v. Henderson*, 984 F.2d 11, 12 (1993).  In the context of these cases, the First Circuit identified "mortgagors' likelihood of success in challenging foreclosure" as the "critical

---

[3]     In determining whether a preliminary injunction should be granted the Court must consider: (1) the likelihood of success on the merits; (2) the anticipated incidence of irreparable harm if the injunction is denied; (3) the balance of relevant equities (i.e., the hardship that will befall the nonmovant if the injunction issues contrasted with the hardship that will befall the movant if the injunction does not issue); and (4) the impact, if any, of the court's action on the public interest.  *Borinquen Biscuit Corp. v. M.V. Trading Corp*., 443 F.3d 112, 115 (1st Cir.2006); *see also Esso Standard Oil Co. (Puerto Rico) v. Monroig–Zayas*, 445 F.3d 13, 18 (1st Cir.2006); *Weaver v. Henderson*, 984 F.2d 11, 12 (1st Cir.1993); *Narragansett Indian Tribe v. Guilbert,* 934 F.2d 4, 5 (1st Cir.1991).

[4]     See the more detailed discussion of this issue by GMAC Mortgage and other defendants in their memorandum (ECF No. 2180), which defendants generally adopt.

requirement." *Fryzel v. Mortgage Electronic Registration Systems, Inc.*, ---F.3d---, 2013 WL 2896794 at *3 (1st Cir. June 14, 2013).

### a. Plaintiffs Do Not Satisfy Their Burden To Justify Injunctive Relief.

"To carry its burden, a plaintiff seeking a preliminary injunction must offer proof beyond unverified allegations in the pleadings." *Palmer v. Braun*, 155 F.Supp.2d 1327, 1331 (M.D.Fla. 2001), citing *Bascom Food Products Corp. v. Reese Finer Foods, Inc.*, 715 F.Supp. 616, 624 n.14 (D.N.J. 1989). *See also*, *Strahan v. Roughead*, No. 08-cv-10919-MLW, 2010 WL 4827880, at *10 (D.Mass. Nov. 22, 2010). Where "[p]laintiffs have not presented any facts or other supporting materials beyond their pleadings to justify consideration of their request for preliminary injunction relief, [then] sufficient cause for injunction has not been shown." *Davis v. City of Portsmouth, Va.*, 579 F.Supp. 1205, 1211 (D. Va. 1983). (denying preliminary injunction where plaintiffs did not present any supporting materials beyond the challenged allegations in the pleadings). *See also*, *Town of Burlington v. Dept. of Ed.*, 655 F.2d 428, 433 (1st Cir.1981). "A finding of irreparable harm must be grounded on something more than conjecture, surmise or a party's unsubstantiated fears of what the future may have in store." *Charlesbank Equity Fund II v. Blinds to Go, Inc.*, 370 F.3d 151, 162 (2004).

Some plaintiffs suggest or assume that it is defendants who must make some evidentiary showing. This is erroneous. The burden lies solely with plaintiffs, the parties seeking injunctive relief. Plaintiffs' attempts to proffer hearsay deposition testimony regarding unrelated third parties and events, portions of unverified articles or publications is insufficient to meet their burden.

{00321947.DOCX}                                    -3-

**b. Plaintiffs Have Not Demonstrated a Substantial**
**Likelihood of Success on the Merits**

*i. Plaintiffs Lack Standing to Challenge The Assignments As Void*[5]

Plaintiffs lack standing. These cases are before this Court based upon diversity jurisdiction, 28 U.S.C. § 1332. Diversity jurisdiction requires this Court to apply Rhode Island substantive law to decide all state law claims. *Miree v. DeKalb County, Georgia*, 433 U.S. 25, 28 (1977). *See also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) and *Barton v. Clancy*, 632 F.3d 9, 17 (1st Cir.2011) ("A federal court sitting in diversity … must apply state substantive law…"). Plaintiffs, who brought these actions in this Court, bear the burden of establishing their standing. *See, Cosajay v. Mortgage Electronic Registration Systems, Inc.*, C.A. No. 10-442, ECF No. 21 at 12 (D.R.I. Jun. 23, 2011) (report and recommendation).

Plaintiffs challenge the validity of the assignments of their mortgages. However, plaintiffs are not parties to those assignments. "Rhode Island trial courts have held that homeowners lack standing to challenge the propriety of mortgage assignments and the effect of those assignments, if any, could have on the underlying obligation.'" *Rutter v. Mortgage Electronic Registration Systems, Inc.*, 2012 WL 894012 (R.I. Super), *quoting Payette v. Mortgage Electronic Registration Systems*, No. PC-2009-5875, 2011 WL 3794700. "The principle that a party to a contract does not have standing to challenge the contract's subsequent assignment is well established." *Fryzel v. Mortgage Electronic Registration Systems*, 2011 WL 9210454 (D.R.I. Jun. 10, 2011) (Report and

---

[5] Defendants here incorporate and adopt the arguments at pages 9 through 11 of the memorandum of Nationwide Mortgage Corp., et al. (ECF No. 2175).

Recommendation).  This is a long standing principle of Rhode Island law.  See *Brough v. Foley*, 525 A.2d 919, 922 (R.I. 1987).  *See also, Cosajay, supra*, at 25 -28.

"[A]n assignment generally requires neither the knowledge nor the assent of the obligor, … because an assignment cannot change the obligor's performance."  6 Am.Jur. 2d Assignments § 2.  As stated in *Brough v. Foley*, *supra*, 525 A.2d at 921-922:

> [The] sole right that plaintiffs had in respect to the subject real estate is set forth in the sales agreement that they entered into with [the executor]…  This agreement gave no right to plaintiffs to second-guess the validity of the right of first refusal, nor did it give plaintiffs the right to supervise or pass upon the effectiveness of the assignment to [the assignor]'s nominee, or the nominee's exercise of that assignment.…The plaintiffs were, in substance, strangers to those transactions and were given no rights under the contract to challenge the transactions.

*See also*, *Fryzel v. Mortgage Electronic Registration Systems, supra*, 2011 WL 9210454 (holding that property owner lacked standing to challenge assignment of his mortgage to a subsequent entity); *Liviona Prop. Holdings, LLC v. 12840 Farmington Rd. Holdings LLC*, 717 F.Supp.2d 724 (E.D. Mich. 2010) (holding that property owner lacked standing to challenge assignment of his mortgage to a subsequent entity).

*Culhane v. Aurora Loan Services of Neb.*, 708 F.3d 282 (1st Cir. 2013), is inapplicable here.  *Culhane* applied Massachusetts law.  The First Circuit held that "only Massachusetts mortgagors, under circumstances comparable to those in this case, have standing to challenge a mortgage assignment."  708 F.3d at 291.  In determining mortgagor standing, *Culhane* relied upon Massachusetts state case law, including *Eaton v. Fed. National Mortg. Ass'n*, 462 Mass. 569 (2012); *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 455 Mass 458 (2009); and *U.S. Bank Nat'l Ass'n v. Ibanez*, 458

Mass. 637 (2011).  The First Circuit also cited the statutory power of sale in Mass. Gen. Laws c. 183, § 21 and c. 244, § 14.  *Culhane* does not interpret or apply any Rhode Island substantive law.[6]

Even if *Culhane* applied, its holding is narrow and only provides that, under Massachusetts law, a mortgagor had standing to challenge an assignment "to the extent that such a challenge is necessary to contest a foreclosing entity's status qua mortgagee." 708 F.3d at 291.  "…[A] mortgagor has standing to challenge a mortgage assignment as invalid, ineffective, or void (if say the assignor had nothing to assign or had no authority to make an assignment to a particular assignee)."  *Id.*  However, "a mortgagor does not have standing to challenge shortcomings in an assignment that render it merely voidable at the election of one party but otherwise effective to pass legal title."  *Id.*  Even if *Culhane* were applicable, plaintiffs' claims fail under its standard.  Again, arguments similar to those by plaintiffs here were rejected in *Cosajay, supra*, at 28-34.

       ii.  *R.I. Gen. Laws 34-11-24 Permits Assignment*
          *of the Mortgage and the Note.*

R.I. Gen. Laws § 34-11-24 provides that an assignment of the mortgage shall have the force and effect of transferring to the assignee the note and debt thereby secured. Plaintiffs' various assertions that the current holder of the mortgage is allegedly not the note holder, that a mortgage without a note is a nullity, or that the entity cannot assign a note it does not hold are without merit.  Rhode Island is well settled that the mortgage may be held separately from the note it secures.  *Pawtucket Inst. for Sav. v. Gagnon*, 475

---

[6]    Indeed, when it suits plaintiffs, their counsel takes great care to explain why *Culhane* is inapposite, precisely because it <u>does</u> involve Massachusetts law, not Rhode Island law.  See ECF No. 2171 at 12.

A.2d 1028 (R.I. 1984).  "The law contemplates distinctions between the legal interest in a

mortgage and the beneficial interest in the underlying debt.  These are distinct interests,

and they may be held by different parties."  *Bucci v. Lehman Brothers Bank*, --- A.3d ---,

2013 WL 1498655 at *14 (R.I. Apr. 12, 2013), quoting *Culhane,* supra, 708 F.3d at 282.

Thus:

> Because the lender retained equitable title to the mortgage and
> passed that equitable title to each of its successors and assigns,
> including the current owner, the mortgage and note have never been
> separated as plaintiffs' contend.  Instead, the note and the equitable
> interest in the mortgage have always remained unified, and the
> mortgage has "followed the note."

*Id.  See also*, ECF 2175 at 12-13.

### *iii.  There is No Valid Agency Issue*

In the cases that involve "MERS," or a nominee, the Rhode Island Supreme Court

has made it quite clear that "MERS, as the holder of legal title, may be denominated as

the mortgagee in the mortgage and may foreclose on behalf of the note owner."  *Bucci,*

*supra* 2013 WL 1498655 at *15.  "[Generally,] a mortgage is unenforceable if it is held

by one who has no right to enforce the secured obligation."  *Id, quoting* Restatement

(third) *Property* § 5.4, cmt. E. at 385.  However:

> "This result is changed if [the mortgage holder] has authority from
> [the note owner] to enforce the mortgage on [the note owner]'s
> behalf.  For example, [the mortgage holder] may be a trustee or
> agent of [the note owner] with responsibility to enforce the mortgage
> at [the note owner]'s direction.  [The mortgage holder]'s enforcement
> of the mortgage in these circumstances is proper.  The trust or
> agency relationship may arise from the terms of the assignment,
> from a separate agreement, or from other circumstances.  Courts
> should be vigorous in seeking to find such a relationship, since the

result is otherwise likely to be a windfall for the mortgagor and the frustration of [the note owners]'s expectation of security."

*Id*. at 385–86.

### iv.   *The Mortgages Contemplate Assignments*

Plaintiffs argue that the Statutory Power of Sale is limited to the original Lender. This is simply not true.  This assertion fails upon a review of the terms of each mortgage, R.I. Gen. Laws § 34-11-22 and *Bucci, supra*.  In the standard form MERS mortgage, the Borrower grants MERS the Statutory Power of Sale and right to foreclose through the Mortgage.  The mortgage provides that MERS has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property.

In other standard form mortgages, the Borrower agrees that the Lender may, at any time, sell, transfer or assign the Note, Security Instrument and other Security Documents, and any or all servicing rights with respect thereto.  R.I. Gen. Laws § 34-11-22 provides that in the event of a default, it is lawful for the mortgagee or its ***assigns*** "to sell, together or in parcels, all and singular the premises hereby granted or intended to be granted, or any part or parts thereof, and the benefit and equity of redemption of the mortgagor and his, her or its heirs, executors, administrators, successors and assigns therein, at public auction upon the premises, or at such other place, if any, as may be designated for that purpose in this deed.."  See also the arguments in ECF No. 2175 at 13-14.

### v.   *Plaintiff's Argument that the "Lender" Must Provide All Notices Is Without Merit*

Standard form mortgage agreements provide that the Borrower agrees to mortgage, grant and convey the Property to Lender and Lender's successors and assigns,

with the Statutory Power of Sale.  The mortgage agreements also provide that the Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and its rights under the Mortgage.

Plaintiffs provide no support for their argument that Lender's attorney, Lender's agent, nominee or assigns may not send notices to Borrowers.  The Lender may consent to have its attorneys, agents or nominees act on its behalf and subject to his control; to do all acts in or out of court necessary to protect its rights and interests in all matters.  Restatement, 2d, Agency, § 1(1).  It is reasonable where a Borrower fails to make mortgage payments, fails to pay taxes and fails to insure the property that the Lender, or its assigns, would retain attorneys, agents or nominees to take steps necessary to protect their rights and interests under the mortgage agreements.

vi. *Plaintiff's Argument that Under the Uniform Commercial Code, the Mortgage Can Only be Transferred by Delivery of Possession is Erroneous in Light of Bucci*

Some plaintiffs attempt to argue that there are Uniform Commercial Code issues here.  These plaintiffs claim that under Rhode Island law, a promissory note or the debt secured by the mortgage can only be transferred or negotiated by delivery of possession.  Plaintiffs further argue that "the holder must be the party entitled to enforce and must be the party in possession of the note unless it was lost, destroyed or stolen or the note is paid or accepted by mistake (citations omitted."  Plaintiffs' interpretation of Rhode Island law is not accurate.

The manner in which the mortgage maybe transferred has already been decided by the Rhode Island Supreme Court in *Bucci*, *supra*.  As stated above, the Rhode Island

Supreme Court made it quite clear that a nominee may invoke the Statutory Power of

Sale.  The mortgagee and note holder do not have to be the same entity.  The UCC claims

of plaintiffs are a "red herring."

> vii.  _Plaintiffs' Bald Assertions Do Not Entitle Them to Injunctive Relief_

In many of the complaints, plaintiffs make bald assertions with no supporting

allegations.  For example, some plaintiffs make the conclusory assertion that the note is

current or has been satisfied by another third party, with no supporting allegations

regarding any alleged payments.  This boiler-plate allegation should not be considered by

this Court.  Many of these cases have been added to the Special Master's docket as part

of this proceeding.  The Orders of the Special Master require plaintiffs to make monthly

use and occupancy payments for the properties that are the subject of litigation or face

possible dismissal of their claims.  The Special Master calculates the use and occupancy

payment at approximately half of the amount of the mortgage payment with a small

amount added for interest.  (See ECF No. 824).  The very fact that these cases are on the

Special Master's docket and that plaintiffs are or were making use and occupancy

payments is a clear demonstration that sums are and remain owed and that plaintiffs'

boilerplate allegation regarding the status of their notes are not correct.

Plaintiffs' general allegations of fraud also must fail.  As Fed. R. Civ. P. 9(b)

requires, "the circumstances constituting fraud or mistake shall be stated with

particularity."  (emphasis added).  As with their other allegations, plaintiffs offer nothing

beyond unverified and conclusory allegations of fraud in their pleadings and fail to

demonstrate fraud as a basis for injunctive relief.

Plaintiffs also make unsupported allegations regarding lack of consideration, allegations that signatories were so-called "robo-signers" or lacked authority to sign documents and allegations that the mortgages are not enforceable because they were allegedly securitized.  None of these allegations entitle plaintiffs to injunctive relief. These arguments have been rejected by the courts.  Notwithstanding, plaintiffs, in their argument for injunctive relief, offer nothing beyond these bare assertions in their unverified complaints.  Plaintiffs do not differentiate among the different defendants and provide no demonstrative evidence as to which defendants plaintiffs refer.  Plaintiffs' arguments are based upon unauthenticated materials from other cases and proceeding brought in other states and involving other parties, with many of the items cited by plaintiffs involving multiple levels of hearsay.  No specific evidence is offered for the specific cases involving these defendants.  The lack of merit of these claims already has been addressed by other defendants in ECF No. 2175 at 14-16 (inadequacy of "robo signing" arguments), 16-17 (purported lack of consideration) and 18-19 (effects of securitization), and defendants here incorporate and adopt those arguments as well.

### c.  The Significant Risk of Harm Alleged by Plaintiffs is Outweighed by the Harm Imposed Upon the Defendants if Injunctive Relief is Granted

The various plaintiffs are not similarly situated.  It is not enough simply to claim that the foreclosure proceedings may cause plaintiffs to lose their properties and to be evicted.  Even among the relatively few cases involving these defendants, there are a number of plaintiffs who either are not necessarily living in the subject property or for whom the subject property is an investment property.  In such circumstances, there is no

irreparable harm.  "Irreparable harm most often exists where a party has no adequate remedy at law."  *Charlesbank Equity Fund II, LP v. Blinds to Go, Inc.* 370 F.3d 151, 162 (1st Cir.2004).  This again shows why blanket relief regarding all plaintiffs, all properties and all defendants is inappropriate.  Rather, any injunctive relief should be considered on a case by case basis, including consideration of the differing harms involved.

Plaintiffs are and have been in default on their mortgages for several years.  Their purported irreparable harm is a natural consequence of their repeated failures to meet their debt obligations.  "A preliminary injunction movant does not satisfy the irreparable harm criterion when the alleged harm is self-inflicted." *FIBA Leasing Co. v. Airdyne Inds.*, 826 F.Supp. 38, 39 (D.Mass. 1993) (citing *San Francisco Real Estate v. Real Estate Inv. Trust of Am.*, 692 F.2d 814, 818 (1st Cir. 1982)).

### d.  The Balance of the Hardship Does not Tilt in Plaintiffs' Favor

The balance of relevant equities favors defendants.  Plaintiffs are not fulfilling their debt obligations and, in many cases, have not done so for years.  Defendants, in the ordinary course, seek to realize the collateral that secured their debts.  The expected consequence of foreclosure was stopped by the stay order of this Court.  During this time, defendants have been denied access to the property and the ability to realize what value remains in the property.  At the same time, however, defendants remain responsible for the maintenance of the properties, including payment of taxes and insurance to preserve and protect their interests.  Plaintiffs either reside at the properties or collect rent from tenants residing at these properties, many without payment of any cost or expense.  The use and occupancy payments, if and when made, are often the subject of settlement of

further proceedings, conferences and negotiations for loan modifications and are a fraction of the amounts due. Defendants continue to incur losses and cannot protect their collateral.

### e.  Granting the Injunction Will Negatively Affect Public Interest

There is no public interest in upholding the injunction. The exorbitant costs borne by the mortgagees to maintain all of these properties during the pendency of litigation are passed, in one form or another, to the public. Where lenders are not permitted to realize the collateral securing the loan offered, the entire system is jeopardized.

### II.    Conclusion[7]

For the foregoing reasons, this Court should dissolve the stay order. Each case should proceed upon whatever merits it may have.

Respectfully submitted,

Dated:  July 5, 2013

_/s/ Paul Michienzie_____
Paul Michienzie (pro hac vice)
Michienzie & Sawin LLC
745 Boylston Street, 5th Floor
Boston, Massachusetts 02116
Tel: 617-227-5660
Fax: 617-227-5882
E-mail: pm@masatlaw.com

Jeanne M. Scott (RI Bar No. 6178)
The Law Offices of Jeanne M. Scott
35 Touro Street
Newport, Rhode Island  02840
Tel:  (401) 849-8400

Counsel for Certain Defendants[8]

---

[7]    Defendants herein reserve the right to incorporate, adopt or otherwise join in arguments of other defendants, expressly including, but not limited to, Mortgage Electronic Registration Systems, Inc.

CERTIFICATE OF SERVICE

I hereby certify that in compliance with the Order of this Court, dated June 19, 2013 [ECF No. 2163], as modified by Order of June 26, 2013, this submission has been filed on this 5th day of July, 2013, by e-mail to the Docket Clerk, Barbara Barletta, at Barbara_Barletta @rid.uscourts.gov, for docketing and service.

       /s/ Paul Michienzie

---

[8]   (1) *Era v. Morton Community Bank, et al*s., 11-455 (defendant E*Trade Bank); (2) *Pacheco, et al v. Interbay Funding, LLC, et al.*, 12-642 (defendants Interbay Funding, LLC and Bayview Loan Servicing, LLC); (3) *Donatelli v. Mortgage Electronic Registration Systems, Inc., et al*s., 12-714 (defendants Mortgage Electronic Registration Systems, Inc, E*Trade Bank, and Bayview Loan Servicing, LLC); (4) *Clark v. Mortgage Electronic Registration Systems, Inc., et al.*, 12-802 (defendants Mortgage Electronic Registration Systems, Inc. and Bayview Loan Servicing, LLC); (5) *Mallett v. E*Trade Bank*, 12-784 (defendant E*Trade Bank); (6) *Mendez v. Bayview Loan Servicing, LLC, et al*, 13-017 (defendants Bayview Loan Servicing, LLC and Mortgage Electronic Registration Systems, Inc.); (7) *Giuliano v. Mortgage Electronic Registration Systems, Inc., et al.*, 13-069 (defendants Mortgage Electronic Registration Systems, Inc. and Bayview Loan Servicing, LLC); (8) *Mom v. Mortgage Electronic Registration Systems, Inc., et als.*, 13-130 (defendants Mortgage Electronic Registration Systems, Inc. and SunTrust Mortgage, Inc.); (9) *Osinaga v. Bayview Loan, et als.*, 13-242 (defendants Bayview Loan Servicing, LLC, M & T Bank and Equity One, Inc.); (10) *Cote v. Mortgage Electronic Registration Systems, Inc., et als.*, 13-241 (defendants Mortgage Electronic Registration Systems, Inc. and M&T Bank); (11) *Cornejo v. Interbay Funding, et al.*, 13-256 (defendants Interbay Funding, LLC and Bayview Loan Servicing, LLC); (12) *Castillo v. Interbay Funding, LLC, et al.*, 13-355 (defendants Interbay Funding, LLC and Bayview Loan Servicing, LLC); Counsel is in the process of appearing in *Reyes v. The Bank of New York Mellon, et al.,* 13-439, for defendant Bayview Loan Servicing, LLC. *Sowa v. Mortgage Electronic Registration Systems, Inc., et al.*, 12-464, has been dismissed; if that action is somehow revived, these arguments will apply to it as well.