**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

In re: Mortgage Foreclosure Cases ) Misc. No. 11-mc-88-M-LDA

**MEMORANDUM & ORDER**

JOHN J. MCCONNELL, JR., United States District Judge.

In its opinion on Certain Defendants' interlocutory appeal in the *Fryzel v. Mortgage Electronic Registration Systems, Inc.* case, the First Circuit determined that this Court's stay of the mortgage foreclosure litigation – implemented in an effort to foster a meaningful mediation program – was an injunction and that that injunction was imposed outside of the requirements of Fed. R. Civ. P. 65(a). *Fryzel v. Mortg. Elec. Registration Sys., Inc.*, 719 F.3d 40, 44-46 (1st Cir. 2013). On remand, the First Circuit directed this Court to *first*, schedule a hearing "to determine whether the existing injunction against foreclosure and possessory action should be continued[,]" *second*, to act on the Magistrate Judge's recommendation in *Cosajay v. Mortgage Electronic Registration Systems, Inc.*, C.A. No. 10-442-M-LDA that these cases should be dismissed for lack of jurisdictional standing, and *third*, to hold a second hearing "to decide whether the mediation order should be continued and, if so, what time and cost limits should be set and what the allocation formula should be." *Id.* at 46.

On the first matter, which is the primary subject of this Order,[1] this Court held a preliminary injunction hearing on July 10, 2013, after receiving extensive briefs on the issue from all sides.[2] The Court finds that, in consideration of the briefing and arguments within the lens of the well-established preliminary injunction standard, a Rule 65 injunction is not appropriate. Therefore, the Court ORDERS:

1. The blanket injunction against foreclosure and possessory actions DISSOLVED;
2. The stay of filings CONTINUED until such time as the parties can be heard and the Court addresses the mediation program; and
3. The Order that Plaintiffs are required to pay use and occupancy fees VACATED.

## I. STANDARD OF REVIEW

A court can grant a preliminary injunction only if the movants have established four conditions: (1) they have a substantial likelihood of success; (2) they would suffer irreparable harm otherwise; (3) they can claim the greater hardship in the absence of an order; and (4) the injunction will not disserve the public interest if imposed. *Fryzel*, 719 F.3d at 44 (citing *TEC Eng'g Corp. v. Budget Molders Supply, Inc.*, 82 F.3d 542, 545 (1st Cir. 1996)). "The sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002) (citing *Weaver v. Henderson*, 984 F.2d 11, 12 (1st Cir. 1993)).

The burden of proof on these elements is on the moving party. "To demonstrate likelihood of success on the merits, plaintiffs must show 'more than mere possibility' of

[1] The Court will issue its ruling on standing in the *Cosajay* case separately and will hold a hearing on the mediation order and protocols in due course.

[2] ECF Nos. 2169, 2171, 2172, 2174 (Plaintiffs) and ECF Nos. 2175-2176, 2178-2180, 2183-2188, 2190-2214 (Defendants).

success—rather, they must establish a 'strong likelihood' that they will ultimately prevail." *Sindicato Puertorriqueno de Trabajadores v. Fortuno*, 699 F.3d 1, 10 (1st Cir. 2012) (quoting *Respect Maine PAC v. McKee*, 622 F.3d 13, 15 (1st Cir. 2010)).

## II. PRELIMINARY INJUNCTION

Because likelihood of success is the linchpin of the Court's consideration of this injunction, it is only logical that it should be the focus of this Order at the outset.[3]

Both factual and legal issues play into this Court's inquiry and the parties' submissions identify a myriad of issues implicated in their cases. Although there are many legal issues common to the vast majority of cases on this Court's docket, it is clear to the Court that the blanket injunction issued on the consolidated docket cannot stand because the Court cannot make the finding of likelihood of success across the board. The Court further believes that it should address these common legal issues in the context of the factual assertions of the individual cases.

### A. Legal Issues

The issues Plaintiffs have raised in response to the Defendants' legal challenge to their cases appear to run across many, if not the vast majority of, cases. Among other things, they argue that MERS assignments are invalid because they do not assign both the mortgage and the note, that robo-signing invalidates the mortgage documents, and that the MERS structure is prohibited by Rhode Island law. *See generally* ECF Nos. 2169, 2171, 2172, 2174. Recent opinions issued after this Court's stay and mediation order were put in place from the Rhode Island Supreme Court, *Bucci v. Lehman Brothers Bank, FSB*, 68 A.3d 1069 (R.I. 2013), and the

---

[3] If Plaintiffs were able to establish a substantial likelihood of success on the merits, this Court would most likely find that Plaintiffs would suffer irreparable harm, would suffer the greater hardship, and the public interest would best be served by a continuation of the injunction. However, in light of the Court's conclusion on the initial "sine qua non" element, there is no need to set forth the reasoning on the remaining elements of the preliminary injunction inquiry.

First Circuit, *Culhane v. Aurora Loan Services of Nebraska*, 708 F.3d 282 (1st Cir. 2013), address many of these issues. Both decisions seem to undercut many of Plaintiffs' legal arguments in the cases currently consolidated before this Court.

In *Bucci*, the Rhode Island Supreme Court upheld the MERS framework as consistent with Rhode Island law. With regard to Plaintiffs' arguments that the assignments are invalid because the title to the note and mortgage needs to be held by the same entity, it held that:

> [b]ecause the lender retained equitable title to the mortgage and passed that equitable title to each of its successors and assigns, including the current owner, the mortgage and note have never been separated as plaintiffs contend. Instead, the note and the equitable interest in the mortgage have always remained unified, and the mortgage has 'followed the note.' Furthermore, the holder of the legal title to the mortgage—MERS—always has acted as an agent of the owner of the equitable title. *In our opinion, this transactional structure is consistent with the law of this state.*

63 A.3d at 1088 (emphasis added).[4] Previous to the Rhode Island Supreme Court's ruling in *Bucci*, Rhode Island Superior Court Associate Justice Michael A. Silverstein, in a thorough, well-reasoned and prescient decision, analyzed many of the same issues these Plaintiffs have raised in this Court's Mortgage Foreclosure docket and found, in each instance, for the Defendants. In *Rutter v. Mortgage Electronic Registration Systems, Inc.*, Justice Silverstein noted that "Rhode Island courts have routinely enforced foreclosures based on MERS mortgages." *Rutter*, Nos. PC 10-4756, PD 10-4418, 2012 WL 894012 at *4-5 (R.I. Super. Ct. Mar. 12, 2012); *see also Kriegel v. Mortg. Elec. Registration Sys., Inc.*, No. PC 2010-7099, 2011 WL 4947398 (R.I. Super. Ct. Oct. 13, 2011). Justice Silverstein's reasoning is sound and proved

---

[4] "While the *Bucci* decision did not address the specific issue of MERS's authority to assign a mortgage, it follows from the reasoning in *Bucci* that MERS – as the lawful and contractually designated mortgagee and nominee for the lender/noteholder may also lawfully assign its interest in a mortgage." *Akalarian v. Nation One Mtg. Co., Inc.*, C.A. No. PC 2010-4744, 2013 WL 3971148, at *3 (R.I. Super. Ct. July 29, 2013).

to be consistent with Rhode Island law as later interpreted by the Rhode Island Supreme Court in *Bucci*.

The First Circuit in *Culhane*, though it was applying Massachusetts law,[5] agreed with the Rhode Island courts that the MERS structure was consistent with state law. "We add that—short of the time of foreclosure—the MERS framework, which customarily separates the legal interest from the beneficial interest, corresponds with *longstanding common-law principles regarding mortgages*." *Culhane*, 708 F.3d at 292 (emphasis added). The *Culhane* court also noted "there is no reason to doubt the legitimacy of the common arrangement whereby MERS holds bare legal title as mortgagee of record and the noteholder alone enjoys the beneficial interest in the loan." *Id.* at 291. With regard to Plaintiffs' argument that an assignment is invalid if signed by an unauthorized individual, a "robo-signer," with a false title of vice president, the First Circuit emphasized in *Culhane* that the statute "neither places restrictions on who may be elected as an officer of the assignor nor imposes special requirements (say, regular employment) on who may serve as a vice president of an assignor corporation." *Id.* at 294. As such, "[w]hile MERS's practice of appointing employees of member firms as certifying officers can be disparaged on policy grounds, such policy judgments are for the legislature, not the courts." *Id.*[6]

---

[5] The First Circuit determined that "MERS's role as mortgagee of record and custodian of the bare legal interest as nominee for the member-noteholder, and the member-noteholder's role as owner of the beneficial interest in the loan, fit comfortably with each other and fit comfortably within the structure of Massachusetts mortgage law." *Culhane*, 708 F.3d at 292. The Rhode Island Supreme Court emphasized that MERS's role as the *Culhane* court described "reside[d] comfortably" within Rhode Island law as well. *Bucci*, 68 A.3d at 1088.

[6] This finding appears to relate to the practice of assigning titles for the purpose of executing documents, but not to any substantive robo-signing allegations where actionable fraud is specifically alleged.

These courts' consistent rulings on Rhode Island state law and upholding the MERS process appear to indicate that Plaintiffs are not likely to succeed on the legal issues that are common to most of the cases on this consolidated docket.

**B. Factual Issues**

There are some factual issues unique to individual Plaintiffs that may require the Court to examine those individual and one-off facts in order to determine likelihood of success in particular cases. For example, one Plaintiffs' counsel argues that there was a "lack of compliance with the terms of the mortgage to exercise the statutory power of sale" and that loan servicers "failed to send the proper contractually required paper work to the mortgagors." (ECF No. 2174 at 5.) This condition may be unique to one or more Plaintiffs, and with respect to issues that turn on individually-pleaded facts, the Court is not able to make a requisite finding of likelihood of success on the merits that would be applicable across the broad breadth of cases on its docket.[7] Absent a showing of substantial likelihood of success across the board based on a universal set of facts, the Court cannot maintain the blanket injunction against foreclosures or possessory actions.

**C. Conclusion**

This Court must dissolve the blanket injunction because it cannot find "the critical requirement of the mortgagors' likelihood of success in challenging foreclosure" across the board. *Fryzel*, 719 F.3d at 44 (citing *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d

[7] Despite the clear legal direction from the state courts on this important matter of state law and from the First Circuit, this Court will not rule substantively on these matters broadly, or divorced from the facts of any case at this time, because the Court believes the best approach on the factual and legal matters is to consider them when raised within the context of specific cases.

112, 115 (1st Cir. 2006)). The Court takes this action reluctantly[8] because it continues to believe that, consistent with the law and proper procedure, it is in all parties' and the Court's best interest to have the parties talk to each other in a meaningful way and to attempt to amicably resolve these matters, without the threat and/or negative consequences of having Plaintiffs' homes taken away from them due to foreclosure or eviction. The Court is hopeful that even without the force of a Court order, the Defendants will continue to forego their right to foreclose and evict until all avenues of attempted resolution are traveled.

Defendants have filed twenty-two Motions to Dismiss since June 2013 in cases on this Court's Mortgage Foreclosure docket. The Court directs Plaintiffs to choose two cases from that list, and the Defendants to choose two cases. The parties will submit the cases they choose in a letter to the Court no later than September 9, 2013. The parties will fully brief those four cases on a schedule the Court will set forth in each of the cases identified and then the Court will hold a hearing on those four cases. The Court will issue an order in those four cases and then meet with representatives of the parties to determine how to proceed with the consolidated docket.

## III. STAY OF FILINGS

In order to determine an appropriate process for proceeding in this litigation involving the 825 cases on the Mortgage Foreclosure docket, it is in the best interest of the parties and the Court for the stay of filings in this Court's cases to continue at this time.[9] The Court and a representative group of attorneys from the parties will meet and confer shortly, pursuant to the

[8] This Court believed that it had the power administratively to stay foreclosures in aid of its administration of its docket without the need to formalize the ruling pursuant to the standards for an injunction. The First Circuit disagreed and this Court is bound by the First Circuit's ruling. As the Court stated at the hearing on this matter, they "are my bosses." (ECF No. 2224 at 55.)

[9] The Court has already established a vehicle whereby a party pressing a case-specific dispositive claim may seek relief from the no-filing Stay, including the parties' right at any time to challenge the Court's jurisdiction.

First Circuit's opinion in *Fryzel*, to determine the most efficient and effective way to handle both the mediation program going forward and the litigation of these many cases. The Special Master's mediation program remains in full force and all parties are expected to participate fully and in good faith until further order of this Court.

**IV. USE & OCCUPANCY FEES**

Because this Court has dissolved the injunction against foreclosures and possessory actions, there is no longer any justification for the Court to continue to impose a Use and Occupancy fee. On December 26, 2012, the Court issued an Order Approving Disposition Recommendations, stating, "U&O fees are not only imposed because the Plaintiff actually lives in the property. They are also imposed because the Defendants are required to make tax and insurance payments, but are denied access to and ownership of the property as a result of the litigation and stay. U&O fees must be paid by all participants of the property as a result of the litigation and stay." (ECF No. 1679 at 2.) Therefore, because the injunction is lifted as of August 31, 2013, Plaintiffs are not required to pay Use and Occupancy fees going forward after that date.[10] The Court will determine at a later date a procedure for disbursing the fees already paid and held by the Special Master.

IT IS SO ORDERED:

John J. McConnell, Jr.
United States District Judge

September 3, 2013

[10] Plaintiffs are expected and ordered to be current on all U&O payments through August 31, 2013. In addition, all retainer fees are to be paid in full by all parties.